1  AVI WAGNER (#226688)
   avi@thewagnerfirm.com
2  THE WAGNER FIRM
   1801 Avenue of the Stars, Suite 307
3  Los Angeles, California 90067
   Tel:   (310) 491-7949
4
   Fax:  (310) 491-7949
5

6  *Attorneys for Plaintiff Harel Pia Mutual Fund*
7  [Additional Counsel Listed on Signature Page]

8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA

10

11 | HARRY STACKHOUSE, Individually and | Civil No. 2:10-cv-922-DSF-AJW |

on Behalf of All Others Similarly Situated,

12
                              Plaintiff,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAREL PIA MUTUAL FUND FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

13

14              v.

15 TOYOTA MOTOR CORPORATION,
   TOYOTA MOTOR SALES USA INC.,
16 TOYOTA MOTOR NORTH AMERICA
   INC., AKIO TOYODA, FUJIO CHO,
17 ROBERT S. CARTER, IRVING A.
   MILLER, YOSHIMI INABA, JAMES E.
18 LENTZ, III, and ROBERT C. DALY,
19
                              Defendants.
20

DATE:  May 10, 2010
TIME:  1:30 p.m.
JUDGE: Honorable Dale S. Fischer
CTRM:  840

21

22

23 TOM MUSTRIC, Individually and on Behalf    Civil No. 2:10-cv-001429-DSF-AJW
   of All Others Similarly Situated,
24
                              Plaintiffs,
25

26              v.

27 TOYOTA MOTOR CORPORATION,

28 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAREL PIA
   MUTUAL FUND FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT AS
   LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL          1

TOYOTA MOTOR SALES USA INC.,
TOYOTA MOTOR NORTH AMERICA
INC., AKIO TOYODA, FUJIO CHO,
ROBERT S. CARTER, IRVING A.
MILLER, YOSHIMI INABA, JAMES E.
LENTZ, III, and ROBERT C. DALY,

                Defendants.

KATHRYN A. SQUIRES, Individually and       Civil No. 2:10-cv-001452-DSF-AJW
on Behalf of All Others Similarly Situated,

                Plaintiff,

          v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES USA INC.,
TOYOTA MOTOR NORTH AMERICA
INC., AKIO TOYODA, ROBERT S.
CARTER, IRVING A. MILLER, YOSHIMI
INABA, JAMES E. LENTZ, III, ROBERT C.
DALY, FUJIO CHO, MITSUO
KINOSHOTA, YOICHIRO ICHIMARU,
TAKESHI SUZUKI, TAKAHIKO IJICHI,
and KATSUAKI WATANABE,

                Defendants.

ROBERT M. MOSS, Individually and on       Civil No. 2:10-cv-001911-DSF-AJW
Behalf of All Others Similarly Situated,

                Plaintiff,

          v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR SALES USA INC.,
TOYOTA MOTOR NORTH AMERICA
INC., AKIO TOYODA, ROBERT S.
CARTER, IRVING A. MILLER, YOSHIMI
INABA, JAMES E. LENTZ, III, ROBERT C.
DALY, FUJIO CHO, MITSUO

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAREL
PIA MUTUAL FUND FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL    2

1    KINOSHOTA, YOICHIRO ICHIMARU,
2    TAKESHI SUZUKI, TAKAHIKO IJICHI,
     and KATSUAKI WATANABE,
3
                              Defendants.
4

5    PHILLIP GELENBERG, Individually and on        Civil No. 2:10-cv-02196-PA-RC
     Behalf of All Others Similarly Situated,
6
                              Plaintiff,
7

8                      v.

9    TOYOTA MOTOR CORPORATION,
10   TOYOTA MOTOR SALES USA INC.,
     TOYOTA MOTOR NORTH AMERICA
11   INC., AKIO TOYODA, ROBERT S.
     CARTER, IRVING A. MILLER, YOSHIMI
12   INABA, JAMES E. LENTZ, III, ROBERT C.
     DALY, FUJIO CHO, MITSUO
13   KINOSHOTA, YOICHIRO ICHIMARU,
14   TAKESHI SUZUKI, TAKAHIKO IJICHI,
     and KATSUAKI WATANABE,
15
16                            Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAREL
PIA MUTUAL FUND FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL          3

| | |
|---|---|
| 1 | L. PATRICIA SAMPOLI, Individually and |
| 2 | on Behalf of All Others Similarly Situated, |
| 3 | Plaintiff, |
| 4 | v. |
| 5 | TOYOTA MOTOR CORPORATION, |

