Joseph J. Tabacco, Jr. (Cal. Bar No. 75484)
jtabacco@bermandevalerio.com
Nicole Lavallee (Cal. Bar. No. 165755)
nlavallee@bermandevalerio.com
**BERMAN DeVALERIO**
One California Street, Suite 900
San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

**Co-Counsel for Proposed Lead Plaintiff Massachusetts Pension Reserves Investment Management Board**

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY STACKHOUSE, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.:  CV10-0922-DSF-AJWx<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE COMMONWEALTH OF MASSACHUSETTS PENSION RESERVES INVESTMENT MANAGEMENT BOARD'S MOTION TO CONSOLIDATE RELATED CASES, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL**<br><br>Date:  May 10, 2010<br>Time:  1:30 p.m.<br>Courtroom:  840<br>Judge:  Hon. Dale S. Fischer |

| | |
|---|---|
| TOM MUSTRIC, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.: CV10-1429-DSF-AJWx |
| KATHRYN A. SQUIRES, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.: CV10-1452-DSF-AJWx |
| ROBERT M. MOSS, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.: CV10-1911-DSF-AJWx |

| | |
|---|---|
| PHILIP GELENBERG, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.: CV10-2196-DSF-AJWx |
| L. PATRICIA SAMPOLI, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.: CV10-02253-DSF-AJWx |
| HAREL PIA MUTUAL FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | CASE NO.: CV10-02578-GHK (RZx) |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................ 3

     A.   Consolidation Is Appropriate Because The Actions Involve
          Common Questions Of Law And Fact .......................................................... 3

     B.   The Court Should Resolve The Consolidation Issue As A
          Prerequisite To The Determination Of Lead Plaintiff ................................ 3

II.  THE COURT SHOULD APPOINT PRIM AS LEAD PLAINTIFF ................. 4

     A.   The Procedure Required By The PSLRA ..................................................... 4

     B.   PRIM Satisfies Each Of The PSLRA's Requirements And,
          Therefore, Is the Presumptive Most Adequate Plaintiff ............................ 5

          1.   PRIM Filed A Timely Motion And Is Willing To Serve As
               Lead Plaintiff ........................................................................................... 5

          2.   PRIM Is An Institutional Investor With The Largest
               Financial Interest In The Relief Sought By The Class ..................... 6

          3.   PRIM Satisfies The Requirements Of Rule 23(a) Of The
               Federal Rules Of Civil Procedure ........................................................ 8

III. PRIM's CHOICE OF CO-LEAD COUNSEL SHOULD BE
     APPROVED ........................................................................................................ 10

CONCLUSION ........................................................................................................ 10

MEMO OF LAW ISO PRIM'S MOTION TO CONSOLIDATE RELATED CASES, FOR APPOINTMENT AS LEAD
PLAINTIFF, AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL
Case No. CV10-0922-DSF-AJWx                                                                                                   i

# TABLE OF AUTHORITIES

**CASES**

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999)....................................................................3

*Bowman v. Legato Sys.*,
    195 F.R.D. 655 (N.D. Cal. 2000) ...........................................................................6

*Casden v. HPL Techs., Inc.*,
    2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003)....................................3

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004).............................................................................9

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ................................................................7, 8

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996)...........................................................................7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................................9

*Hodges v. Akeena Solar, Inc.*,
    263 F.R.D. 528 (N.D. Cal. 2009) ..........................................................................7

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999) ..............................................................................7

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002)..................................................................................9

*In re Cendant Corp. Sec. Litig.*,
    264 F.3d 201 (3d Cir. 2001), *aff'd*,
    404 F.3d 173 (2005) ...............................................................................................7

*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999)....................................................................6

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ..................................................................7

*Miller v. Ventro Corp.*,
    2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ....................................................7

*Ravens v. Iftikar*,
    174 F.R.D. 651 (N.D. Cal. 1997) ..........................................................................6

*Ruland v. Infosonics Corp.*,
    2006 WL 3746716 (S.D. Cal. Oct. 23, 2006).........................................................7

*Schulman v. Lumenis, Ltd.*,
    2003 WL 21415287 (S.D.N.Y. June 18, 2003)......................................................7

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) ............................................................................ 6

**STATUTES**

15 U.S.C. § 78u-4(a)(1) ................................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................... 4, 5

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ............................................................................... 4, 5

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................... 4, 6

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ........................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..................................................................... 8, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................ 10

