BERNSTEIN LITOWITZ BERGER
      & GROSSMANN LLP
BLAIR A. NICHOLAS
(Bar No. 178428)
(blairn@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323
          -and-
GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Tel:    (212) 554-1400
Fax:   (212) 554-1444

GRANT & EISENHOFER PA
JAY W. EISENHOFER
(jeisenhofer@gelaw.com)
485 Lexington Ave 29th Floor
New York, New York 10017
Tel:    (646) 722-8500
Fax:   (646) 722-8501

*Counsel for Proposed Lead Plaintiff the Institutional Investor Group and Proposed Co-Lead Counsel for the Class*

*(Additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY STACKHOUSE,<br><br>              Plaintiff,<br><br>     v.<br><br>TOYOTA MOTOR CORPORATION, et al.<br><br>              Defendants. | Case No. 10-cv-922 DSF (AJWx)<br><br>NOTICE OF MOTION, MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE INSTITUTIONAL INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS<br><br>Date:        May 10, 2010<br>Time:       1:30 p.m.<br>Courtroom: 840<br>Judge:       Dale S. Fischer |

| | |
|---|---|
| TOM MUSTRIC, | Case No. 10-cv-1429 DSF (AJWx) |
| Plaintiff, | |
| v. | |
| TOYOTA MOTOR CORPORATION, et al. | |
| Defendants. | |
| KATHRYN A. SQUIRES, | Case No. 10-cv-1452 DSF (AJWx) |
| Plaintiff, | |
| v. | |
| TOYOTA MOTOR CORPORATION, et al. | |
| Defendants. | |
| ROBERT M. MOSS, | Case No. 10-cv-1911 DSF (AJWx) |
| Plaintiff, | |
| v. | |
| TOYOTA MOTOR CORPORATION, et al. | |
| Defendants. | |
| PHILLIP GELENBERG, | Case No. 10-cv-2196 DSF (AJWx) |
| Plaintiff, | |
| v. | |
| TOYOTA MOTOR CORPORATION, et al. | |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L. PATRICIA SAMPOLI,

         Plaintiff,

   v.

TOYOTA MOTOR CORPORATION,
et al.

        Defendants.

Case No. 10-cv-2253 DSF (AJWx)

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the Maryland State Retirement and Pension System, Pennsylvania Public School Employees' Retirement System, City of Philadelphia Board of Pensions and Retirement, Första-AP Fonden, and Metzler International Investments plc. (collectively, the "Institutional Investor Group") will hereby move, on May 10, 2010, at 1:30 p.m., in Courtroom 840 of the United States Courthouse, 255 East Temple Street, Los Angeles, California 90012, for an order: (1) appointing the Institutional Investor Group as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4, *et seq*.; (2) approving its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as Co-Lead Counsel for the Class; and (3) consolidating all related actions.

This Motion is made on the grounds that the Institutional Investor Group timely filed this Motion, and is the "most adequate plaintiff" by virtue of possessing the largest financial interest in the relief sought by the Class. The Institutional Investor Group also meets the requirements of Rule 23 of the Federal Rules of Civil Procedure because its claims are typical of the claims of the other members of the Class, and the Institutional Investor Group will fairly and adequately represent the Class.

Further, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Institutional Investor Group seeks this Court's approval of its selection of Bernstein Litowitz and Grant & Eisenhofer – two experienced and leading securities class action law firms that have successfully prosecuted securities class actions, individually and together, before this Court and around the country – to serve as Co-Lead Counsel for the Class.

Last, the Institutional Investor Group seeks consolidation of the related securities class actions pending before this Court pursuant to Fed. R. Civ. P. 42(a).

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii-iii

I.      PRELIMINARY STATEMENT ....................................................................1

II.     STATEMENT OF FACTS ...........................................................................3

III.    ARGUMENT..................................................................................................7

        A.      The Institutional Investor Group Should Be
                Appointed Lead Plaintiff..................................................................7

                1.      The Institutional Investor Group Has
                        The Largest Financial Interest In The
                        Relief Sought.........................................................................7

                2.      The Institutional Investor Group Is An
                        Appropriate Lead Plaintiff Group.........................................8

                3.      The Institutional Investor Group
                        Otherwise Satisfies The Requirements
                        Of Rule 23 ...........................................................................10

