Michael Goldberg (#188669)
mgoldberg@glancylaw.com
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Proposed Liaison Counsel for Lead Plaintiff and the Class*

Joseph F. Rice
jrice@motleyrice.com
James M. Hughes
jhughes@motleyrice.com
William S. Norton
bnorton@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina  29464
Tel: (843) 216-9000
Fax: (843) 216-9440

Christopher J. Keller
ckeller@labaton.com
Alan I. Ellman
aellman@labaton.com
Stefanie J. Sundel
ssundel@labaton.com
140 Broadway
LABATON SUCHAROW LLP
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Proposed Lead Counsel for Lead Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY STACKHOUSE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., AKIO TOYODA, FUJIO CHO, ROBERT S. CARTER, IRVING A. MILLER, YOSHIMI INABA, JAMES E. LENTZ, III, and ROBERT C. DALY,<br><br>Defendants. | No.: 2:10-cv-00922-DSF-AJW<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**<br><br>DATE:   May 3, 2010<br>TIME:   1:30 p.m.<br>CTRM:   840 |

1
2   TOM MUSTRIC, Individually and On Behalf   ) No.: 2:10-cv-01429-DSF-AJW
    of All Others Similarly Situated,             )
3                                                  )
                       Plaintiff,                  )
4          vs.                                     )
5                                                  )
    TOYOTA MOTOR CORPORATION,                      )
6   TOYOTA MOTOR SALES, U.S.A., INC.,              )
    TOYOTA MOTOR NORTH AMERICA                     )
7   INC., AKIO TOYOTA, FUJIO CHO,                  )
8   ROBERT S. CARTER, IRVING A. MILLER,            )
    YOSHIMI INABA, JAMES E. LENTZ, III,            )
9   and ROBERT C. DALY,                            )
10                     Defendants.                 )

11  KATHRYN A. SQUIRES, on behalf of               ) No.: 2:10-cv-01452-DSF-AJW
    Herself and All Others Similarly Situated,     )
12                                                 )
13                     Plaintiff,                  )
                                                   )
14         vs.                                     )
15                                                 )
    TOYOTA MOTOR CORPORATION,                      )
16  TOYOTA MOTOR NORTH AMERICA,                    )
    INC., TOYOTA MOTOR SALES, U.S.A.,              )
17  INC., AKIO TOYODA, ROBERT S.                   )
18  CARTER, IRVING A. MILLER, YOSHIMI              )
    INABA, JAMES E. LENTZ, III, ROBERT C.          )
19  DALY, FUJIO CHO, MITSUO                        )
20  KINOSHOTA, YOICHIRO ICHIMARU,                  )
    TAKESHI SUZUKI, TAKAHIKO IJICHI,               )
21  and LATSUAKI WATANABE,                         )
22                                                 )
                       Defendants                  )
23
24
25
26
27
28

1
2

ROBERT M. MOSS, individually and on
behalf of all others similarly situated,

No.: 2:10-cv-01911-DSF-AJW

3
4

Plaintiff,

vs.

5
6
7
8
9
10
11
12

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR NORTH AMERICA,
INC., TOYOTA MOTOR SALES, U.S.A.,
INC., AKIO TOYODA, ROBERT S.
CARTER, IRVING A. MILLER, YOSHIMI
INABA, JAMES E. LENTZ, III, ROBERT C.
DALY, FUJIO CHO, MITSUO KINOSHITA,
YOICHIRO ICHIMARU, TAKESHI
SUZUKI, TAKAHIKO IJICHI, and
KATSUAKI WATANABE,

13

Defendants.

14
15

PHILIP GELENBERG, individually and on
behalf of all others similarly situated,

No.: 2:10-cv-02196-DSF-AJW

16
17

Plaintiff,

vs.

18
19
20
21
22
23
24
25

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR NORTH AMERICA,
INC., TOYOTA MOTOR SALES, U.S.A.,
INC., AKIO TOYODA, ROBERT S.
CARTER, IRVING A. MILLER, YOSHIMI
INABA, JAMES E. LENTZ, III, ROBERT C.
DALY, FUJIO CHO, MITSUO KINOSHITA,
YOICHIRO ICHIMARU, TAKESHI
SUZUKI, TAKAHIKO IJICHI, and
KATSUAKI WATANABE,

Defendants.

