Joseph J. Tabacco, Jr. (Cal. Bar No. 75484)
jtabacco@bermandevalerio.com
Nicole Lavallee (Cal. Bar No. 165755)
nlavallee@bermandevalerio.com
Matthew D. Pearson (Cal. Bar No. 235339)
mpearson@bermandevalerio.com
**BERMAN DeVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

**Counsel for the Commonwealth
of Massachusetts Pension Reserves
Investment Management Board**

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY STACKHOUSE, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants.<br>_____<br>THIS DOCUMENT RELATES TO:<br><br>All Consolidated Actions | Case No. CV10-0922-DSF-AJWx<br><br>**MASSACHUSETTS PENSION RESERVES INVESTMENT MANAGEMENT BOARD'S SUPPLEMENTAL MEMORANDUM ADDRESSING *MORRISON v. NATIONAL AUSTRALIA BANK* AND IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND SELECTION OF LEAD COUNSEL** |

In *Morrison v. Nat'l Australia Bank*, No. 08-1191 (June 24, 2010), the Supreme Court unanimously held that a foreign investor who, outside the U.S., purchases stock of a foreign company on a foreign stock exchange cannot bring suit to recover losses under §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Accordingly, the Massachusetts Pension Reserves Investment Management Board ("PRIM") has the largest financial interest and should be appointed lead plaintiff.

## I.   PRIM IS THE PRESUMPTIVE LEAD PLAINTIFF

At the June 7, 2010 hearing, this Court stated that "the approach that I think is the most appropriate is the LIFO approach." (Tr. at 6:15-16.) The Court also stated, consistent with the April 23, 2010 Order, that "I don't think there is a presumption that the group is the most appropriate plaintiff. I don't think you aggregate to get a presumption." (*Id.* at 7:14-16.) By using LIFO and not permitting aggregation, the lead plaintiff movants with the largest losses are: Metzler—$33,120,052; and PRIM—$25,193,577.[1] Since Metzler is an f-cubed investor, it cannot state a claim under §10(b). Under *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), PRIM has the largest financial interest and is the presumptive lead plaintiff.

## II.   THE PRESUMPTION CANNOT BE REBUTTED

As set forth in *Cavanaugh*, competing movants must present "evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id*. at 730. While some movants may assert that *Morrison* might be read more broadly than its actual holding, this is not "evidence" to overcome the presumption in favor of PRIM. Moreover, contending that a movant purchased ADSs, so they are the "better pick," is precisely the sort of "beauty contest" which *Cavanaugh* disallows. *Id*. at 732.

---

[1] The Pension & Retirement Funds include the Ontario Municipal Employees Retirement System, which is a foreign entity. As such, its claims under §10(b) are barred by *Morrison*. The remaining member, Central States, has LIFO losses of $6 million and FIFO losses of $10.7 million, well below PRIM's losses. Skandia Life Insurance Co. has withdrawn its motion.

### A. PRIM Purchased Its Toyota Stock In The U.S.

The Court in *Morrison* held that:

> Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only **in connection with the purchase or sale of a security** listed on an American stock exchange, **and the purchase or sale of any other security in the United States.** This case involves no securities listed on a domestic exchange, and **all aspects** of the purchases complained of by those petitioners who still have live claims **occurred outside the United States.** Petitioners have therefore failed to state a claim on which relief can be granted. . . .

Slip op. at 24 (emphasis added). The Court overruled the "conduct" test, which focused on where the underlying fraudulent conduct occurred or if the fraud had an effect in the U.S. "[W]e think that the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.* at 17. The Court continued that "[t]hose purchase-and-sale transactions are the objects of the statute's solicitude. . . . And it is in our view only transactions in securities listed on domestic exchanges, **and domestic transactions in other securities**, to which §10(b) applies." *Id.* at 18 (emphasis added, footnote omitted).

Here, PRIM's claims concern the purchase of Toyota stock in the U.S. Section 10(b) prohibits the making of false or misleading statements in connection with the purchase or sale of a security. It is not the actual or mechanical act of buying the stock that §10(b) protects; rather, it is the purchase which is made in connection with a false statement that is protected. *Cohen v. McAllister*, 688 F. Supp. 1040, 1044 (W.D. Pa. 1988) ("Violations of §10(b) and Rule 10b-5 can take place before and up to the time when the sales of securities take place, but not after the investment is made.") (footnote omitted); *Trustees of Hotel Emps. & Rest. Emps. Int'l Union Welfare Pension Fund v. Amivest Corp*, 733 F. Supp. 1180, 1186 (N.D. Ill. 1990) ("In

1  determining whether [the in connection with] requirement has been satisfied, 'the
2  appropriate inquiry is whether information disclosed or withheld affected an
3  **investment** decision.'") (citing *LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928,
4  931) (7th Cir. 1988)); *id.* ("'A fraud that does not affect the decision to make the
5  investment in which the loss complained of is incurred is not actionable under Rule
6  10b-5.'") (citing *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322 (7th Cir.
7  1989)).

8        Furthermore, *Morrison* cites the Securities and Exchange Commission's
9  ("SEC") interpretation of Regulation S as support for the proposition that the
10 Securities Act of 1933's registration statement requirement does not apply to "sales
11 that occur outside the United States." Slip op. at 19-20. The regulation in question,
12 however, 17 C.F.R. §230.901, specifically applies the requirement to "sales that occur
13 within the United States" and does not exempt from registration transactions with
14 purchasers located within the U.S. where "the buy order is originated." 17 C.F.R.
15 §230.902(h)(ii)(A). The SEC's focus thus is on "where the buy order" originates.

