UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 10-0922 DSF (AJWx)<br>CV 10-1429 DSF (AJWx)<br>CV 10-1452 DSF (AJWx)<br>CV 10-1911 DSF (AJWx)<br>CV 10-2196 DSF (AJWx)<br>CV 10-2253 DSF (AJWx)<br>CV 10-2578 DSF (AJWx) | Date | 7/16/10 |
| Title | Harry Stackhouse v. Toyota Motor Co., et al.<br>(and related cases) | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order re Appointment of Lead Plaintiff

The Court has reviewed the Supreme Court's decision in <u>Morrison v. National Australia Bank Ltd.</u>, __ S.Ct. __, 2010 WL 2518523 (June 24, 2010), as well as the supplemental papers submitted by the proposed lead plaintiffs. While this is not a final determination of the issue and Plaintiffs are not foreclosed from arguing that domestic purchasers of Toyota common stock have claims under § 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), the Court currently believes that a fair reading of <u>Morrison</u> excludes those claims.

It is clear that <u>Morrison</u> forecloses § 10(b) claims by foreign plaintiffs based on securities bought or sold outside of the United States. It is also clear that § 10(b) covers "transactions in securities listed on domestic exchanges." 2010 WL 2518523, *11. The dispute arises over the meaning of the Supreme Court's statement that § 10(b) also covers frauds related to "domestic transactions in other securities" <u>Id.</u> The opinion unfortunately does not directly address what is meant by "domestic transactions." The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

Supreme Court later provides an alternative, presumably equivalent, formulation of the scope of § 10(b), which includes "the purchase or sale of any other security in the United States." Id. at *14.

One view of the Supreme Court's holding is that if the purchaser or seller resides in the United States and completes a transaction on a foreign exchange from the United States, the purchase or sale has taken place in the United States. However, an alternative view is that because the actual transaction takes place on the foreign exchange, the purchaser or seller has figuratively traveled to that foreign exchange – presumably via a foreign broker – to complete the transaction.[1] Under this second view, "domestic transactions" or "purchase[s] or sale[s] . . . in the United States" means purchases and sales of securities explicitly solicited by the issuer within the United States rather than transactions in foreign-traded securities where the ultimate purchaser or seller has physically remained in the United States.

The Court believes that the latter position is better supported by Morrison. The Supreme Court emphasized that the Exchange Act was not intended to regulate foreign exchanges. See 2010 WL 2518523, *11 ("We know of no one who thought that the Act was intended to 'regulat[e]' *foreign* securities exchanges – or indeed who even believed that under established principles of international law Congress had the power to do so."). And the Supreme Court's discussion of the problems of conflicting laws of various countries leaves little doubt that it believed that United States securities laws should defer to the law of the country where the security is exchanged.

> [W]e reject the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad for the same reason that *Aramco* rejected overseas application of Title VII to all domestically concluded employment contracts or all employment contracts with American employers: The probability of incompatibility with the applicable laws of other countries is so obvious that if Congress intended such foreign application "it would have addressed the subject of conflicts with foreign laws and procedures." Like the United States, foreign countries regulate their domestic securities exchanges and securities transactions occurring within their territorial jurisdiction. And the regulation of other countries often differs from ours as to what constitutes fraud, what disclosures must be made, what damages are recoverable, what

---

[1] Alternatively, the actual "transaction" takes place between two brokers/traders in the foreign country and the ultimate purchasers and sellers are irrelevant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters.
Id. at 12 (citation omitted).[2]

Therefore, the Court is inclined to appoint the proposed lead plaintiff with the largest alleged American Depository Share ("ADS") loss – Maryland State Retirement and Pension System ("Maryland SRPS"). Maryland SRPS has the largest alleged ADS loss and no other proposed plaintiff has provided any reason to believe that it is atypical or inadequate to represent the class. The Court has never been inclined to appoint a group to represent the class and sees no reason to do so here. Maryland SRPS has stated that it is willing to proceed alone and the Court believes that it is able to do so.

The so-called Pension and Retirement Funds suggest that notice should be republished to allow other ADS investors to move to be appointed as lead plaintiff. Allegedly, these investors were dissuaded from moving for appointment prior to Morrison based on the assumption that a large common stock holder would be appointed. Assuming that the Court has the discretion to republish notice under the statute, the Court does not find that republication is justified here. At the time of the initial notice publication, Morrison was pending before the Supreme Court and it was a known possibility that purchasers of securities on foreign exchanges could be excluded from the scope of Section 10(b).[3] Maryland SRPS is a large institutional investor with a reasonably large alleged loss on ADSs.[4] This is not a situation where a small investor with a minimal stake in the litigation has stumbled into the lead plaintiff role by chance.

---

[2] The Securities and Exchange Commission's Regulation S – which governs offers and sales outside of the United States without registration – may be relevant to discerning what the Supreme Court meant by "domestic transactions." Regulation S does not define "domestic transaction," but it does define "offshore transaction[s]," which include anonymous transactions through "designated offshore securities market[s]." See 17 C.F.R. § 230.902(h). The Tokyo Stock Exchange is explicitly listed as a "designated offshore securities market." 17 C.F.R. § 230.902(b)(1).

[3] The defendants in Morrison explicitly advocated for this result. See 2010 WL 665167 at *52-56 (Resp't Br., filed Feb. 19, 2010).

[4] Maryland SRPS alleges an ADS loss of $257,577.33 on both a FIFO and LIFO basis. (See Institutional Investor Group Supp. Mem. at 2 n.2.) Maryland SRPS also has an alleged loss of between eight and seventeen million dollars (LIFO) from other securities, (see Joint Stip. at 12,) which means that it also has a strong incentive to represent the interests of the non-ADS proposed class members who may or may not have a claim post-Morrison.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

A hearing on appointment of lead counsel is set for July 26, 2010 at 1:30 p.m.[5] Proposed lead counsel should be prepared to discuss their ability to prosecute the case effectively and the arrangements between the two firms and between the firms and Maryland SRPS regarding allocation of responsibilities and fees. A representative from Maryland SRPS should also attend the hearing and be able to answer any questions the Court may pose. After the Court has preliminarily approved lead counsel, it will have counsel prepare a formal proposed order consolidating the related cases, appointing Maryland SRPS as lead plaintiff, and appointing approved counsel as lead counsel.

IT IS SO ORDERED.

---

[5] Counsel may request additional time if required to prepare for this hearing.