L. PATRICIA SAMPOLI, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES USA INC., TOYOTA MOTOR NORTH AMERICA INC., AKIO TOYODA, ROBERT S. CARTER, IRVING A. MILLER, YOSHIMI INABA, JAMES E. LENTZ, III, ROBERT C. DALY, FUJIO CHO, MITSUO KINOSHOTA, YOICHIRO ICHIMARU, TAKESHI SUZUKI, TAKAHIKO IJICHI, and KATSUAKI WATANABE,

Defendants.

Civil No. 2:10-cv-02253-JFW-RZ

HAREL PIA MUTUAL FUND, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA INC., TOYOTA FINANCIAL SERVICES AMERICAS CORPORATION, TOYOTA FINANCIAL SERVICES CORPORATION, TOYOTA MOTOR CREDIT CORPORATION, AKIO TOYOTA, FUJIO CHO, ROBERT S. CARTER, IRVING A. MILLER, YOSHIMI INABA, JAMES E. LENTZ, III, ROBERT C. DALY, DAVID PELLICCIONI and GEORGE E. BORST,

Defendants.

Civil No. 2:10-cv-02578

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAREL PIA MUTUAL FUND FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

4

1
2

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................... 1

INTRODUCTION ........................................................................................... 1

I.      STATEMENT OF FACTS ..................................................................... 3

II.     ARGUMENT ......................................................................................... 7

        A.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ................ 7

        B.      THE HAREL PIA SHOULD BE APPOINTED LEAD  PLAINTIFF
                FOR THE NOTEHOLDERS CLASS ........................................... 9

                1.      The Harel Pia Is Willing to Serve as Class Representative .............. 10

                2.      The Harel Pia Has the Largest Financial Interest in the Action ....... 10

                3.      The Harel Pia Satisfies the Requirements of  Rule 23 of the
                        Federal Rules of Civil Procedure ....................................... 11

                4.      The Harel Pia Fairly and Adequately Represents  the Interests
                        of the Noteholders Class and Are  Not Subject to Unique
                        Defenses .......................................................... 14

        C.      LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL
                SHOULD BE APPROVED ...................................................... 14

CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146 (N.D. Cal. 1999) .................................................................. 8, 12

*Danis v. USN Communs., Inc.*,
  189 F.R.D. 391 (N.D. Ill. 1999) ............................................................................... 12

*Erikson v. Cornerstone Propane Partners LP*,
  2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003) ........................................ 9

*Fields v. Wolfson*,
  41 F.R.D. 329 (S.D.N.Y. 1967) ................................................................................. 8

*In re Gemstar-TV Guide International Sec. Litigation*,
  209 F.R.D. 447 (C.D. Cal. 2002) ............................................................................. 11

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .................................................................................. 12

*Lax v. First Merchants Acceptance Corp.*,
  1997 U.S. Dist. LEXIS 11866, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............. 11

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) .................................................................................. 13

*In re McKesson HBOC, Inc. Sec. Litigation*,
  97 F. Supp. 993 (N.D. Cal. 1999) ........................................................................... 11

*In re Northern District Of Cal., Dalkon Shield IUD Prod. Liability Litigation*,
  693 F.2d 847 (9th Cir. 1982) .................................................................................. 13

*In re Olsten Corp. Sec. Litigation*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................... 1

*Osher v. Guess?, Inc.*,
  2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ....................................... 9, 14

*Riordan v. Smith Barney*,
  113 F.R.D. 60 (N.D. Ill. 1986) ................................................................................. 13

*Squyres v. Union Texas Petroleum Holdings, Inc.*,
   1998 U.S. Dist. LEXIS 22945 (C.D. Cal. Nov. 2, 1998) ...........................................9

*Takeda v. Turbodyne Technologies Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ....................................................... 8, 13

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005)................................................................ 12

*Wenderhold v. Cylink Corp.*,
   188 F.R.D.577 (N.D. Cal. 1999)................................................................ 12

**STATUTES**

Federal Rules of Civil Procedures
   Fed. R. Civ. P. 23..................................................................2, 10, 11
   Fed. R. Civ. P. 23(a)(3).............................................................. 12, 13
   Fed. R. Civ. P. 23(a)(4)................................................................. 13
   Fed. R. Civ. P. 42(a) ............................................................... 1, 7, 8