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................. 9, 10

Fed. R. Civ. P. 42(a) ............................................................................................ *passim*

H.R. Rep. No. 104-369 (1995), *as reprinted in*
1995 U.S.C.C.A.N. 730 ................................................................................................ 6

S. Rep. No. 104-98 (1995), *as reprinted in*
1995 U.S.C.C.A.N. 679 ................................................................................................ 8

**MISCELLANEOUS**

Elliot J. Weiss & John S. Beckerman,
*Let The Money Do The Monitoring:
How Institutional Investors Can Reduce Agency Costs
In Securities Class Actions,* 104 Yale L.J. 2053 (1995) .............................................. 8

# PRELIMINARY STATEMENT

Presently pending before the Court are seven related securities class action lawsuits, captioned above, (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased the securities, including American Depositary Shares ("ADSs"), of Toyota Motor Corporation ("Toyota" or the "Company") during the period of May 10, 2005 through and including February 2, 2010 (the "Class Period").[1] Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants Toyota, Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., Toyota Financial Services Americas Corporation, Toyota Financial Services Corporation, and Toyota Motor Credit Corporation ("Toyota Defendants"), and Akio Toyoda, Fujio Cho, Robert S. Carter, Irving A. Miller, Yoshimi Inaba, James E. Lentz III, Robert C. Daly, Mitsuo Kinoshita, Yoichiro Ichimaru, Takeshi Suzuki, Takahiko Ijichi, Katsuaki Watanabe, David Pelliccioni, and George E. Borst (the "Individual Defendants," and together with the Toyota Defendants, "Defendants").

The Commonwealth of Massachusetts Pension Reserves Investment Management Board ("PRIM") hereby moves this Court, pursuant to Fed. R. Civ. P. 42(a) and Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (a) consolidating the above-captioned Actions for all purposes; (b) appointing PRIM as lead plaintiff in the Actions; and (c) approving PRIM's selection of Berman DeValerio and Bernstein Liebhard LLP ("Bernstein Liebhard") as co-lead counsel for the Class.

PRIM respectfully submits that it is the "most adequate plaintiff," as defined by the PSLRA, because it has the largest financial interest in the relief sought in this Action and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. During the Class Period, PRIM suffered losses of approximately

---

[1] This is the longest alleged class period.

1  approximately $23.28 million under the first-in-first-out (FIFO) methodology and
2  $14.73 million under the last-in-first-out (LIFO) methodology stemming from its
3  investments in Toyota shares and Defendants' alleged wrongful conduct.

## STATEMENT OF FACTS

The complaints allege that, during the Class Period, Defendants issued materially false and misleading statements regarding the Company's operations, its business and financial results and outlook, and the safety of its most popular vehicle models. Defendants allegedly misled investors by failing to disclose a major design defect in Toyota's acceleration system, which could cause unintended acceleration. As a result of Defendants' alleged false statements, Toyota's securities traded at artificially inflated prices during the Class Period. On January 21, 2010, Toyota announced a recall of 2.3 million Toyota brand vehicles in North America because of problems with a sticking accelerator pedal. Days later, on January 26, 2010, Toyota announced that it was halting sales of eight of its vehicle models, which accounted for 57% of its 2009 sales. On February 2, 2010, after the market closed, Toyota reported that its U.S. sales for January 2010 had dropped by 16% from the year prior due to the recall and related sales suspension of its most popular models. Then, on February 3, 2010, before the market opened, Toyota announced that it had received reports of brake problems in its 2010 model year Prius hybrid. As a result of this news, Toyota's ADSs fell $4.69 per share, closing at $73.49 per share on February 3, 2010, on high trading volume. Toyota's common stock also dropped approximately 6% that same day.

# ARGUMENT

## I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

### A. Consolidation Is Appropriate Because The Actions Involve Common Questions Of Law And Fact

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See Casden v. HPL Techs., Inc.*, No. C-02-3510-VRW, 2003 U.S. Dist. LEXIS 19606, at *4-*5 (N.D. Cal. Sept. 29, 2003). Courts recognize that class action shareholder suits are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999) ("It seems obvious that fifty-four separate class actions predicated on the same set of misstatements by corporate officials, causing an artificial inflation and then a corrective drop in share prices, present common questions of fact.").

The Actions pending before this Court present similar factual and legal issues, as they all involve the same subject matter, and present the same legal issues. Each alleges the same violations of the Exchange Act, and is based on the same wrongful course of conduct. Each names the Company and certain of its officers, directors, and affiliates as Defendants. Because the Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions.