        B.      The Court Should Approve The Institutional
                Investor  Group's Selection Of Co-Lead
                Counsel ............................................................................................14

        C.      All Related Actions Should Be Consolidated ...................................15

IV.     CONCLUSION.............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Armour v. Network Assocs. Inc.*,
  171 F. Supp. 2d 1044 (N.D. Cal. 2001)...............................................12

*Bowman v. Legato Sys.*,
  195 F.R.D. 655 (N.D. Cal. 2000)........................................................12

*Casden v. HPL Techs., Inc.*,
  2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003)..................16

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ........................................................7, 10

*Erikson v. Cornerstone Propane Partners LP*,
  2003 WL 22232387 (N.D. Cal. Sept. 15, 2003)..................................10

*Erikson v. Cornerstone Propane Partners LP*,
  2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003)....................10

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ......................................................10

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*,
  2000 WL 33173017 (D.N.J. Nov. 16, 2000) .........................................9

*In re Nature's Sunshine Prods., Inc.*,
  2006 WL 2380965 (D. Utah Aug. 16, 2006).........................................9

*Plichta v. SunPower Corp.*,
  No. 09 Civ. 05473 (N.D. Cal. Mar. 5, 2010) ........................................8

*Reimer v. Ambac Fin. Group, Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) .........................................9

*Schriver v. Impac Mortgage Holdings Inc.*,
  2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) .......................9

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................11

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999).................................................16

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659, 664 (C.D. Cal. 2005)......................................................7, 10, 11

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. Dec. 10, 2008) ...................................................9

*In re Versata, Inc. Sec. Litig.*,
    2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ...............................................8, 9

*Yanek v. Staar Surgical Co.*,
    2004 U.S. Dist. LEXIS 30953 (C.D. Cal. Dec. 15, 2004)...................................8

## STATUTES, RULES & REGULATIONS

15 U.S.C. § 78j(b) ...............................................................................................1

15 U.S.C. § 78t....................................................................................................1

15 U.S.C. § 78u-4(a)(3) ...............................................................................*passim*

17 C.F.R. § 240.10b-5.........................................................................................1

Fed. R. Civ. P. 23 ........................................................................................*passim*

Fed. R. Civ. P. 42(a)..........................................................................................16

## **MEMORANDUM OF LAW**

The Maryland State Retirement and Pension System ("Maryland SRPS"), Pennsylvania Public School Employees' Retirement System ("PSERS"), City of Philadelphia Board of Pensions and Retirement ("Philadelphia BPR"), Första-AP Fonden ("AP1"), and Metzler International Investments plc. ("Metzler") (collectively, the "Institutional Investor Group") respectfully submit this memorandum in support of their motion: (1) to be appointed as Lead Plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as Co-Lead Counsel for the Class; and (3) for consolidation of all related actions.

## I.    PRELIMINARY STATEMENT

Currently pending in this District are six related class actions (the "Actions"), brought on behalf of all persons who purchased securities of Toyota Motor Corporation ("Toyota" or the "Company"), including Toyota common stock and American Depositary Shares ("ADS"), between May 10, 2005 and February 2, 2010 (the "Class Period"). The Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), against Toyota and certain of its executive officers. The first of the Actions was filed on February 8, 2010, by shareholder Harry Stackhouse. On February 8, 2010, Mr. Stackhouse published notice of the pendency of his action to investors, which provided a deadline to seek Lead Plaintiff status by April 9, 2010.[1]

---

[1] A copy of Mr. Stackhouse's notice is attached as Exhibit A to the Declaration of Blair A. Nicholas in Support of the Motion of the Institutional Investor Group for Appointment as Lead Plaintiff, Approval of Its Selection of Co-Lead Counsel, and for Consolidation of Related Actions (herein, the "Nicholas Decl.").

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and also makes a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, the members of the Institutional Investor Group believe that they are the "most adequate plaintiff[s]" by virtue of their significant financial interest in Toyota securities. Specifically, the Institutional Investor Group incurred losses totaling more than $123 million in connection with its purchases of Toyota securities during the Class Period.[2] The members of the Institutional Investor Group further satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as their claims are typical of the other members of the Class, and they will fairly and adequately represent the Class.