26
27
28

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

L. PATRICIA SAMPOLI, on behalf of herself and all others similarly situated,

                         Plaintiff,

     vs.

TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR NORTH AMERICA, INC., AKIO TOYODA, ROBERT S. CARTER, IRVING A. MILLER, YOSHIMI INABA, JAMES E. LENTZ, III, ROBERT C. DALY, FUJIO CHO, MITSUO KINOSHITA, YOICHIRO ICHIMARU, TAKESHI SUZUKI, TAKAHIKO IJICHI, and KATSUAKI WATANABE,

                        Defendants.

No.: 2:10-cv-02253-DSF-AJW

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS .........................................................................3

ARGUMENT ............................................................................................5

I.   THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS...........5

II.  THE GLOBAL INSTITUTIONAL INVESTOR GROUP SHOULD BE
     APPOINTED LEAD PLAINTIFF ..........................................................6

     A.   The Procedural Requirements Pursuant to the PSLRA ............6

     B.   The Global Institutional Investor Group Is the "Most Adequate
          Plaintiff" ...........................................................................7

          1.   The Global Institutional Investor Group Has Complied with
               the PLSRA and Should Be Appointed Lead Plaintiff ....................7

          2.   The Global Institutional Investor Group Has the Largest
               Financial Interest.........................................................8

          3.   The Global Institutional Investor Group Satisfies the
               Requirements of Rule 23 ................................................9

          4.   The Members of the Global Institutional Investor  Group
               Are Precisely the Type of Lead Plaintiffs Congress
               Envisioned When It Passed the PSLRA .......................12

III. THE COURT SHOULD APPROVE THE GLOBAL INSTITUTIONAL
     INVESTOR GROUP'S CHOICE OF COUNSEL ............................13

CONCLUSION............................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Apple v. LJ Int'l, Inc.,
    No. 07-cv-6076, 2008 U.S. Dist. LEXIS 12618
    (C.D. Cal. Feb. 8, 2008)............................................................7

In re Cavanaugh,
    306 F.3d 726 (9th Cir. 2002) .............................................7, 8, 9

In re Cendant Corp. Litig.,
    264 F.3d at 264 .................................................................13

Crossen v. CV Therapeutics,
    No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396
    (N.D. Cal. Aug. 9, 2005) ...............................................10, 11

Ferrari v. Gisch,
    225 F.R.D. 599 (C.D. Cal. 2004)............................................8

Garber v. Randell,
    477 F.2d 711 (2d Cir. 1973) ................................................6

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1988) .............................................10

In re Olsten Corp. Sec. Litig.,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................6

In re Party City Sec. Litig.,
    189 F.R.D. 91 (D.N.J. 1999).................................................2

Primavera Familienstiftung v. Askin,
    173 F.R.D. 115 (S.D.N.Y. 1997) .........................................6

Richardson v. TVIA, Inc.,
    No. C 06-6304 RMW, 2007 WL 1129344
    (N.D. Cal. Apr. 16, 2007) ..................................................11

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

ii

Schriver v. Impac Mortgage Holdings, Inc.,
    SACV 06-31 CJC (RNBx), 2006 Dist. LEXIS 40607
    (C.D. Cal. May 1, 2006) ....................................................................................10

Siegall v. Tibco Software, Inc.,
    No. 05 Civ. 2146, 2006 WL 1050173
    (N.D. Cal. Feb. 24, 2006) .................................................................................5, 9

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2003) .............................................................................11

In re Waste Mgmt., Inc. Sec. Litig.,
    128 F. Supp. 2d 401 (S.D. Tex. 2000).............................................................14

Weltz v. Lee,
    199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................6

Yousefi v. Lockheed Martin Corp.,
    70 F. Supp. 2d 1061 (C.D. Cal. 1999) ...............................................................5

## DOCKETED CASES

In re Countrywide Sec. Litig.,
    2:07-cv-05295-MRP-MAN, slip op.
    (C.D. Cal. Nov. 28, 2007).............................................................................9, 11

Marsden v. Select Medical Corp.,
    No. 04-4020, slip op. (E.D. Pa. Oct. 5, 2006) ...............................................13