16       Consistent with the SEC, courts also look to where the investment decision is
17 made in determining where a §10(b) violation occurred, since it is the investment
18 decision itself that §10(b) is designed to protect. *See Sec. Serv. Network, Inc. v.*
19 *Cromwell*, No. 94-5778, 62 F.3d 1418 (Table), 1995 WL 456374, at *4 (6th Cir. Aug.
20 1, 1995) (*per curiam*) (upholding denial of motion to transfer as venue was
21 determined by where investment decision was made and not where transaction was
22 executed—New York); *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F.
23 Supp. 2d 459, 465 (S.D.N.Y. 2002) (transferring securities fraud case to California
24 since investment decisions were made in California); *Strauss v. W. Highland Capital,*
25 *Inc.*, No. 00 CIV. 01184 GEL, 2000 WL 1505957, at *1 (S.D.N.Y. Oct. 6, 2000)
26 (transferring case from New York to California when, among other factors, "all
27 pertinent investment decisions were made in California by California residents").

28

1  Here, PRIM's decisions to purchase its Toyota stock occurred within the U.S.,
2 as virtually all of its money managers are U.S. based. *See* Declarations of Elizabeth
3 Desmond and Louis Russo, Exhibits 1 and 2 to the Declaration of Matthew D.
4 Pearson filed concurrently herewith, establishing that certain trades were purchased
5 from U.S. market makers and mechanically executed in the U.S.

**B.  *Morrison* And §10(b) Do Not Automatically Exclude U.S. Purchasers Of Foreign Stock.**

Section 10(b) also contains express language, highlighted in *Morrison*, which further supports the conclusion that PRIM and all other U.S. investors can maintain valid claims under §10(b) for their purchases of Toyota stock. Section 10(b) provides, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . (b) [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe . . . .

15 U.S.C. §78j. Interstate commerce is defined to include "communication . . . between any foreign country and any State." 15 U.S.C. §78c(a)(17). Here, there is no dispute that Toyota executives used interstate commerce in the U.S. by making false and misleading statements about the safety of Toyota vehicles and the lack of any manufacturing defects with its acceleration and braking systems and equipment. Indeed, testimony by Toyota executives to Congress is replete with admissions that **all** decisions regarding defects and safety recalls in the U.S. were made solely in Japan.[2]

---

[2] *See* Exs. 3 and 4 (congressional testimony excerpts of Toyota officers Akio Toyoda and James E. Lentz) to the Declaration of Matthew D. Pearson filed concurrently herewith.

Toyota also used the U.S. mails to transmit its materially false and misleading statements to U.S. investors through its Annual Reports.

In *Morrison*, the National Australia Bank executives in Australia were not participants in any alleged deceptive device or contrivance in connection with the purchase or sale of any security in the U.S.  Rather, the only connection with the U.S. was that the executives of the U.S. subsidiary allegedly manipulated financial statements in Florida.  Slip op. 2-3, 17.  By contrast, Toyota executives in Japan made and controlled many of the misleading statements about safety and lack of defects, which were made through the instrumentality of interstate commerce in the U.S. and in connection with PRIM and other U.S. investors' decisions to purchase Toyota stock in the U.S.

*Morrison* supports this.  In discussing the interstate commerce clause, the Court said, "[f]or example, an issuer based abroad, whose executives approve the publication in the United States of misleading information affecting the price of the issuer's securities traded on the New York Stock Exchange, probably will make use of some instrumentality of "'communication . . . between [a] foreign country and [a] State.'"  *Id*. at 14 n.7 (citing 15 U.S.C. §78c(a)(17)) (alterations in original).  In this hypothetical, the fact that the foreign company's stock is listed on the NYSE unquestionably subject's the stock purchases to the provisions of §10(b), making the qualification about inflation on the NYSE superfluous.  Significantly, however, the Court recognizes that where a foreign executive approves the publication in the U.S. of misleading information, this type of communication makes use of some instrumentality of interstate commerce, thereby coming within the ambit of §10(b), where the misleading information is made in connection with the purchase or sale of a security in the U.S.  *Id*. at 17.  Thus, both the express language of §10(b) and *Morrison* do allow claims of domestic investors who purchased Toyota stock.

Accordingly, PRIM should be appointed as Lead Plaintiff and its counsel, Berman DeValerio, should be appointed as Lead Counsel.

| | |
|---|---|
| DATED: July 6, 2010 | Respectfully submitted, |
| | /S/ Matthew D. Pearson |
| | Matthew D. Pearson |
| | |
| | Joseph J. Tabacco, Jr. |
| | Nicole Lavallee |
| | Matthew D. Pearson |
| | **BERMAN DeVALERIO** |
| | One California Street, Suite 900 |
| | San Francisco, CA 94111 |
| | Telephone: (415) 433-3200 |
| | Facsimile: (415) 433-6382 |
| | |
| | - and - |
| | |
| | Glen DeValerio (admitted *pro hac vice*) |
| | Jeffrey C. Block (admitted *pro hac vice*) |
| | One Liberty Square |
| | Boston, MA 02109 |
| | Telephone: (617) 542-8300 |
| | Facsimile: (617) 542-1194 |
| | |
| | **Counsel for the Commonwealth of Massachusetts Pension Reserves Investment Management Board** |