Private Securities Litigation Reform Act
   15 U.S.C. § 78u-4(a)(3) ..........................................................*passim*

## **PRELIMINARY STATEMENT**

Plaintiff Harel Pia Mutual Fund ("Harel Pia") respectfully submits this Memorandum of Points and Authorities in support of its motion, pursuant to 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for an order: (i) consolidating all Related Actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; (ii) appointing Harel Pia as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired Toyota Motor Corporation ("Toyota") and/or Toyota Motor Credit Corporation ("TMCC") notes or bonds on either the United States stock exchanges or any non-United States stock exchanges (the "Noteholders Class"); (iii) approving Harel Pia's selection of Pomerantz Haudek Grossman & Gross LLP (the "Pomerantz firm") as Lead Counsel and Glancy Binkow & Goldberg LLP (the "Glancy firm") as Liaison Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

## **INTRODUCTION**

The above-captioned actions (the "Related Actions") are securities class action lawsuits that have been brought against Toyota, certain Toyota entities, and certain officers and/or directors of the Company alleging violations of Sections 10(b) and 20(a)

of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. The first-filed action was commenced in this jurisdiction on February 8, 2010 on behalf of all persons or entities, other than defendants, who purchased or otherwise acquired the securities of Toyota between August 4, 2009 and February 2, 2010, inclusive.  On March 26, 2010, an action was commenced in this jurisdiction on behalf of all persons or entities, other than defendants who purchased or otherwise acquired securities of Toyota between May 10, 2005 and February 2, 2010 (the "Class Period").  On April 8, 2010, an action was commenced in this jurisdiction on behalf all persons who purchased or otherwise acquired Toyota and/or TMCC notes or bonds on either the United States stock exchanges or any non-United States stock exchanges between December 22, 2006 and February 2, 2010.

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant who possesses the largest financial interest in the outcome of the Action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Harel Pia, with losses of $67,006 in connection with its purchases of Toyota and TMCC notes and bonds during the Class Period, is adequate and typical to serve as lead plaintiff.  Harel Pia believes that it is the "most adequate plaintiff" as defined by the PSLRA and should be appointed Lead Plaintiff for these actions. Harel Pia has the largest financial interest in the relief sought in these actions by virtue of its substantial investment in Toyota notes during the Class Period and the approximately $67,006 in losses it suffered as a result of Defendants' misconduct. Harel Pia further

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as an adequate loss representative with claims typical of the other Class members. Accordingly, Harel Pia respectfully submits that it should be appointed Lead Plaintiff.

## I.    STATEMENT OF FACTS

Presently pending in this district are at least seven related securities class action lawsuits brought on behalf of all persons who purchased the securities of Toyota. The actions are brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

During the Class Period; defendants issued materially false and misleading statements regarding the Company's operations and its business and financial results and outlook. Defendants misled investors by failing to disclose that there was a major design defect in Toyota's acceleration system, which could cause unintended acceleration.

For over a decade, Toyota has been aware of numerous incident reports where Toyota and Lexus owners in the United States have reported that their vehicles suddenly accelerated on their own; in many cases resulting in accidents, including several fatalities. "Unintended acceleration" is an automobile safety defect that occurs when a vehicle suddenly accelerates without any action by the driver commanding it to do so through the throttle or gas pedal user inputs. According to Safety Research & Strategies, Inc., "unintended acceleration" has been responsible for 815 crashes, 3314 injuries and 19 fatalities in Toyota vehicles since 1999. Toyota initially blamed the incidents on

driver error and later blamed it on faulty floor mats, denying that there was a design defect in its acceleration system.

On January 21, 2010, Toyota announced it would be recalling 2.3 million Toyota brand vehicles in North America because of problems with the acceleration pedal sticking. According to the Company-issued press release:

> In recent months, Toyota has investigated isolated reports of sticking accelerator pedal mechanisms in certain vehicles without the presence of floor mats," said TMS Group Vice President Irv Miller. "Our investigation indicates that there is a possibility that certain accelerator pedal mechanisms may, in rare instances, mechanically stick in a partially depressed position or return slowly to the idle position. Consistent with our commitment to the safety of our cars and our customers, we have initiated this voluntary recall action.