Accordingly, consolidation under Rule 42(a) is appropriate.

### B. The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff

Once the Court decides the consolidation motion, it must decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). As PRIM has an interest in moving these actions forward, it

1 respectfully urges the Court to resolve the consolidation motion as soon as practicable.
2 A prompt determination is reasonable and warranted under Rule 42(a), especially
3 given the common questions of fact and law presented by the related Actions now
4 pending in this District.

## II.  THE COURT SHOULD APPOINT PRIM AS LEAD PLAINTIFF

### A. The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  Sections 21D(a)(1) and 21D(a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  Section 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i).  The PSLRA requires the court to consider within 90 days all such motions that are filed within 60 days after publication of that notice and made by any person or group of persons who are members of the proposed class.  Sections 21D(a)(3)(A)(i)(II) and 21D(a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

1  Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may
2  be rebutted only upon proof by a class member that the presumptively most adequate
3  plaintiff "will not fairly and adequately protect the interests of the class" or "is subject
4  to unique defenses that render such plaintiff incapable of adequately representing the
5  class."  Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, PRIM satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it.  Therefore, PRIM is entitled to the presumption that it is the most adequate lead plaintiff and, as a result, should be appointed lead plaintiff in the Actions.

### B. PRIM Satisfies Each Of The PSLRA's Requirements And, Therefore, Is the Presumptive Most Adequate Plaintiff

#### 1. PRIM Filed A Timely Motion And Is Willing To Serve As Lead Plaintiff

On February 8, 2010, counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against Toyota and certain of the Individual Defendants.  The Notice advised putative class members that they had until April 9, 2010 to file a motion to seek appointment as lead plaintiff in the action.[2]

PRIM has reviewed one of the complaints filed in the pending actions and has timely filed its motion pursuant to the Notice.  In doing so, PRIM has attached its certification attesting to its willingness to serve as a representative party of the Class and provide testimony at deposition and trial, if necessary.  *See* Lavallee Decl. Ex. B.  Accordingly, PRIM satisfies the first requirement to serve as lead plaintiff.  Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

---

[2] *See* Declaration of Nicole Lavallee ("Lavallee Decl.") Ex. A.

### 2. PRIM Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as PRIM, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
> * * *
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

This Court, as well as others in this Circuit and around the country, have noted a Congressional preference to appoint institutional investors. *See*, *e.g.*, *Tanne v.*

*Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) ("the PSLRA was enacted to encourage institutional investors to take a more active role in securities litigation"); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (noting PSLRA's preference for institutional investors); *Ruland v. Infosonics Corp.*, No. 06cv1231(BTM), 2006 WL 3746716, at *3 (S.D. Cal. Oct. 23, 2006) ("cases . . . explain that one of the principal purposes of the PSLRA was to prevent lawyer-driven litigation and to allow for institutional plaintiffs with big financial stakes and expertise in the area to serve as lead plaintiff and control the litigation"); *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *6 (N.D. Cal. Nov. 28, 2001) ("It was hoped that including a presumption in favor of the largest stakeholder would give preference to institutional investors which would be in a better position to manage the litigation and to limit the influence of lawyers").

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996).  Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999).  Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel.  *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . ."); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors.").

1        This presumption is rooted in Congress' belief that "increasing the role of
2 institutional investors in class actions will ultimately benefit the class and assist the
3 courts." S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679,
4 690. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the 'most adequate plaintiff' provision.").

PRIM is ideally suited for the role as lead plaintiff. During the Class Period, PRIM lost $23.28 under the FIFO methodology and $14.73 under the LIFO methodology. *See* Lavallee Decl. Ex. C. PRIM is aware of no other plaintiff or movant with greater losses. Furthermore, as a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, PRIM will be able to actively represent the Class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent its recurrence. *See Gluck*, 976 F. Supp. at 549 (citation omitted).