In this regard, the members of the Institutional Investor Group have conferred telephonically with each other, independently and through counsel, on multiple occasions in advance of this motion and determined to jointly seek appointment as Lead Plaintiff for the benefit of the Class. The members of the Institutional Investor Group have experience serving as fiduciaries and in conducting and supervising counsel in complex securities litigation, and are therefore paradigmatic Lead Plaintiffs under the PSLRA. Lastly, the Institutional Investor Group has selected Bernstein Litowitz and Grant & Eisenhofer, two law firms with substantial experience in prosecuting securities class actions, to serve as Co-Lead Counsel for the Class. Accordingly, the Institutional Investor Group

---

[2] Copies of the PSLRA-required Certifications of the members of the Institutional Investor Group are attached as Exhibit B to the Nicholas Decl. In addition, charts setting forth calculations of the Institutional Investor Group's losses are attached as Exhibit C to the Nicholas Decl.

1    respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant

2    its motion.

3    II.    <u>STATEMENT OF FACTS</u>

4           By 2006, Toyota had surpassed General Motors as the world's largest

5    automaker in terms of sales, net worth, revenue and profits.  Toyota gained its

6    competitive advantage and ascended to the top of the field based on its reputation

7    as an industry leader in safety and quality.  For the past five years, North America

8    has been the largest geographical market for Toyota, representing approximately

9    35% of Toyota's overall sales, with sales in the United States accounting for

10    approximately 90% of Toyota's North American sales.

11           In Toyota's quest to grow its U.S. sales and become the largest car

12    manufacturer in the world, the Company misled investors, concealing known

13    manufacturing and design defects in its vehicles from investors, consumers and

14    regulators in the United States and around the world.  Since 2002, the U.S.

15    National Highway Traffic Safety Administration ("NHTSA") has received

16    thousands of complaints regarding unintended acceleration, or "sticking"

17    accelerators, in Toyota vehicle models, including the Company's luxury Lexus

18    sedans and Tacoma pickup trucks.  In fact, the NHTSA initiated at least three

19    separate investigations into the issue before forcing Toyota to issue its first

20    unintended acceleration-related advisory in September 2007.

21           Through its September 2007 advisory, Toyota told customers of the risk of

22    sudden acceleration in the Company's Camry and Lexus models, but maintained

23    that sudden acceleration was caused solely by "pedal entrapment," a term used to

24    describe a phenomenon in which the gas pedal becomes lodged underneath the

25    car's floor mat.  Toyota offered to replace 55,000 floor mats in its Camry and

26    Lexus models, but continued to maintain that the acceleration problems were the

27    result of "human error," rather than as the result of any manufacturing or design

28    error.

Throughout the Class Period, Toyota experienced an increasingly high volume of consumer complaints and accidents related to unintended acceleration in multiple Toyota vehicle models. Despite its knowledge of those incidents, the Company continued to deny that there were any significant safety or quality issues with any of its vehicles. Indeed, during the Class Period, Toyota disseminated SEC filings, press releases and oral statements that contained material misrepresentations and omissions concerning the Company's operations, including the problems of unintended acceleration that were occurring in its vehicles. For example, Toyota's SEC filings touted the Company's reputation for quality, and represented that Toyota was "[d]edicate[d] to providing clean and safe products and to enhancing the quality of life everywhere through all our activities" and was "continu[ing] to focus on the development of vehicle safety technologies and their incorporation into products." In its public statements, Toyota rebuffed questions about vehicle quality, stating, for example, that "Everything we're seeing indicates that quality is in fact getting better." The Company specifically denied that sudden acceleration of Toyota vehicles resulted from any mechanical or quality issue, with one Company spokesman stating, with regard to sudden acceleration, that "in most cases [regulators] have found it's a misapplication of the pedals by the driver."

A widely publicized crash involving a Lexus ES 350 sedan driven by an off-duty California Highway Patrol officer who could not stop the vehicle – which careened through an intersection, rolled over and burst into flames, killing all four passengers – raised concerns that Toyota's acceleration problems had not been resolved. Following this fatal crash and as a result of further prodding by the NHTSA, Toyota issued a recall for floor mats in 3.8 million vehicles in November 2009. The Company continued to maintain that loose floor mats were the sole cause of any sudden acceleration problems and that there was no "vehicle based cause" of the problem.

The NHTSA immediately rebuked Toyota's statement that floor mats were the sole cause of its vehicles' acceleration problems, describing the Company's statements as "misleading and inaccurate." On November 25, 2009, Toyota amended its recall, implementing several other changes, including reconfiguring the shape of the accelerator system and redesigning the floor mats. The Company also stated that it would install "smart pedals" that would allow drivers to apply the brakes, even if the gas pedal was depressed.