In re Monster Worldwide, Inc. Sec. Litig.,
    No. 07-cv-2237 (S.D.N.Y. filed Mar. 15, 2007) ...........................................14

In re NPS Pharms., Inc. Sec. Litig.,
    No. 2:06-cv-00570-PGC-PMW (D. Utah Nov. 17, 2006) ...........................14

In re Surebeam Corp. Sec. Litig.,
    No. 03-CV-1721 JM (POR),
    2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ..................................................11

1

## STATUTES

2

15 U.S.C. § 78u-4(a)(3) et seq. ........................................................................ passim

Fed. R. Civ. P. 23(a) ...................................................................................... passim

Fed. R. Civ. P. 42(a) ...........................................................................................5

3

4

5

6

7

## MISCELLANEOUS

8

H.R. Conf. Rep. No. 104-369 (1995),
         as reprinted in 1995 U.S.C.A.A.N. 730   .................................................1, 12

S. Rep. No. 104-98 (1995),
         as reprinted in 1995 U.S.C.A.A.N. 679 .......................................................1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NO.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

iv

## PRELIMINARY STATEMENT

Universal Investment-Gesellschaft mbH ("Universal"), Union Asset Management Holding AG ("Union"), Skandia Life Insurance Company Ltd. ("Skandia Liv"), State-Boston Retirement System ("Boston"), and Local 810 Affiliated Pension Plan/United Wire Metal & Machine Pension Fund ("Local 810/United Wire") (collectively, the "Global Institutional Investor Group") file this memorandum of points and authorities in support of their motion for: (1) consolidation of all related securities fraud class actions and all future related securities fraud class actions filed on behalf of purchasers of the securities of Toyota Motor Corporation ("Toyota"), including its common stock and American Depository Shares ("ADS");[1] (2) appointment as Lead Plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (3) approval of its selection of the law firms Motley Rice LLC ("Motley Rice") and Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel, and Glancy Binkow & Goldberg LLP ("Glancy Binkow") as Liaison Counsel for the Class; (4) and such other and further relief as the Court may deem just and proper.

In enacting the PSLRA, Congress expressly intended to encourage institutional investors like the Global Institutional Investor Group to serve as lead plaintiffs in securities class actions.  See H.R. Conf. Rep. No. 104-369, at 34 (1995), as reprinted in 1995 U.S.C.A.A.N. 730, 733, S. Rep. No. 104-98, at 10 (1995), as reprinted in 1995 U.S.C.A.A.N. 679, 690.  As described in the Certifications attached to the

---

[1]     The related securities class actions include:  Stackhouse v. Toyota Motor Corp., No. 2:10-cv-0922-DSF-AJW (C.D. Cal. filed Feb. 8, 2010); Mustric v. Toyota Motor Corp., No. 2:10-cv-01429-DSF-AJW (C.D. Cal. filed Feb. 25, 2010); Squires v. Toyota Motor Corp., No. 2:10-cv-01452-DSF-AJW (C.D. Cal. filed Feb. 26, 2010); Moss v. Toyota Motor Corp., No. 2:10-cv-01911-DSF-AJW (C.D. Cal. filed Mar. 16, 2010); Gelenberg v. Toyota Motor Corp., No. 2:10-cv-02196-DSF-AJW (C.D. Cal. filed Mar. 25, 2010); and Sampoli v. Toyota Motor Corp., No. 2:10-cv-02253-DSF-AJW (C.D. Cal. filed Mar. 26, 2010).

accompanying Declaration of Stefanie J. Sundel in Support of the Motion of the Global Institutional Investor Group for Consolidation of All Related Cases, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Sundel Decl.") as Exhibit A, the Global Institutional Investor Group has suffered losses of $70,729,493.07 under the last-in-first-out ("LIFO") method and $70,409,156.24 under the first-in-first-out ("FIFO") method, as a result of its purchases of Toyota securities, including common stock and ADS, between May 10, 2005 and February 2, 2010, inclusive (the "Class Period").[2]  To the best of its knowledge, the Global Institutional Investor Group has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, the Global Institutional Investor Group's Certifications demonstrate its members' intent to serve as Lead Plaintiffs in this litigation, including cognizance of the duties of serving in that role.  The Global Institutional Investor Group fully understands its duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action.  Moreover, the Global Institutional Investor Group satisfies the applicable requirements of both the PSLRA and Rule 23