On January 26, 2010, Toyota announced it was immediately halting the sale of the eight Toyota models involved in the January 21, 2010 recall in response to the growing concerns that possible defects may cause the vehicles to accelerate unintentionally. The eight models represent the Company's most popular models in the U.S., making up over 57% of Toyota's 2009 sales in the U.S. The Company further announced it would be shutting down its assembly line at its North American plants for one week beginning February 1, 2010.

On January 27, 2010, Toyota announced that 1.1 million cars and trucks would be included in a recall the Company originally issued in November 2009 related to a problem certain vehicles experienced related to floor mats interfering with the accelerator pedal.

On January 29, 2010, Toyota announced that the recall would be extended to eight Toyota models offered in Europe.

On February 1, 2010, defendant James E. Lentz, III ("Lentz"), appeared, on NBC's Today show and was interviewed by host Matt Lauer.  Shockingly, contradicting the Company's previous statements that that there were "no defects" related to sudden acceleration in Toyota vehicles aside from faulty floor mats, Lentz admitted that the Company had known about sticky accelerator pedal problems since at least October 2009.

On February 2, 2010, after the market closed, Toyota reported that its U. S. sales for January 2010 had dropped by 16% from a year ago due to the recall and subsequent sales suspension of its most popular models. In contrast, industry wide sales for the month increased from January 2009 with both Ford Motor Company and General Motors reporting improvements in their January sales numbers.

Then, on February 3, 2010, the U.S. Secretary of Transportation, Ray LaHood ("LaHood"), head of the National Highway Traffic Safety Administration ("NHTSA"), urged Toyota owners concerned about their cars to stop driving them and take them into their Toyota dealerships to be repaired immediately. He encouraged all vehicle owners covered by the recall to contact their local dealers to get their vehicles fixed as soon as possible. Moreover, LaHood called for a meeting with Toyota's Chief Executive Officer, defendant Akio Toyoda, to discuss the recent safety concerns involving Toyota vehicles

and the Company's handling of the recalls. It was reported that NHTSA was considering a civil penalty against the Company over its handling of the recalls.

Additionally on February 3, 2010, before the market opened, Toyota announced that it had received reports of brake problems in its 2010 model year Prius hybrid. According to news reports, the Japanese' government ordered Toyota to investigate a possible defect in its brake system after receiving 14 reports of brake trouble in its newest hybrid model since the car went on sale in May.  It was further reported that the NHTSA had also received at least 136 complaints about the Prius brakes. Four of the complaints in the U.S. resulted in accidents, with two resulting in injuries.

On February 4, 2010, U.S. Safety regulators announced they would open an investigation into the brakes on the 2010 Prius. On February 9, 2010, Toyota announced that it was recalling 437,000 Prius and other hybrid vehicles worldwide to fix brake problems, bringing the total amount of recalled vehicles to 8.5 million.

As a result of Toyota's belated partial disclosures regarding the depth of its unintended acceleration problems, TMCC's 5.375% 7/11 Notes, maturing on July 29, 2011 ("TMCC 5.375% Notes") fell from $105.395 on January 25, 2010, to $104.969 on February 8, 2010.

As a result of defendants' false statements, Toyota and TMCC's notes and bonds traded at inflated levels during the Class Period.  After the above revelations, when it became apparent that many of Toyota's vehicles contained a design defect that could cause unintended acceleration, the Company's notes and bonds declined.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF HAREL PIA MUTUAL FUND FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL                6

## II.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

On February 8, 2010, the first of at least seven above-captioned actions against Toyota was filed in the Central District of California. These Related Actions allege the same factual events and name the same core defendants. Further, the complaints allege the same legal bases for their claims: Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. 10b-5.

In sum, the Related Actions involve common questions of fact and law. Accordingly, pursuant to Fed. R. Civ. P. 42(a), the Related Actions may be consolidated for all purposes.

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

Fed. R. Civ. P. 42(a). *See also Manuel for Complex Litig. (3d),* 20.123, at 13-14 (1995).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has

been filed," *see* 15 U.S.C. 78u-4(a)(3)(A)(ii), and did not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a). *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999). Under the traditional principles of consolidation, complaints may be considered regardless of whether the individual claims or causes of action are identical. As such, one court has recently noted, "neither Rule 42 nor the PSLRA demands that the actions be identical." *Takeda v. Turbodyne Techs. Inc.*, 67 F.Supp.2d 1129, 1133 (C.D. Cal. 1999). Indeed, it has long been routine in federal securities actions to consolidate such complaints, and consider prejudicial to defendants not to consolidate such actions. *See, e.g., Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y. 1967).