### 3.  PRIM Satisfies The Requirements Of Rule 23(a) Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA also states that, at the outset of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

---

MEMO OF LAW ISO PRIM'S MOTION TO CONSOLIDATE RELATED CASES, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL
Case No. CV10-0922-DSF-AJWx                                                           8

1  With respect to the qualifications of a class representative, Rule 23(a) requires
2  generally that representatives' claims be typical of those of the class, and that
3  representatives will fairly and adequately protect the interests of the class. *See In re*
4  *Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Ferrari v. Gisch*, 225 F.R.D. 599, 606
5  (C.D. Cal. 2004); *Ruland v. InfoSonics Corp.*, No. 06CV1231, 2006 WL 3746716, at
6  *2 (S.D. Cal. Oct. 23, 2006).
7       Claims are "typical" under Rule 23 if they are "reasonably co-extensive with
8  those of absent class members; they need not be substantially identical." *Ferrari*,
9  225 F.R.D. at 606 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.
10 1998)). Likewise, Rule 23(a) also requires that the person(s) representing the class be
11 able to "'fairly and adequately protect the interests' of all members in the class."
12 *Ferrari*, 225 F.R.D. at 607 (citation omitted).
13      The claims asserted by PRIM are typical of those of the Class. PRIM, like the
14 members of the Class, acquired Toyota securities during the Class Period at prices
15 artificially inflated by Defendants' materially false and misleading statements, and
16 was damaged thereby. Thus, its claims are typical, if not identical, to those of the
17 other members of the Class. Moreover, PRIM suffered losses similar to those of other
18 Class members and its losses resulted from Defendants' common course of conduct.
19 Accordingly, PRIM satisfies the typicality requirement of Rule 23(a)(3).
20      PRIM is also an adequate representative for the Class. There is no antagonism
21 between its interests and those of the Class. Moreover, PRIM has retained counsel
22 highly experienced in prosecuting securities class actions, and has submitted herein its
23 choice to the Court for approval pursuant to Section 21D(a)(3)(B)(v), 15 U.S.C.
24 § 78u-4(a)(3)(B)(v). *See* Lavallee Decl. Exs. D and E.
25      Accordingly, at this stage of the proceedings, PRIM has made the preliminary
26 showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and,
27
28

MEMO OF LAW ISO PRIM'S MOTION TO CONSOLIDATE RELATED CASES, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL
Case No. CV10-0922-DSF-AJWx                                                                    9

1 therefore, satisfies Section 21D(a)(3)(B)(iii)(I)(cc), 15 U.S.C. § 78u-
2 4(a)(3)(B)(iii)(I)(cc).

### III. PRIM's CHOICE OF CO-LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

PRIM has selected and retained Berman DeValerio and Bernstein Liebhard as the proposed co-lead counsel for the Class. Both firms have extensive experience prosecuting complex securities class actions, such as this one, and are well qualified to represent the Class. *See* Lavallee Decl. Exs. D and E for the firm resumes of Berman DeValerio and Bernstein Liebhard. Accordingly, the Court should approve PRIM's selection of Berman DeValerio and Bernstein Liebhard as co-lead counsel for the Class.

### CONCLUSION

For the foregoing reasons, PRIM respectfully requests that this Court: (1) consolidate the above-captioned, and all subsequently-filed, related Actions; (2) appoint PRIM as lead plaintiff for the Class in the Actions and all subsequently-filed, related actions; and (3) approve Berman DeValerio and Bernstein Liebhard as co-lead counsel for the Class.

| | |
|---|---|
| DATED:  April 9, 2010 | Respectfully submitted, |
| | /s/ Nicole Lavallee |
| | Nicole Lavallee |
| | |
| | Joseph J. Tabacco, Jr. |
| | Nicole Lavallee |
| | **BERMAN DeVALERIO** |
| | One California Street, Suite 900 |
| | San Francisco, CA 94111 |
| | Telephone: (415) 433-3200 |
| | Facsimile: (415) 433-6382 |
| | |
| | -and- |
| | |
| | Jeffrey C. Block |
| | One Liberty Square |
| | Boston, MA  02109 |
| | Telephone: (617) 542-8300 |
| | Facsimile: (617) 542-1194 |
| | |
| | Stanley D. Bernstein |
| | Sandy A. Liebhard |
| | Rebecca M. Katz |
| | Joseph R. Seidman, Jr. |
| | **BERNSTEIN LIEBHARD LLP** |
| | 10 E. 40th Street |
| | New York, NY  10016 |
| | Telephone: (212) 779-1414 |
| | Facsimile: (212) 779-3218 |
| | |
| | **Counsel for PRIM and Proposed Co-Lead Counsel for the Class** |

MEMO OF LAW ISO PRIM'S MOTION TO CONSOLIDATE RELATED CASES, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL
Case No. CV10-0922-DSF-AJWx                                                                                        11