On or about January 19, 2010, Toyota executives admitted to the NHTSA for the first time that loose floor mats were not the sole cause of sudden acceleration problems in Toyota vehicles, identifying a known defect in certain models that caused the gas pedal to become "stuck." Following a series of meetings between the NHTSA and Toyota executives in Washington, D.C., the NHTSA forced Toyota to issue a vehicle recall. Specifically, on January 21, 2010, Toyota issued a massive recall of eight vehicle models, totaling approximately 2.3 million vehicles, and admitted publicly that unintended acceleration in its vehicles was not solely attributable to driver error and floor mat placement, but rather was the result of "sticking" accelerators.

On January 26, 2010, Toyota went a step further and announced that it was halting the sale of the eight Toyota models at issue, representing more than 59% of Toyota's sales, while it addressed the sticking accelerator problem. In addition, the Company announced that it would temporarily shut down its North American assembly line to work on fixing the problem. As a result of this news, the price per Toyota ADS fell $7.01, or 8%, from $86.78 to $79.77, on high volume. The price per share of Toyota common stock also fell, dropping ¥165 to close at ¥3705.

On February 1, 2010, the President and CEO of Toyota Motor Sales, U.S.A., Inc., James Lentz, appeared on national television in the U.S. and admitted, "the sticking accelerator pedal, we had knowledge of that in October of last year [2009]" – three months before disclosing the problem to investors. Then, on

February 2, 2010, Toyota reported that its U.S. sales for January 2010 were down 16% compared to a year earlier due to the recall and related sales suspensions.  As a result of this news, the price per ADS of Toyota fell an additional $4.69, or 6%, from $78.18 to $73.49, on high volume.  The price per share of Toyota common stock also fell, dropping ¥120 to close at ¥3280.

As reported in *The Wall Street Journal* on February 8, 2010, Toyota executives admitted that the Company knew about the gas pedal defect in Toyota vehicles but failed to disclose it to the NHTSA and other regulators.  According to the article, Toyota's secretive corporate culture was contrary and, in fact, opposite of the Company's espoused commitment to the values of quality, visibility and problem-solving.

On February 22, 2010, U.S. federal prosecutors opened a criminal investigation into Toyota's unintended acceleration problems, and the SEC served Toyota a subpoena seeking documents related to the problems and the Company's disclosure policies and practices.  Additionally, the U.S. Congress is conducting its own investigation and hearings surrounding Toyota's recalls.   Through these investigations and other sources, evidence is emerging that Toyota misled U.S. regulators, including the NHTSA, and U.S. courts.  Specifically, it appears as if Toyota withheld from the NHTSA and U.S. courts critical documents that show that Toyota collected, but failed to disclose, certain information relating to "design problems" and "countermeasures used to resolve issues" throughout the Class Period.  Indeed, on April 5, 2010, U.S. Transportation Secretary Ray LaHood announced that the NHTSA would seek an unprecedented civil fine based on the Company's failure to alert the regulator to a vehicle defect that it had known about since at least September 29, 2009.  In announcing that record-setting fine, Secretary LaHood said that Toyota "knowingly hid a dangerous defect for months from U.S. officials and did not take action to protect millions of drivers and their families."

III.   <u>ARGUMENT</u>

The PSLRA permits any member of the class to move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.   *See* 15 U.S.C. § 78u-4(a)(3)(A).  The Institutional Investor Group satisfies this deadline by making this motion.

 A. The Institutional Investor Group
   <u>Should Be Appointed Lead Plaintiff</u>

The Institutional Investor Group respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.*; *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 664 (C.D. Cal. 2005).

 1. The Institutional Investor
   Group Has The Largest
   <u>Financial Interest In The Relief Sought</u>

The Institutional Investor Group should be appointed Lead Plaintiff because it believes it has the largest financial interest in the relief sought by the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Cavanaugh*, 306 F.3d at 730.  As demonstrated herein, the members of the Institutional Investor Group have sustained losses of approximately $123 million from its transactions in Toyota securities.  *See* Nicholas Decl., Exhibits B and C.  To the best of the Institutional Investor Group's knowledge, there are no other applicants who have sought, or are seeking, appointment as Lead Plaintiff that have a larger financial interest arising from transactions in Toyota securities.  Accordingly, the Institutional Investor Group believes that it has the largest financial interest of any qualified movant

1    seeking appointment as Lead Plaintiff.