---

[2]     The Global Institutional Investor Group has used the longest class period alleged for purposes of its Motion.  See Miller v. Dyadic Int'l, Inc., No. 07-cv-80948, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) ("the longest, most inclusive class period is appropriate at this stage of the litigation because it encompasses more potential class members.") (internal quotations and citation omitted); see also Grand Lodge of Pa. v. Peters, 8:07-cv-479-T26-EAJ, 2007 WL 1812641, at *2 (M.D. Fla. June 22, 2007) (calculating financial interest using longest class period and refusing to "delve into the merits of the claims and to define the class period at this early stage of the proceedings before a class has been certified or those issues have been fully briefed."); Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp., No. 08-cv-0458, 2009 WL 931198, at *3-4 (E.D. Wis. Mar. 27, 2009) ("[T]he class … should be defined as the broadest, most inclusive potential class … because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had the opportunity to develop the record.") (citations omitted); In re Party City Sec. Litig., 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (relying on the longest class period alleged in the class actions filed against the defendants).  After appointment, the Lead Plaintiff will reconcile the different class periods upon filing an amended complaint.

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS, APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

2

of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Pursuant to the PSLRA, the lead plaintiff selects lead counsel, subject to the Court's approval.  The Global Institutional Investor Group requests that the Court approve its choice of Motley Rice and Labaton Sucharow as Lead Counsel, and Glancy Binkow as Liaison Counsel.

### STATEMENT OF FACTS[3]

Historically, Toyota has enjoyed a reputation as an automobile manufacturer that produces vehicles of superior quality and safety.  This reputation helped Toyota become the largest automobile manufacturer in the world.  However, unbeknownst to investors, Toyota began to have serious safety and quality control problems as early as 2004, including problems concerning its electronic throttle control systems that were causing vehicles to suddenly accelerate unintentionally.  Despite Toyota's knowledge or reckless disregard of unintended acceleration problems, Toyota concealed them from the public and touted its vehicles' superior quality and safety.  Toyota knew there was an unusually high volume of consumer complaints about unintended acceleration; instead of stating the truth, however, Toyota blamed driver error and later the improper placement of floor mats.

On August 15, 2007, it was reported that the National Highway Traffic Safety Administration (the "NHTSA") was expanding an earlier investigation into safety problems with Toyota's Lexus brand to a much broader investigation that would include an engineering analysis.  Although this disclosure partially revealed that Toyota was having problems with the quality and safety of its vehicles, it did not reveal the full extent of the problems then known.  On September 29, 2009, Toyota commenced what would be a series of vehicle recalls relating to unintended acceleration.  In November 2009, the NHTSA publicly reprimanded Toyota for

---

[3]     These facts were derived from the allegations contained in Sampoli.

No.: 2:10-cv-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

3

inaccurate statements issued to the public in its campaign to deny these problems with its vehicles.  Then, on January 19, 2010, two Toyota executives told the chief of the NHTSA that not only was there a defect in the gas pedals of certain Toyota vehicles, but Toyota had known of these defects for more than a year.

On January 21, 2010, Toyota publicly admitted that the unintended acceleration issue was not solely caused by driver error and/or floor mats when it acknowledged a separate problem with "sticking" accelerator pedals in certain of its models.  On January 26, 2010, Toyota announced that it was halting the sale of eight Toyota models and shutting down its North American assembly lines for one week so it could fix the problem.  As a result of this news, Toyota's ADS plunged $7.01 per share to close at $79.77 per share on January 27, 2010, on high trading volume.  Toyota's common stock also fell, dropping ¥165 to close at ¥3705 on the same date.

On February 1, 2010, the President and CEO of Toyota Motor Sales U.S.A., Inc. admitted that "the sticking accelerator pedal, we had knowledge of that in October of last year."  On February 2, 2010, after the market closed, Toyota reported that its January 2010 U.S. sales were down 16 percent compared to a year earlier due to recalls and sales suspensions.  On this news, Toyota's ADS fell $4.69 per share, closing at $73.49 per share on February 3, 2010.  Toyota's common stock also fell to ¥3280, down ¥120 from the previous day.