As noted above, here, the allegations in the Related Actions are based on the same underlying facts and events, which occurred during the same time period, and charge the same core defendants with violations of the federal securities laws.

The consolidation of these actions will expedite pretrial proceedings, reduce duplication, avoid contacting of parties and witnesses for inquiries in multiple proceedings and minimize the expenditure of time and money by all persons concerned. Moreover, consolidation will reduce the confusion and delay that may result from prosecuting these related class action cases separately. Further, the defendants have not sated any prejudice that they would suffer as a result of consolidation of these actions. Thus, Harel Pia's motion to consolidate the Related Actions should be granted.

### B.   HAREL PIA SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE NOTEHOLDERS CLASS

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiffs in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiffs filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See Erikson v. Cornerstone Propane Partners LP*, 2003 U.S. Dist. LEXIS 18009, at *8-*9 (N.D. Cal. Sept. 9, 2003); *Squyres v. Union Texas Petroleum Holdings, Inc.*, 1998 U.S. Dist. LEXIS 22945, at *5 (C.D. Cal. Nov. 2, 1998); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *11 (C.D. Cal. Apr. 26, 2001).

As set forth below, Harel Pia satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Noteholders Class and, therefore, should be appointed Lead Plaintiff for the Noteholders Class.

### 1.    Harel Pia Is Willing to Serve as Class Representative

On February 8, 2010, counsel in the first filed action against the defendants caused a notice to be published pursuant to Section 21D(a)(3)(A)(i) of the PSLRA announcing that a securities class action had been filed against the defendants herein, and investors of Toyota securities that they had until April 9, 2010, to file a motion to be appointed as Lead Plaintiff.  *See* Dahlstrom Decl., Exhibit A.

Harel Pia has filed the instant motion pursuant to the Notice and has attached Certification attesting that it is willing to serve as a Lead Plaintiff for the Noteholders Class and is willing to provide testimony at deposition and trial, if necessary.  *See* Dahlstrom Decl., Exhibit B.  Accordingly, Harel Pia satisfies the first requirement to serve as Lead Plaintiff for the Noteholders Class.

### 2.    Harel Pia Has the Largest Financial Interest in the Action

As noted above, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the "person" or "group of persons" who "has the largest financial interest in the relief sought by the class," and who also satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). This presumption can only be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such

plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). *In re Gemstar-TV Guide Int'l. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002).

As of the time of the filing of this motion, Harel Pia believes that it has the largest financial interest of anyone in the relief sought by the Noteholders Class. Harel Pia purchased (1) 500,000 par value TMCC 5.375% Notes and 453,000 par value TMCC 5.25% Notes; (2) expended over $1,409,440 for its Toyota notes; (3) retained all of its Toyota notes; and (4) suffered a loss of approximately $67,006 related to its purchases. *See* Dahlstrom Decl., Exhibit C. S*ee also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 993 (N.D. Cal. 1999); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Because Harel Pia possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Harel Pia Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA requires that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-(a)(3)(B)(iii)(I)(cc). With respect to the claims of class representatives, Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the

representatives will fairly and adequately protect the interests of the class. For purposes of a motion to appoint lead plaintiff pursuant to the PSLRA, however, all that is required is a "preliminary showing" that the lead plaintiff's claims are typical and adequate. *Aronson*, 79 F. Supp. 2d at 1158 (citing *Wenderhold v. Cylink Corp.*, 188 F.R.D.577, 587 (N.D. Cal. 1999)). *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  "A class is typical if it arises from the same event or course of conduct that gives rise to claims of other class members and all claims are based on the same legal theory." *Id.*  Indeed, the "similarity of legal theory may control even where factual distinctions exist between the claims of the named representatives and the other class members." *Id.  See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class.") (citation omitted).

Harel Pia's claims are typical of those of the Noteholders Class. It alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Toyota, or omitted to state material facts necessary to make the statements they did make not misleading. Harel Pia, as did all members of the Noteholders Class, purchased

Toyota notes during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  Accordingly,

> The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.