2              2.    The Institutional Investor Group Is
                     An Appropriate Lead Plaintiff Group
3

4          The appointment of a group of class members as the Lead Plaintiff is

5    expressly permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), and courts in this

6    District and others have recognized the propriety of appointing such groups.  *See,*

7    *e.g., Yanek v. Staar Surgical Co.*, No. CV 04-8007, 2004 U.S. Dist. LEXIS 30953,

8    *15-*16 (C.D. Cal. Dec. 15, 2004) (collecting cases); *see also In re Versata, Inc.*

9    *Sec. Litig.*, No. C 01-1439, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001)

10   ("This Court therefore finds that under appropriate circumstances small groups,

11   whether or not they have any pre-litigation relationship, can aggregate their

12   financial losses."); *Plichta v. SunPower Corp.*, No. 09 Civ. 05473, Dkt. No. 70

13   (N.D. Cal. Mar. 5, 2010) (appointing U.S. and foreign institutional investors as co-

14   lead plaintiffs).

15         Here, the members of the Institutional Investor Group determined to jointly

16   seek appointment as Lead Plaintiff to provide the Class with a strong and diverse

17   leadership and to ensure that a broad base of Toyota securities purchasers will

18   actively direct this litigation.  Indeed, the Institutional Investor Group, comprised

19   of both public and private funds from the U.S. and abroad that purchased Toyota

20   securities on both U.S. and foreign exchanges, provides diverse representation of

21   the entire Class represented in this action.  The members of the Institutional

22   Investor Group conferred telephonically with each other on numerous occasions,

23   independently and through counsel.  As a result of their shared goals and desire to

24   work with other sophisticated and experienced institutional investors, the members

25   of the Institutional Investor Group authorized counsel to seek joint appointment as

26   Lead Plaintiff on behalf of the Institutional Investor Group and, if appointed, to

27   lead this litigation in accordance with a joint prosecution agreement, as set forth in

28

the Joint Declaration.[3]   The Institutional Investor Group has also discussed at length a plan for litigating this action and supervising counsel, and has developed a unified litigation strategy and process.  *Id.*   Such declarations and intra-group discussions are widely accepted as adequate evidence in support of a Lead Plaintiff group.  *See  Schriver v. Impac Mortgage Holdings, Inc.*, No. SACV 06-31, 2006 U.S. Dist. LEXIS 40607, at *30 n.11, *33 (C.D. Cal. May 1, 2006) (noting that courts consider submitted declarations to determine whether group will adequately represent the class and then appointing group of two who submitted a joint declaration); *see also Versata,* 2001 WL 34012374, at *7; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008), *citing Reimer v. Ambac Fin. Group, Inc.*, Nos. 08 Civ. 411, et al., 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *In re Nature's Sunshine Prods., Inc.*, No. 2:06-CV-267, 2006 WL 2380965, at *1 (D. Utah Aug. 16, 2006); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605, 2000 WL 33173017, at *4 (D.N.J. Nov. 16, 2000).

The conclusion that the Institutional Investor Group has acted, and will continue to act, independently of counsel is bolstered by the fact its members came together as a group on their own volition, as well as the experience of these funds in supervising counsel's prosecution of complex securities litigation.  Because the Institutional Investor Group is a small, cohesive group of institutional investors that have provided evidence of the manner in which they have determined to work together and their plan for joint oversight of the prosecution of this litigation, its members' financial interest is properly aggregated for purposes of this motion.

---

[3] *See* Institutional Investor Group Joint Declaration, herein the "Joint Declaration," attached as Exhibit D to the Nicholas Decl.  The joint prosecution agreement can be submitted *in camera* at the Court's request.

3.    The Institutional Investor Group Otherwise
Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the members of the Institutional Investor Group also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  On a motion to serve as Lead Plaintiff, the movant must only make a preliminary showing that it satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.  *See Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004) (citing *Erikson v. Cornerstone Propane Partners LP*, No. 03-2522, 2003 WL 22232387, at *3 (N.D. Cal. Sept. 15, 2003); *see also Cavanaugh*, 306 F.3d at 730; *Autobytel*, 226 F.R.D. at 666 ("'A wide ranging analysis is not appropriate' to determine whether [the movant] has made a prima facie showing that he satisfies the requirements of Rule 23, and 'should be left for consideration on a motion for class certification.'").  Here, the Institutional Investor Group unquestionably satisfies both requirements.