On February 22, 2010, federal prosecutors opened a criminal investigation into Toyota's unintended acceleration problems, and the Securities Exchange Commission served Toyota with a subpoena seeking documents related to those problems and to Toyota's disclosures to shareholders.  That same month, senior Toyota officials, including its President, Defendant Akio Toyoda, testified before Congress seeking the truth behind Toyota's false and misleading public statements.

NO.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS, APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

4

1

## **ARGUMENT**

2

## **I.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS**

3

The PSLRA requires the Court to consider any motion to consolidate prior to

4

deciding a motion for appointment of lead plaintiff.  See 15 U.S.C. § 78u-

5

4(a)(3)(B)(ii).  Rule 42 of the Federal Rules of Civil Procedure ("Rule 42") provides:

6

> When actions involving a common question of law or fact

7

> are pending before the court, it may order a joint hearing or
> trial of any or all the matters in issue in the actions; it may

8

> order all the actions consolidated; and it may make such
> orders concerning proceedings therein as may tend to avoid

9

> unnecessary costs or delay.

10

Fed. R. Civ. P. 42(a).  The PSLRA also provides that "[i]f more than one action on

11

behalf of a class asserting substantially the same claim or claims arising under this

12

chapter has been filed, and any party has sought to consolidate those actions," the

13

Court shall determine consolidation prior to appointment of a lead plaintiff.  15 U.S.C.

14

§ 78u-4(a)(3)(B)(ii).  Consolidation pursuant to Rule 42(a) is proper and routinely

15

granted in actions such as these, when there are common questions of law and fact.

16

See, e.g., Siegall v. Tibco Software, Inc., No. 05 Civ. 2146, 2006 WL 1050173, at *2

17

(N.D. Cal. Feb. 24, 2006); Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061,

18

1064 (C.D. Cal. 1999).  Courts have recognized that securities class actions, in

19

particular, are ideally suited to consolidation pursuant to Rule 42(a) because their

20

unification expedites pretrial proceedings, reduces case duplication, avoids contacting

21

of parties and witnesses for inquiries in multiple proceedings, and minimizes the

22

expenditure of time and money by all concerned.  See, e.g., Primavera

23

Familienstiftung v. Askin, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).  Indeed, "[i]n

24

securities actions where the complaints are based on the same 'public statements and

25

reports,' consolidation is appropriate if there are common questions of law and fact"

26

and the parties will not be prejudiced.  Garber v. Randell, 477 F.2d 711, 714 (2d Cir.

27

1973) (citation omitted); Weltz v. Lee, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).

28

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

5

Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges.  Id.; see also In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998).

The actions pending before this Court present similar factual and legal issues, as they all involve the same subject matter, and present the same legal issues.  Each alleges the same violations of federal securities laws and is based on the same wrongful course of conduct.  Each names Toyota and overlapping individual defendants.  Because the actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions.  Accordingly, this Court should enter an Order that consolidates all related actions and any future filed cases.

## II.    THE GLOBAL INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure.  See 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Plaintiff in the first-filed action published a notice on Business Wire on February 8, 2010.  See Notice, Sundel Decl., Ex. D.  Business Wire is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service."  See Apple v. LJ Int'l, Inc., No. 07-cv-6076, 2008 U.S. Dist. LEXIS 12618, at *7 (C.D. Cal. Feb. 8, 2008).  This notice announced that applications for appointment as Lead Plaintiff were to be made no

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS, APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

6

later than April 9, 2010.  Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint.  15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant or movants that the Court determines to be most capable of adequately representing the interests of Class members.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining who is the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 . . . .

15 U.S.C. § 78u-4(a)(3)(B)(iii); see In re Cavanaugh, 306 F.3d 726, 729-30 (9th Cir. 2002).

Only by a showing that a Lead Plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class, will this presumption be overcome.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Accordingly, this Court should enter an order appointing the Global Institutional Investor Group as Lead Plaintiff.