*Takeda*, 67 F. Supp. 2d at 1137 (citing *In re Northern Dist. Of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). *Accord Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Takeda*, 67 F. Supp. 2d at 1137 (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986)).

Harel Pia is an adequate representative for the Noteholders Class. There is no antagonism between its interests and those of the Noteholders Class and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Moreover, it has retained counsel highly experienced in prosecuting securities class actions such as

this action, vigorously and efficiently, and submit its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. Harel Pia Fairly and Adequately Represents the Interests of the Noteholders Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Harel Pia as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

Harel Pia's ability and desire to fairly and adequately represent the Noteholders Class have been discussed above. Harel Pia is not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Noteholders Class. Accordingly, Harel Pia should be appointed Lead Plaintiff for the Noteholders Class.

### C. LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher*, 2001 U.S. Dist. LEXIS 6057, at *15. The Court should only interfere with lead plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Harel Pia has selected the Pomerantz firm to serve as Lead Counsel and Glancy firm to serve as Liaison Counsel for the Noteholders Class. As detailed in their firm resumes (*see* Dahlstrom Decl., Exhibits D and E), the Pomerantz firm and the Glancy firm have extensive expertise and experience in the field of securities litigation and have successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Thus, the Court may be confident that the Noteholders Class will receive the highest caliber of legal representation.

## **CONCLUSION**

WHEREFORE, Harel Pia respectfully requests that the Court issue an order: (1) consolidating the related actions; (2) appointing Harel Pia as Lead Plaintiff for the Noteholders Class pursuant to Section 21D(a)(3)(B) of the Exchange Act; (3) approving Harel Pia's selection of Lead and Liaison Counsel for the Noteholders Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: April 9, 2010                    Respectfully submitted,

                                        THE WAGNER FIRM

                                        *s/Avi Wagner*
                                        AVI WAGNER (#226688)
                                        avi@thewagnerfirm.com
                                        1801 Avenue of the Stars, Suite 307
                                        Los Angeles, California 90067
                                        Tel:   (310) 491-7949
                                        Fax:  (310) 491-7949

POMERANTZ HAUDEK GROSSMAN
   & GROSS LLP
Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665

POMERANTZ HAUDEK GROSSMAN
   & GROSS LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184

*Proposed Lead and Liaison Counsel for Harel Pia Mutual Fund*

1

2

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO
CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES
AND ECF GENERAL ORDER NO. 08-02**

3        I, the undersigned, say:

4        I am a citizen of the United States and am employed in the office of a member
5 of the Bar of this Court.  I am over the age of 18 and not a party to the within action.
  My business address is 1801 Avenue of the Stars, Suite 307, Los Angeles, California
6 90067.
         On April 9, 2010, I caused to be served the following documents:

7

**1.      NOTICE OF MOTION AND MOTION OF HAREL PIA MUTUAL
8         FUND FOR CONSOLIDATION OF ALL RELATED CASES,
         APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS
9         SELECTION OF LEAD COUNSEL**

10 **2.      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
         OF MOTION OF HAREL PIA MUTUAL FUND FOR
11        CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT AS
         LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF
12        LEAD COUNSEL**

13 **3.      DECLARATION OF PATRICK V. DAHLSTROM IN SUPPORT OF
         HAREL PIA MUTUAL FUND FOR CONSOLIDATION OF ALL
14        RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND
         APPROVAL OF LEAD COUNSEL**
15

16 **4.      [PROPOSED] ORDER**

17 By posting these documents to the ECF Website of the United States District Court
   for the Central District of California, for receipt electronically by the parties on the
18 attached Service List.

19        I certify under penalty of perjury under the laws of the United States of
   America that the foregoing is true and correct.  Executed on April 9, 2010, at Los
20 Angeles, California.

21                              *s/ Avi Wagner*
22                              Avi Wagner

23

24

25

26

27

28

PROOF OF SERVICE

# Mailing Information for a Case 2:10-cv-00922-DSF-AJW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S Facter**
  jfacter@shearman.com,rcheatham@shearman.com

- **Deborah R Gross**
  debbie@bernardmgross.com

- **Catherine J Kowalewski**
  katek@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Sean T Strauss**
  sean.strauss@shearman.com

- **David C Walton**
  davew@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Shawn A Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Patrick D Robbins
Shearman & Sterling
525 Market Street
San Francisco, CA 94104
```