The Institutional Investor Group's claims are typical of the claims of other purchasers of Toyota securities.  Generally, the test of typicality "entails an inquiry whether the [Lead Plaintiff's] individual circumstances are markedly different or … the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *Autobytel*, 226 F.R.D. at 667.  The Institutional Investor Group's claims in this action arise from the very same course of conduct as the claims of the other members of the Class: (1) the purchase of Toyota securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) being damaged thereby.  *See id.* (citations omitted)*; accord Erikson v. Cornerstone Propane Partners L.P.*, No. C 03-2522, 2003 U.S. Dist. LEXIS 18009, at *11 (N.D. Cal. Sept. 9, 2003).

The Institutional Investor Group likewise satisfies the adequacy requirement of Rule 23.   Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class.   This requirement is met if "the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Autobytel*, 226 F.R.D. at 667; *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (representative party is adequate if no conflicts with other class members and representative will vigorously prosecute action on behalf of the class).   The Institutional Investor Group easily satisfies the elements of the adequacy requirement.  The Institutional Investor Group's interests are perfectly aligned with those of the other members of the Class and are not antagonistic in any way. Indeed, as noted above, by virtue of its diversity, the Institutional Investor Group is able to fully represent the interests of every member of the Class.   There are, furthermore, no facts suggesting that any actual or potential conflict of interest or other antagonism exists between the Institutional Investor Group and other Class members.   The members of the Institutional Investor Group submitted Certifications and the Joint Declaration, and entered into a joint prosecution agreement, affirming their understanding of the duties owed to Class members through their commitment to oversee the prosecution of this class action.   *See* Nicholas Decl., Exhibits B and D.   Through those Certifications and the Joint Declaration, as well as the joint prosecution agreement, the Institutional Investor Group accepts the fiduciary obligations it will assume if appointed Lead Plaintiff in this action.  *Id.*

Further, the members of the Institutional Investor Group are a classic example of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA – sophisticated institutional investors with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the

role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions"); *see also Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001) (quoting *Bowman v. Legato Sys.*, 195 F.R.D. 655, 659 (N.D. Cal. 2000)) ("As an institutional investor with a large financial stake in the outcome of this litigation, [Movant] 'is exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements.'").

Maryland SRPS is a public pension system that administers the survivor, disability and retirement benefits covering its 350,000 members, which include active and former Maryland State and local government employees, teachers, police, correctional and law enforcement officers, judges, and legislators. Maryland SRPS has more than $30 billion in assets and is represented by the Office of the Attorney General of Maryland ("OAG"), which serves as legal counsel to the System.  The Maryland Attorney General's Office, including several assistant attorneys that serve as dedicated full-time legal staff that advise Maryland SRPS, will represent Maryland SRPS in this action and will be responsible for overseeing the litigation.

Moreover, Maryland SRPS, through the Maryland Attorney General, can commit the involvement of a seasoned litigator with relevant experience.  With more than 32 years of experience as a litigator at major law firms, Campbell Killefer, who serves as Deputy Chief of Civil Litigation for the Maryland OAG, has extensive experience prosecuting actions against Japanese corporations and expertise in the Japanese cultural issues impacting litigation.   Among other representations, Mr. Killefer served as the trustee to the $350 million Drexel Civil Disgorgement Fund, *Securities & Exchange Commission v. Drexel Burnham Lambert, Inc.,* No. 88 Civ. 6209 (S.D.N.Y.), where he was appointed by United States District Court Judge Milton Pollack to supervise the evaluation, allocation and distribution of awards among multiple securities classes.

PSERS is a public pension fund system organized for the benefit of the current and retired public school employees of the Commonwealth of Pennsylvania. PSERS has approximately 450,000 members and annuitants, and net assets of approximately $47 billion as of December 31, 2009.  Moreover, PSERS has demonstrated its ability to effectively serve as a Lead Plaintiff in complex securities class action litigation, including by serving as Lead Plaintiff in *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (D.N.J.).  PSERS was explicitly commended by the Court in *Royal Dutch* for its successful management of the litigation and service as a representative of the class.  Likewise, Philadelphia BPR provides benefits to police, fire and civilian workers of the City of Philadelphia.   Philadelphia BPR has over 30,000 active members and approximately 35,000 retired members.