### B.   The Global Institutional Investor Group Is the "Most Adequate Plaintiff"

#### 1.   The Global Institutional Investor Group Has Complied with the PLSRA and Should Be Appointed Lead Plaintiff

The Global Institutional Investor Group moves this Court to be appointed Lead

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS, APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

7

Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement.  The plaintiff in the first-filed action published notice on <u>Business Wire</u>, a national, business-oriented wire service, on February 8, 2010.  Accordingly, the Global Institutional Investor Group meets the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) by timely filing its motion on April 9, 2010.

This motion includes the required certifications from the Global Institutional Investor Group setting forth, among other things, transactions in Toyota securities during the Class Period, and indicating that its members have reviewed a complaint filed in the action and are willing to serve as a representative party on behalf of the class.[4]  <u>See</u> Certifications, Sundel Decl., Ex. A.  In addition, the Global Institutional Investor Group has retained competent and experienced counsel, as set forth in its counsels' firm resumes.  <u>See</u> Firm Resumes, Sundel Decl., Exs. E-G.

### 2.    The Global Institutional Investor Group Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action.  "So long as the plaintiff with the largest losses satisfies the adequacy requirements, he is entitled to lead plaintiff status . . . ."  <u>Ferrari v. Gisch</u>, 225 F.R.D. 599, 602 (C.D. Cal. 2004) (citing <u>In re Cavanaugh</u>, 306 F.3d at 732).  The Global Institutional Investor Group, with losses of approximately $70,729,493.07 (LIFO) and $70,409,156.24 (FIFO) resulting from purchases of Toyota common stock and ADS, believes it has the largest known financial interest in the relief sought by the Class.  <u>See</u> Loss Chart, Sundel Decl., Ex. C.

---

[4]    Filed herewith in support of Union's Certification are assignments from the investment companies managing the funds.  These assignments support Union's standing to litigate this action behalf of the funds.  <u>See</u> Assignments, Sundel Decl., Ex. B.

No.: 2:10-cv-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

8

### 3.   The Global Institutional Investor Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 . . . ."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. See In re Cavanaugh, 306 F.3d at 730.  See also In re Countrywide Sec. Litig., 2:07-cv-05295-MRP-MAN, slip op. at 15 (C.D. Cal. Nov. 28, 2007) ("In particular, the potential lead plaintiff must make a prima facie showing of the 'typicality' and 'adequacy' requirements of Rule 23 class certification. 'Numerosity' and 'commonality' need not be shown because they are class requirements more properly directed towards the class as a whole." (citations omitted)).  Siegall, 2006 WL 1050173, at *15 ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are key factors.") Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. Schriver v. Impac Mortgage Holdings, Inc., SACV 06-31 CJC (RNBx), 2006 Dist. LEXIS 40607, at *16 (C.D. Cal. May 1, 2006) ("At the lead plaintiff appointment

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

9

stage, the Rule 23 inquiry is not as searching as it would be on a motion for class certification; the prospective lead plaintiff need only make a prima facie showing that it meets the typicality and adequacy factors."). As detailed below, the Global Institutional Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

> **(a)    The Global Institutional Investor Group Fulfills the Typicality Requirement**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class members, and when the claims are based on the same legal theory. See Crossen v. CV Therapeutics, No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396, at *13 (N.D. Cal. Aug. 9, 2005). The requirement that the proposed class representative's claims be typical of the claims of the Class does not mean, however, that the claims must be identical. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1988).

In this case, the typicality requirement is met because the Global Institutional Investor Group's claims are identical, non-competing, and do not conflict with the claims of the other Class members. The members of the Global Institutional Investor Group, like all other Class members: (1) purchased Toyota stock during the Class Period; (2) purchased Toyota stock at artificially-inflated prices as a result of Defendants' alleged misrepresentations and omissions; and (3) suffered damages thereby. The Global Institutional Investor Group's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise," Crossen, 2005 U.S. Dist. LEXIS 41396, at *13, and the Global Institutional Investor Group is not subject to any unique or special defenses.

Here, the Global Institutional Investor Group purchased Toyota securities during the Class Period: (a) at prices alleged to have been artificially inflated by the

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

10

false and misleading statements issued by Defendants, and (b) were damaged by Defendants' alleged violations of the federal securities laws.  Because the Global Institutional Investor Group's claims are premised on the same legal and remedial theories and are based on the same types of alleged misrepresentations and omissions as the Class's claims, typicality is satisfied.  See <u>In re Countrywide</u>, slip op. at 17, Sundel Decl. Ex. I; <u>In re Surebeam Corp. Sec. Litig.</u>, No. 03-CV-1721 JM (POR), 2004 WL 5159061, at \*17-20 (S.D. Cal. Jan. 5, 2004).