AP1 is one of the largest public pension funds in Sweden, and has net assets of over $25 billion that are allocated among a wide spread of investments around the world, with approximately 30% of those assets invested in U.S. equities and fixed income assets.  AP1 is also actively involved in corporate governance issues, and has an established program for reviewing corporate governance issues and ensuring environmental and ethical compliance at its portfolio companies.  Metzler is an umbrella fund for six sub-funds organized as an Undertaking for Collective Investments in Transferable Securities ("UCITS") pursuant to Irish laws.  Metzler operates in the International Financial Services Centre in Dublin, Ireland, and is regulated by the Irish Financial Regulator.

Finally, the Institutional Investor Group has demonstrated its adequacy through the selection of Bernstein Litowitz and Grant & Eisenhofer to represent the Class.   As discussed more fully below, Bernstein Litowitz and Grant & Eisenhofer are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

B.   The Court Should Approve
     The Institutional Investor
     Group's Selection Of Co-Lead Counsel

The Court should approve the Institutional Investor Group's choice of Bernstein Litowitz and Grant & Eisenhofer to serve as Co-Lead Counsel.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class they seek to represent.

Bernstein Litowitz and Grant & Eisenhofer are among the preeminent securities class action law firms in the country, having been appointed sole or co-lead counsel in numerous complex securities class actions in this District and around the country.  *See, e.g.*, Bernstein Litowitz's Firm Biography attached as Exhibit E to the Nicholas Decl.; Grant & Eisenhofer's Firm Biography attached as Exhibit F to the Nicholas Decl.

Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.), in which settlements totaling in excess of $6 billion – one of the largest recoveries in securities class action history – were obtained for the class.  Bernstein Litowitz also served as co-lead counsel in *In re McKesson HBOC, Inc. Securities Litigation* (N.D. Cal.), in which Bernstein Litowitz helped obtain a $960 million settlement from the issuer defendant – the single largest settlement of any securities class action within the courts of the Ninth Circuit – and an additional $72 million from the defendant auditor and $10 million from the investment banking defendant.  Bernstein Litowitz is currently serving as lead counsel in the *New Century* securities class action and, since the enactment of the PSLRA, Bernstein Litowitz has served as lead or co-lead counsel in numerous other successful securities class actions in federal district courts within the Ninth Circuit, including *In re International Rectifier Corp. Securities Litigation* (C.D. Cal.), *In re Gemstar-TV Guide Int'l Securities Litigation* (C.D. Cal.), *In re Legato Systems Inc. Securities Litigation* (N.D. Cal.), and *In re Network Assocs. Securities Litigation* (N.D. Cal.).  Other recent cases in which Bernstein Litowitz has been

recognized as an appropriate lead or co-lead counsel since the passage of the PSLRA include, for example, *In re Bank of America Securities Litigation* (S.D.N.Y.) and *In re Refco, Inc. Securities Litigation* (S.D.N.Y.). *See* Nicholas Decl. at Exhibit E.

Grant & Eisenhofer has been lead counsel in several of the largest securities class actions in history, including *In re Tyco International Limited Securities Litigation* (D.N.H.), in which a $2.975 billion settlement was achieved on behalf of the class, and *In re Global Crossing, Limited Securities & "ERISA" Litigation*, (S.D.N.Y.), where settlements exceeded $345 million. Most recently, Grant & Eisenhofer resolved securities litigation pending against Marsh & McLennan for $400 million. Grant & Eisenhofer also has experience taking securities class actions to trial, having served as sole lead counsel in *In re Safety-Kleen Bondholders Litigation* (D.S.C.), which went to a jury trial and ended in judgments as a matter of law against two of the company's executives for nearly $200 million, and settlements with the remaining defendants shortly before closing arguments. *See* Nicholas Decl., Exhibit F.

Accordingly, the Court should approve the Institutional Investor Group's selection of Bernstein Litowitz and Grant & Eisenhofer as Co-Lead Counsel for the Class.