### (b)    The Global Institutional Investor Group <u>Will Adequately Represent the Class</u>

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation.  <u>See Richardson v. TVIA, Inc.</u>, No. C 06-6304 RMW, 2007 WL 1129344, at \*4 (N.D. Cal. Apr. 16, 2007) (citing Fed. R. Civ. P. 23(a)(4) and <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003)).

The Global Institutional Investor Group's interests are clearly aligned with the members of the Class because its claims are identical to the claims of the Class.  There is no evidence of antagonism between its interests and those of the proposed Class members.  Furthermore, the Global Institutional Investor Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the large financial losses it incurred as a result of the wrongful conduct alleged herein.  This motivation, combined with the fact that the Global Institutional Investor Group's interest is identical to the Class members' interests, shows that the Global Institutional Investor Group will adequately and vigorously pursue the interests of the Class.  In addition, the Global Institutional Investor Group has selected as proposed Lead Counsel law firms that are highly experienced in successfully prosecuting securities class actions and complex litigation.

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS, APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

11

In sum, because of the Global Institutional Investor Group's common interests with the Class members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Rule 23(a) is met in this case. Therefore, because the Global Institutional Investor Group not only meets both the typicality and adequacy requirements of Rule 23(a), but has also sustained the largest loss at the hands of the Defendants, it is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

### 4.   The Members of the Global Institutional Investor Group Are Precisely the Type of Lead Plaintiffs Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions of the PSLRA was to encourage large, organized institutional investors to play a more prominent role in securities class actions. See H.R. Conf. Rep. No. 104-369, at 34, as reprinted in 1995 U.S.C.A.A.N. at 733. ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.

Based in Frankfurt, Germany, Universal is one of Germany's largest and most successful investment companies, with approximately $150 billion in assets under management. Union is the holding company for the Union Investment Group, one of the largest German asset managers for private and institutional investors. Union Investment Group's assets under management are approximately $233.6 billion. Skandia Liv is one of Sweden's largest life assurance companies, managing both private and occupational pensions, and has approximately $37 billion in assets under management for some 1.3 million customers. Boston manages more than $3.3 billion

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

12

in assets for more than 37,00 active and retired members throughout the City of Boston, Massachusetts.  Local 810/United Wire, headquartered in New York City, collectively manages approximately $244 million in assets for more than 4,000 active and retired members.  The Global Institutional Investor Group is comprised of sophisticated institutional investors with vast resources sufficient to adequately litigate this action and supervise class counsel.  <u>See</u> <u>In re Cendant Corp. Litig.</u>, 264 F.3d at 264 (noting that the legislative intent behind enacting the PSLRA was to encourage large institutional investors to serve as lead plaintiff).  The Global Institutional Investor Group has the requisite experience and expertise to vigorously represent the Class in this action.  Accordingly, as demonstrated above, the Global Institutional Investor Group is the prototypical lead plaintiff envisioned by Congress pursuant the PSLRA.

## III.   THE COURT SHOULD APPROVE THE GLOBAL INSTITUTIONAL INVESTOR GROUP'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval.  <u>See</u> 15 U.S.C. § 78u-4(a)(3)(B)(v).  Thus, this Court should not disturb the Lead Plaintiffs' choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Global Institutional Investor Group has selected Motley Rice and Labaton Sucharow to serve as Lead Counsel for the Class.  Motley Rice has substantial experience in the prosecution of shareholder and securities class actions.  <u>See</u> Motley Rice Firm Resume, Sundel Decl., Ex. E.  As a district court noted when appointing Motley Rice Co-Lead Counsel in <u>Marsden v. Select Medical Corp.</u>, No. 04-4020 (E.D. Pa. Oct. 5, 2006), "Motley Rice possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class."  <u>See</u> slip op., Sundel Decl., Ex. E.  Also, in <u>In re NPS Pharmaceuticals, Inc. Securities Litigation</u>, No. 2:06-cv-00570-PGC-PMW (D. Utah Nov. 17, 2006), the court stated that "[a]s

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS, APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

13

1   demonstrated by [its] submissions to the court, [Motley Rice has] expertise and

2   experience in the prosecution of shareholder and securities class actions and, as a

3   result, [is] adequate to represent the interests of the class."