C.     All Related Actions Should Be Consolidated

As discussed above, there are at least six related securities class actions pending in the Central District of California on behalf of investors who purchased Toyota securities:

| **Abbreviated Case Name** | **Case Number** | **Date Filed** |
|---|---|---|
| *Stackhouse v. Toyota Motor Corp., et al.* | 10-922-DSF | 2/8/10 |
| *Mustric v. Toyota Motor Corp., et al.* | 10-1429-DSF | 2/25/10 |
| *Squires v. Toyota Motor Corp., et al.* | 10-1452-DSF | 2/26/10 |
| *Moss v. Toyota Motor Corp., et al.* | 10-1911-DSF | 3/16/10 |
| *Gelenberg v. Toyota Motor Corp., et al.* | 10-2196-DSF | 3/25/10 |
| *Sampoli v. Toyota Motor Corp., et al.* | 10-2253-DSF | 3/26/10 |

Consolidation is appropriate where, as here, there are actions pending in the same court that involve common questions of fact or law.  Fed. R. Civ. P. 42(a).  The pending actions present virtually identical factual and legal issues, arising out of the same alleged course of misconduct – the purchase of Toyota securities artificially inflated by misstatements and omissions concerning the quality and safety of Toyota vehicles.   Accordingly, consolidation is appropriate "in the interest of judicial economy and to relieve the parties and absent class members of the burdens associated with participating in duplicative litigation."  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1130 (C.D. Cal. 1999).  "Indeed, the Private Securities Litigation Reform Act of 1995 (PSLRA) provides that consolidation should occur when the various securities class actions assert substantially the same claim."  *Casden v. HPL Techs., Inc.*, No C-02-3510, 2003 U.S. Dist. LEXIS 19606, at *5 (N.D. Cal. Sept. 29, 2003).

IV.   CONCLUSION

For the reasons explained above, the Institutional Investor Group is the "most adequate plaintiff" under the PSLRA.  The Institutional Investor Group, with losses of $123 million, has the "largest financial interest" arising out of the purchase of Toyota securities and satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure as adequate class representatives with claims typical of the other purchasers of Toyota securities.  Accordingly, the Institutional

Investor Group respectfully requests that the Court: (1) appoint the Institutional Investor Group as Lead Plaintiff; (2) approve the selection of Bernstein Litowitz and Grant & Eisenhofer to serve as Co-Lead Counsel; and (3) consolidate all related actions.

Dated: April 9, 2010                     Respectfully submitted,

                                         BERNSTEIN LITOWITZ BERGER
                                           & GROSSMANN LLP


                                         _____/s/ Blair A. Nicholas_____
                                               BLAIR A. NICHOLAS

                                         BLAIR A. NICHOLAS
                                         (blairn@blbglaw.com)
                                         IAN D. BERG
                                         (ianb@blbglaw.com)
                                         12481 High Bluff Drive, Suite 300
                                         San Diego, CA 92130
                                         Tel:   (858) 793-0070
                                         Fax:   (858) 793-0323
                                                 -and-
                                         GERALD H. SILK
                                         (jerry@blbglaw.com)
                                         AVI JOSEFSON
                                         (avi@blbglaw.com)
                                         1285 Avenue of the Americas, 38th Floor
                                         New York, NY 10019
                                         Tel:   (212) 554-1400
                                         Fax:   (212) 554-1444

                                         GRANT & EISENHOFER P.A.
                                         JAY W. EISENHOFER
                                         (jeisenhofer@gelaw.com)
                                         MEGAN D. MCINTYRE
                                         (mmcintyre@gelaw.com)
                                         GEOFFREY C. JARVIS
                                         (gjarvis@gelaw.com)
                                         HUNG G. TA
                                         (hta@gelaw.com)
                                         DEBORAH A. ELMAN
                                         (delman@gelaw.com)
                                         485 Lexington Ave 29th Floor
                                         New York, New York 10017
                                         Tel:   (646) 722-8500
                                         Fax:   (646) 722-8501

                                         *Counsel for Proposed Lead Plaintiff the Institutional Investor Group and Proposed Co-Lead Counsel for the Class*

BARROWAY TOPAZ KESSLER
MELTZER & CHECK LLP
DARREN J. CHECK
(dcheck@btkmc.com)
SEAN M. HANDLER
(shandler@btkmc.com)
280 King of Prussia Rd.
Radnor, PA 19103
Tel:   (610) 667-7706
Fax:   (610) 667-7056

*Additional Counsel for the City of
Philadelphia Board of Pensions and
Retirement*