4        Labaton Sucharow has had a leading role in numerous important actions on

5   behalf of defrauded investors.  As one district court in the Central District of

6   California noted, "the Court approves [the] choice of Labaton Sucharow LLP as

7   counsel.  The firm has extensive experience in large securities fraud cases and in

8   particular, in managing class actions involving public securities purchasers.  At this

9   time, the Court is confident that counsel will be able to properly represent the

10  plaintiffs in the consolidated case."  In re Countrywide, slip op. at 18, Sundel Decl.,

11  Ex. I.  Labaton Sucharow served as Lead Counsel in the Waste Management securities

12  litigation, which resulted in a settlement of $457 million, one of the largest common-

13  fund securities class action settlements ever achieved at that time.  See Labaton

14  Sucharow Firm Resume, Sundel Decl., Ex. F; see also In re Waste Mgmt., Inc. Sec.

15  Litig., 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow

16  "ha[s] been shown to be knowledgeable about and experienced in federal securities

17  fraud class actions").  Also, Labaton Sucharow is currently serving as lead or co-lead

18  counsel in the securities fraud cases against American International Group,

19  HealthSouth, Countrywide, Bear Stearns, Fannie Mae, Royal Bank of Scotland, and

20  others.  In In re Monster Worldwide, Inc. Sec. Litig., No. 07-cv-2237 (S.D.N.Y. filed

21  Mar. 15, 2007), Judge Jed Rakoff appointed Labaton Sucharow as lead counsel,

22  stating that "the Labaton firm is very well known to . . . courts for the excellence of its

23  representation."  (Id., Hrg. Tr. 24:25-25:1, June 14, 2007).  See Transcript, Sundel

24  Decl., Ex. J.

25       The Global Institutional Investor Group also has selected and retained Glancy

26  Binkow, a well-respected complex litigation firm with offices in Los Angeles, as

27  proposed Liaison Counsel for the Class.  Glancy Binkow has represented investors in

28

federal and state courts throughout the United States for sixteen years and has developed expertise prosecuting securities fraud, antitrust, and complex commercial litigation.  As Lead Counsel or as a member of Plaintiffs' Counsel Executive Committees, Glancy Binkow has recovered in excess of $1 billion for parties wronged by corporate fraud and malfeasance.  The firm's efforts on behalf of individual investors have been the subject of articles in such publications as <u>The Wall Street Journal</u>, <u>The New York Times</u> and <u>Los Angeles Times</u>.  <u>See</u> Glancy Binkow Firm Resume, Sundel Decl., Ex. G.

Furthermore, the Global Institutional Investor Group's counsel have invested significant time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all of the foregoing reasons, the Global Institutional Investor Group respectfully moves this Court for an Order:  (1) consolidating all related actions; (2) appointing the Global Institutional Investor Group to serve as Lead Plaintiff in this action; (3) approving the Global Institutional Investor Group's selection of Lead and Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated:  April 9, 2010                    Respectfully submitted,

  s/ Michael Goldberg
Michael Goldberg (#188669)
mgoldberg@glancylaw.com
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

No.: 2:10-CV-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

15

*Proposed Liaison Counsel*
*for Lead Plaintiff and the Class*

Joseph F. Rice
jrice@motleyrice.com
James M. Hughes
jhughes@motleyrice.com
William S. Norton
bnorton@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9440

Christopher J. Keller
ckeller@labaton.com
Alan I. Ellman
aellman@labaton.com
Stefanie J. Sundel
ssundel@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Proposed Lead Counsel for*
*Lead Plaintiff and the Class*

No.: 2:10-cv-00922-DSF-AJW — MPA ISO THE MOT. OF THE GLOBAL
INSTITUTIONAL INVESTOR GROUP FOR CONSOL. OF RELATED ACTIONS,
APPOINTMENT AS LEAD PL., & APPROVAL OF SELECTION OF COUNSEL

16