BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
DAVID R. STICKNEY (Bar No. 188574)
(davids@blbglaw.com)
BENJAMIN GALDSTON (Bar No. 211114)
(beng@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
        -and-
GERALD SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Lead Plaintiff Maryland State
Retirement and Pension System and the
Class*

FAIRBANK & VINCENT
ROBERT H. FAIRBANK (Bar No. 76359)
(rfairbank@fairbankvincent.com)
DIRK L. VINCENT (Bar No. 157961)
(dvincent@fairbankvincent.com)
444 S. Flower Street, Suite 3860
Los Angeles, CA 90071
Tel:    (213) 891-9010
Fax:    (213) 891-9011

*Liaison Counsel for the Class*

*Additional Counsel Listed On Signature
Page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TOYOTA MOTOR CORPORATION SECURITIES LITIGATION | Master File No. CV 10-922-DSF-AJWx<br>Hon. Dale S. Fischer<br><br>**NOTICE OF SUBMISSION IN FURTHER SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND PURSUANT TO COURT INSTRUCTIONS AT JUNE 6, 2011 HEARING** |

In accordance with the Court's Minute Order dated June 6, 2011 [ECF No. 205] and the Court's instructions at the June 6, 2011 hearing [ECF No. 206], Plaintiffs respectfully submit the attached Supplemental Appendix in further support of Plaintiffs' Opposition to Defendants' Motion to Dismiss [ECF No. 180].

Dated: June 20, 2011                    Respectfully submitted,

                                        BERNSTEIN LITOWITZ BERGER
                                          & GROSSMANN LLP


                                             /s/ David R. Stickney
                                        DAVID R. STICKNEY

                                        BLAIR A. NICHOLAS
                                        DAVID R. STICKNEY
                                        BENJAMIN GALDSTON
                                        DAVID R. KAPLAN
                                        12481 High Bluff Drive, Suite 300
                                        San Diego, CA 92130
                                        Tel:   (858) 793-0070
                                        Fax:   (858) 793-0323
                                              -and-
                                        GERALD H. SILK
                                        1285 Avenue of the Americas, 38th Floor
                                        New York, NY 10019
                                        Tel:   (212) 554-1400
                                        Fax:   (212) 554-1444

                                        *Counsel for Lead Plaintiff Maryland State
                                        Retirement and Pension System and Lead
                                        Counsel for the Class*

                                        FAIRBANK & VINCENT
                                        ROBERT H. FAIRBANK
                                        DIRK L. VINCENT
                                        444 S. Flower Street, Suite 3860
                                        Los Angeles, CA 90071
                                        Tel:   (213) 891-9010
                                        Fax:   (213) 891-9011

                                        *Liaison Counsel for the Class*

                                        DOUGLAS F. GANSLER
                                        Attorney General of Maryland
                                        CAMPBELL KILLEFER
                                        Deputy Chief of the Civil
                                        Litigation Division
                                        (ckillefer@oag.state.md.us)

NOTICE OF SUBMISSION
Master File No. CV 10-922 DSF (AJWx)

JOHN J. KUCHNO
Assistant Attorney General
(jkuchno@oag.state.md.us)
MARYLAND OFFICE OF ATTORNEY
GENERAL
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
Tel:   (410) 576-7291
Fax:   (410) 576-6955

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System*

NOTICE OF SUBMISSION
Master File No. CV 10-922 DSF (AJWx)

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, **Master File No. CV 10-922 DSF (AJWx)**

| DEFENDANT KATSUAKI WATANABE | | |
| --- | --- | --- |
| **Job Titles & Responsibilities (¶¶41, 49)** | **Watanabe's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| **Toyota Motor Corporation ("TMC" or "Toyota")**<br><br>• Vice Chairman (6/2009 - Present)<br><br>• President (6/2005 – 6/2009)<br><br>• Executive Vice President and Representative Director (6/2001 – 6/2005)<br><br>• Senior Managing Director (6/1999 – 6/2001)<br><br>• Managing Director (6/1997 – 6/1999)<br><br>• Director (1992 – 6/1997)<br><br>**Responsibilities**<br><br>• Oversight of business planning and purchasing<br><br>• Investor communications and presentations, including in the United States<br><br>• Authorized securities filings in Japan and United States<br><br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class | **Statement Nos. 5, 6**<br><br>Nov. 4, 2005 Form 6-K regarding Toyota's "safe products," "highest levels of quality," focus on development and integration of safety technologies into Toyota vehicles, and "strict compliance with all laws and regulations."<br><br>**Statement Nos. 7, 8, 9**<br><br>May 10, 2006 Form 6-K regarding Toyota's "safe products," "highest levels of quality," "full compliance with applicable laws and regulations," and "record" financial results due to "cost reduction efforts."<br><br>**Statement Nos. 11, 12**<br><br>June 26, 2006 Form 6-K regarding Toyota's "safe products," "highest levels of quality," and "full compliance with applicable laws and regulations."<br><br>**Statement Nos. 13, 14, 15**<br><br>Nov. 7, 2006 Form 6-K regarding "safe | Each of the Individual Defendants was a key officer, director, and/or executive at TMC, Toyota USA, and/or Toyota NA. (¶¶41-49)<br><br>The "core operations" inference is particularly strong here, given the Defendants' roles managing the Company and the importance of the undisclosed information to Toyota's sales, reputation, and market position.  Moreover, Toyota's unique management structure required each of the Individual Defendants to be informed about important quality and safety issues, including the unintended acceleration problems, and to discuss all important information with senior Toyota executives and directors in Japan who had ultimate authority and responsibility to address unintended acceleration problems:<br><br>• **TMC Control:**  TMC, Toyota NA and Toyota USA share common officers and directors, including Akio Toyoda (current President and CEO of Toyota and Chairman and CEO of Toyota NA), Defendant Lentz, Defendant Inaba, and Yukitoshi Funo (senior managing director of Toyota, Chairman of Toyota USA, and Chairman and CEO of Toyota NA during the Class Period).  The financial results of Toyota USA and Toyota NA are entirely consolidated by Toyota.  TMC dominates and directs Toyota NA and Toyota USA, its wholly-owned subsidiaries.  TMC is responsible for their organization and direction, and determines their strategy and decision-making, the vehicles they sell, and the design and sales price.  Toyota NA and Toyota USA must report back to TMC regarding all significant matters, and Toyota NA and Toyota USA executives are shadowed in their own offices by Japanese "coordinators," who report back to TMC officials in Japan.  Throughout the Class Period, Toyota maintained one hundred percent ownership and voting control of Toyota NA and Toyota USA. (¶¶37-40)<br><br>• **"Toyota Way":** Toyota's highly centralized management structure required senior executives and directors [including **Watanabe, Cho, Kinoshita, Inaba, Lentz, Miller, Carter, Daly**] to be responsible for and informed about all important |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT KATSUAKI WATANABE | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶41, 49)** | **Watanabe's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| Period<br>• Direct involvement in day-to-day operations of TMC, Toyota NA, and Toyota USA | products," "full compliance with applicable laws and regulations," "record" financial results, and achieving "higher levels and revenues and profits through further . . . cost reductions."<br><br>**Statement No. 16**<br>Dec. 22, 2006 *Bloomberg* and *Associated Press* articles quoting Watanabe's statements: "Quality is Toyota's lifeline" and "There will be no growth without quality."<br><br>**Statement Nos. 21, 22, 23**<br>May 8, 2008 Form 6-K regarding "record net revenues and operating income" due to "cost reduction efforts," "world's highest level of quality," and "full compliance with applicable laws and regulations." | issues in the Company's operations, including the quality and safety of Toyota vehicles. (¶54)<br><br>• **Obsession with Quality & Safety:** Toyota became the number one selling automaker in the world by 2008 by repeatedly assuring customers and investors that Toyota made the best quality and safest automobiles. (¶¶50-51, 81)<br><br>• **Cost Cutting Caused Safety & Quality Problems:** TMC's leaders and *shusas*, or chief engineers, exercised an "iron grip" over Toyota's global operations and made all important decisions in Japan.  During 2005 – 2009, to boost profitability, President **Watanabe** pressured the *shusas* to cut costs aggressively. When Toyota customers began to raise questions about the quality of their vehicles, Toyota brushed off the complaints and delayed finding solutions. (¶40)<br><br>• **TMC Informed About All Safety & Quality Problems, Including Unintended Acceleration:** TMC received unintended acceleration reports from Toyota USA and Toyota NA synthesizing data from dealer reports, field technical reports, product reports, customer complaints, and NHTSA concerning unintended acceleration problems in Toyota vehicles. (¶¶49, 55, 57-59, 68-71, 73-74, 76, 78, 80, 86-87, 90-91, 115)<br><br>• **"Books Of Knowledge":** TMC maintained secret "Books of Knowledge" containing engineering and design information related to defects, including unintended acceleration issues, in Toyota vehicles and countermeasures taken by the Company to correct those defects without disclosure. (¶¶63-64)<br><br>• **TMC Responsible for Recall Decisions:** TMC is responsible for defect and safety decisions, including product design and manufacture, running changes, and recalls. Little discretion and nearly no autonomy is given to Toyota NA or Toyota USA. (¶55)<br><br>• **TMC Controlled NHTSA Affairs:** TMC headquarters – which was responsible for maintaining all customer reports and collecting them in response to |

**Supplemental Appendix**
*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| | | |
|---|---|---|
| **DEFENDANT KATSUAKI WATANABE** | | |
| **Job Titles & Responsibilities (¶¶41, 49)** | **Watanabe's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| | | government inquiries – received regular updates from Toyota NA and Toyota USA on the status of ongoing regulatory oversight and investigations into potential defects in Toyota vehicles. (¶¶56, 60-61, 68-70, 85, 90, 92, 104-105) |
| | | • **TMC Used Countermeasures To Avoid Costly Recalls:** TMC undertook various countermeasures to keep the public from becoming aware of unintended acceleration problems in Toyota vehicles, including false and deceptive claims to NHTSA, Toyota customers, and investors.  Toyota violated its reporting obligations under the TREAD Act while simultaneously lobbying NHTSA to limit or resolve investigations without requiring Toyota to issue expensive recalls. (¶¶62, 69-72, 88-90, 92-95, 99-103, 107, 117, 119) |
| | | • **TMC Directed Secret Unintended Acceleration Recalls Abroad:** In 2000, Toyota issued an unintended acceleration-related recall in the U.K. without notifying NHTSA.  (¶¶67, 132).  In 2003, Toyota issued an unintended acceleration-related recall in Canada. (¶¶95, 132).  In Aug. 2009, Toyota started phasing out potentially faulty accelerator pedals from its European manufacturing lines without reporting the unintended acceleration complaints or manufacturing changes to NHTSA. (¶111) |
| | | • **Management Replaced As Unintended Acceleration Problems Mount:** TMC replaced nearly its entire management team in June 2009, including **Watanabe**, in response to burgeoning safety and quality issues in Toyota vehicles, including unintended acceleration.  (¶108) |
| | | • **Massive Fines For TREAD Act Violations:**  NHTSA fined Toyota $16.4 million – the largest possible civil penalty and the largest in NHTSA's history – after determining that Toyota failed to timely inform the public of safety problems, as required by law.  Transportation Secretary LaHood stated that Toyota "knowingly hid a dangerous defect . . . from U.S. officials and did not take action to protect millions of drivers and their families." (¶¶22, 139) |

**Supplemental Appendix**
*In re Toyota Motor Corporation Securities Litigation*, **Master File No. CV 10-922 DSF (AJWx)**

| DEFENDANT KATSUAKI WATANABE | | |
| --- | --- | --- |
| **Job Titles & Responsibilities (¶¶41, 49)** | **Watanabe's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| | | • **Largest Recalls In History:** Toyota issued the largest recall in history and shut down production for one week, admitting that defects related to unintended acceleration affected nearly every Toyota model. (¶¶114, 120, 124, 126, 128, 132) |
| | | • **Congressional Hearings:** The House Oversight and Government Reform Committee found evidence that Toyota deliberately withheld relevant records regarding defects in Toyota vehicles, and that Toyota had engaged in a "systematic disregard for the law." (¶¶20, 65) |
| | | In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Watanabe's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model: |
| | | • June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59) |
| | | • Fall 2006: Internal letter from factory workers in Japan to **Watanabe** (**and other TMC executives**) warning that quality and safety problems caused by cost reduction efforts "threatened the Company's survival." (¶84) |
| | | • Dec. 2006 – **Watanabe** attributes Toyota's sales success to Toyota's high quality and states "there will be no growth without quality." (¶¶3, 154) |
| | | • Sept. 2007: Internal Toyota email forwarded to "**senior Toyota executives**, including **Lentz** and **Carter** and **Japanese executives**," regarding $100M+ saved by avoiding NHTSA recall thereby avoiding "much bigger issues (and costs)." (¶101) |
| | | • Feb. 2010: Toyota admits that the Company's priorities of "first, safety; second, quality; third, volume" "became confused" during the Class Period.   (¶¶53, |

**Supplemental Appendix**
*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT KATSUAKI WATANABE | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶41, 49)** | **Watanabe's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| | | 137)<br>• July 2010: Toyota admits the Company "slacked in . . . attention to the basics of manufacturing." "It was as if we were engaged in car manufacturing in a virtual world and became insensitive to vehicle failings and defects in the market." (¶¶21, 140) |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT FUJIO CHO | | |
|---|---|---|
| **Job Titles And Responsibilities (¶¶42, 49)** | **Cho's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| **TMC**<br><br>• Chairman, Representative Director (6/2006 - present)<br><br>• Vice Chairman (6/2005 – 6/2006)<br><br>• President (1999 – 6/2005)<br><br>• Senior Managing Director (6/1996 – 1999)<br><br>• Managing Director (6/1994 – 6/1996)<br><br>• Director (1988 – 6/1994)<br><br>**Responsibilities**<br><br>• Investor communications and presentations, including in the United States<br><br>• Authorized securities filings in Japan and United States<br><br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class Period<br><br>• Responsible for establishing and | **Statement Nos. 1, 2, 3:**<br><br>May 10, 2005 Form 6-K regarding Toyota's "safe products," focus on "safety technologies," "highest levels of quality," "record" financial results due to "cost reduction efforts," and "strict compliance with laws and regulations."<br><br>**Statement No. 10:**<br><br>June 26, 2006 Form 20-F regarding "superior…safety technologies," "high quality," "product safety," "resolving problems at the source," and development of safety technologies "designed to prevent accidents in the first instance."<br><br>**Statement No. 17:**<br><br>June 25, 2007 Form 20-F regarding development of safety technologies "designed to prevent accidents in the first instance," "product quality," "resolving problems at the source," and Toyota's "strategic advantage" based on "new technology" and "vehicle safety." | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant.  As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Cho's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br><br>• Fall 2006: Internal letter from factory workers in Japan to **Watanabe** (**and other TMC executives**) warning that quality and safety problems caused by cost reduction efforts "threatened the Company's survival." (¶84)<br><br>• Sept. 2007: Internal Toyota email forwarded to "**senior Toyota executives**, including **Lentz** and **Carter** and **Japanese executives**," regarding $100M+ saved by avoiding NHTSA recall thereby avoiding "much bigger issues (and costs)." (¶101)<br><br>• Aug. 2008: Internal memo titled "Unwanted Accelerations Investigation on Toyota Vehicles" sent to **TMC headquarters** asks the Company to evaluate ways "to reduce throttle opening/engine power." The memo was drafted in response to "increased scrutiny" from NHTSA, which had received more than 2,600 complaints regarding "runaway" Toyota vehicles. (¶104)<br><br>• July 6, 2009: Internal Toyota presentation by **Inaba** touting Toyota "wins," |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT FUJIO CHO | | |
|---|---|---|
| **Job Titles And Responsibilities (¶¶42, 49)** | **Cho's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| maintaining disclosure controls and procedures<br><br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA | **Statement No. 25:**<br><br>June 25, 2008 Form 20-F regarding development of safety technologies "designed to prevent accidents in the first instance," "product quality," "resolving problems at the source," and Toyota's "strategic advantage" based on "new technologies" and "vehicle safety."<br><br><br>**Statement No. 27:**<br><br>June 24, 2009 Form 20-F regarding development of safety "technologies designed to prevent accidents in the first instance," "product quality," "resolving problems at the source," and Toyota's "strategic advantage" based on "new technology" and "vehicle safety." | including negotiating equipment recall to avoid "defect" finding and saving TMC more than $100 million. (¶109)<br><br>• Feb. 2010: Toyota admits that the Company's priorities of "first, safety; second, quality; third, volume" "became confused" during the Class Period. (¶¶53, 137)<br><br>• July 2010: Toyota admits the Company "slacked in . . . attention to the basics of manufacturing." "It was as if we were engaged in car manufacturing in a virtual world and became insensitive to vehicle failings and defects in the market." (¶¶21, 140) |

7

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT MITSUO KINOSHITA | | |
|---|---|---|
| **Job Titles and Responsibilities (¶¶43, 49)** | **Kinoshita's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| **TMC**<br><br>• Executive Vice President (current)<br>• Chief Business Development Officer (2004 – 6/2005)<br>• Chief Purchasing Officer (2004 – 6/2005)<br>• Chief Housing Officer (2004 – 6/2005)<br>• Chief Production Control & Logistics Officer, Safety, Health Promotion & Plant Engineering Divisions (2003 - Present)<br>• Director (1997 – Present)<br><br>**Responsibilities**<br><br>• Investor communications and presentations, including in the United States<br>• Authorized securities filings<br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class | **Statement No. 4:**<br><br>June 24, 2005 Form 20-F regarding Toyota's "preeminence," "growth," and competitive position resulting from "safety technologies" and "focus on high quality and low-cost manufacturing," "product safety," "vehicle safety," and development of "safety technologies" "designed to prevent accidents in the first instance."<br><br>**Statement No. 10:**<br><br>June 26, 2006 Form 20-F regarding "superior" safety technologies, "high quality products," "technologies designed to increase the safety of [Toyota] vehicles," and development of safety technologies "designed to prevent accidents in the first instance."<br><br>**Statement No, 13:**<br><br>Nov. 7, 2006 Form 6-K regarding "record" financial results, and achieving "higher levels and revenues and profits through further . . . cost reductions." | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant. As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Kinoshita's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br>• Fall 2006: Internal letter from factory workers in Japan to **Watanabe (and other TMC executives)** warning that quality and safety problems caused by cost reduction efforts "threatened the Company's survival." (¶84)<br>• Sept. 2007: Internal Toyota email forwarded to "**senior Toyota executives**, including **Lentz** and **Carter** and **Japanese executives**," regarding $100M+ saved by avoiding NHTSA recall thereby avoiding "much bigger issues (and costs)." (¶101)<br>• Feb. 2010: Toyota admits that the Company's priorities of "first, safety; second, quality; third, volume" "became confused" during the Class Period. (¶¶53, 137)<br>• July 2010: Toyota admits the Company "slacked in . . . attention to the basics of manufacturing. "It was as if we were engaged in car manufacturing in a virtual world and became insensitive to vehicle failings and defects in the |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT MITSUO KINOSHITA | | |
|---|---|---|
| **Job Titles and Responsibilities (¶¶43, 49)** | **Kinoshita's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| Period<br><br>• Responsible for establishing and maintaining disclosure controls and procedures<br><br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA | **Statement No. 17**<br><br>June 25, 2007 Form 20-F regarding development of safety technologies "designed to prevent accidents in the first instance," "product quality," "resolving problems at the source," and Toyota's "strategic advantage" based on "new technologies" and "vehicle safety."<br><br>**Statement No. 25**<br><br>June 25, 2008 Form 20-F regarding development of safety technologies "designed to prevent accidents in the first instance," "product quality," "resolving problems at the source," and Toyota's "strategic advantage" based on "new technologies" and "vehicle safety." | market." (¶¶21, 140) |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, **Master File No. CV 10-922 DSF (AJWx)**

| YOSHIMI INABA | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶44, 49)** | **Inaba's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| **TMC**<br><br>• Director (Current)<br><br>**Toyota Motor N. Amer., Inc. ("Toyota NA")**<br><br>• President and Chief Operating Officer (6/2009 – Present)<br><br>**Toyota Motor Sales USA, Inc. ("Toyota USA")**<br><br>• Chairman and Chief Executive Officer (1997 – Present)<br><br>**Responsibilities**<br><br>• Responsible for Toyota NA's sales, marketing and external affairs<br><br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA<br><br>• Reviewed and authorized false and misleading press releases<br><br>• Testified before congressional committee regarding unintended acceleration | **Statement No. 28**<br><br>Sept. 14, 2009 Press Release attributing cause of Saylor family accident to all-weather floor mat interference with accelerator pedal.<br><br>**Statement No. 29**<br><br>Nov. 2, 2009 Press Release claiming NHTSA reviewed and approved Toyota's assertion that "no defect exists in vehicles in which the driver's floor mat is compatible with the vehicle and properly secured," "NHTSA concluded that . . . the only defect trend . . . involved the potential for accelerator pedals to become trapped near the floor by out-of-position or inappropriate floor mat installation," and unintended acceleration had been "repeatedly and thoroughly investigated by [Toyota] and NHTSA, without any finding of defect other than the risk from an unsecured or incompatible floor mat." | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant.  As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Inaba's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br><br>• Fall 2006: Internal letter from factory workers in Japan to **Watanabe** (**and other TMC executives**) warning that quality and safety problems caused by cost reduction efforts "threatened the Company's survival." (¶84)<br><br>• Sept. 2007: Internal Toyota email forwarded to "**senior Toyota executives**, including **Lentz** and **Carter** and **Japanese executives**," regarding $100M+ saved by avoiding NHTSA recall thereby avoiding "much bigger issues (and costs)." (¶101)<br><br>• Aug. 2008: Internal memo titled "Unwanted Accelerations Investigation on Toyota Vehicles" sent to **TMC headquarters** asks the Company to evaluate ways "to reduce throttle opening/engine power." The memo was drafted in response to "increased scrutiny" from NHTSA, which had received more than 2,600 complaints regarding "runaway" Toyota vehicles. (¶104)<br><br>• July 6, 2009: Internal Toyota presentation by **Inaba** touting Toyota "wins," |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| YOSHIMI INABA | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶44, 49)** | **Inaba's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| problems<br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class Period | | including negotiating equipment recall to avoid "defect" finding and saving TMC more than $100 million. (¶109)<br>• Aug. 2009: Internal Toyota email to **TMC executives** discussing need for brake override measures and warning of repercussions from regulators, noting that "NHTSA is furious over Toyota's handling of things." The same month, Toyota begins phasing out potentially faulty accelerator pedals from its European manufacturing lines after receiving numerous complaints of unintended acceleration from European consumers, but fails to report to NHTSA the incidents or the change in European production. (¶¶110-111)<br>• 2009: Internal document in which Toyota NA noted that TMC "will most likely not easily budge from their position that there is no vehicle defect. Especially considering the global ramifications. (¶116).<br>• Dec. 2009: NHTSA admonishes TMC during visit to TMC Japan headquarters of TMC's obligation under U.S. law to find and report defects promptly and that Toyota was taking too long to respond to safety issues. (¶121)<br>• Jan. 16, 2010: Internal email from **Miller** to **Toyota USA**'s Executive Coordinator for Corporate Communications acknowledging preexisting accelerator pedal defect and stating "the time to hide this one is over." Email forwarded to **TMC**. (¶122)<br>• Jan. 19, 2010: Closed-door meeting in Washington, D.C. in which **Lentz** and **Inaba** revealed to NHTSA that Toyota's Japan headquarters knew of a problem in its accelerator pedals for more than a year. (¶123)<br>• Feb. 2010: Defendant **Lentz** admits that Toyota had been investigating unintended acceleration "for a long time" and had known about the "sticky" accelerator pedal defect since at least Oct. 2009. (¶130)<br>• Feb. 2010: Toyota admits that the Company's priorities of "first, safety; |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, **Master File No. CV 10-922 DSF (AJWx)**

| YOSHIMI INABA | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶44, 49)** | **Inaba's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| | | second, quality; third, volume" "became confused" during the Class Period. (¶¶53, 137) |
| | | • July 2010: Toyota admits the Company "slacked in . . . attention to the basics of manufacturing."  "It was as if we were engaged in car manufacturing in a virtual world and became insensitive to vehicle failings and defects in the market." (¶¶21, 140) |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT JAMES E. LENTZ III | | |
| --- | --- | --- |
| Job Titles & Responsibilities (¶¶45, 49) | Lentz's Statements | Additional Facts Supporting Core Operations Scienter Inference |
| **TMC**<br>• Managing Officer (4/2008 - Present)<br><br>**Toyota USA**<br>• President and Chief Operating Officer (11/2007 - Present)<br>• Executive Vice President (5/2006 – 11/2007)<br>• Brand Manager (6/2005 – 11/2007)<br><br>**Responsibilities**<br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA<br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class Period | **Statement No. 18**<br>Oct. 16, 2007 *Bloomberg* report that Lentz denied any deterioration in the quality of Toyota vehicles. "Everything we're seeing indicates that quality is in fact getting better." | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant. As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Lentz's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br>• Fall 2006: Internal letter from factory workers in Japan to **Watanabe** (**and other TMC executives**) warning that quality and safety problems caused by cost reduction efforts "threatened the Company's survival." (¶84)<br>• **Lentz** personally received customer complaints of unintended acceleration, including a Mar. 14, 2007 letter [which he would have been required to report to **TMC**]. (¶91)<br>• Sept. 2007: Internal Toyota email forwarded to "**senior Toyota executives**, including **Lentz** and **Carter** and **Japanese executives**," regarding $100M+ saved by avoiding NHTSA recall thereby avoiding "much bigger issues (and costs)." (¶101)<br>• Aug. 2008: Internal memo titled "Unwanted Accelerations Investigation on Toyota Vehicles" sent to **TMC headquarters** asks the Company to evaluate ways "to reduce throttle opening/engine power." The memo was drafted in |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, **Master File No. CV 10-922 DSF (AJWx)**

| DEFENDANT JAMES E. LENTZ III | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶45, 49)** | **Lentz's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| | | response to "increased scrutiny" from NHTSA, which had received more than 2,600 complaints regarding "runaway" Toyota vehicles. (¶104) |
| | | • July 6, 2009 Internal Toyota presentation by **Inaba** touting Toyota "wins," including negotiating equipment recall to avoid "defect" finding and saving TMC more than $100 million. (¶109) |
| | | • Aug. 2009: Internal Toyota email to **TMC executives** discussing need for brake override measures and warning of repercussions from regulators, noting that "NHTSA is furious over Toyota's handling of things."  The same month, Toyota begins phasing out potentially faulty accelerator pedals from its European manufacturing lines after receiving numerous complaints of unintended acceleration from European consumers, but fails to report to NHTSA the incidents or the change in European production. (¶¶110-111) |
| | | • Dec. 2009: NHTSA admonishes TMC during visit to TMC Japan headquarters of TMC's obligation under U.S. law to find and report defects promptly and that Toyota was taking too long to respond to safety issues. (¶121) |
| | | • 2009: Internal document in which Toyota NA noted that TMC "will most likely not easily budge from their position that there is no vehicle defect. Especially considering the global ramifications. (¶116) |
| | | • Jan. 16, 2010: Internal email from **Miller** to **Toyota USA**'s Executive Coordinator for Corporate Communications acknowledging preexisting accelerator pedal defect and stating "the time to hide this one is over."  Email forwarded to **TMC**. (¶122) |
| | | • Jan. 19, 2010:  Closed-door meeting in Washington, D.C. in which **Lentz** and **Inaba** revealed to NHTSA that Toyota's Japan headquarters knew of a problem in its accelerator pedals for more than a year. (¶123) |
| | | • Feb. 2010: Defendant **Lentz** admits that Toyota had been investigating |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, **Master File No. CV 10-922 DSF (AJWx)**

| DEFENDANT JAMES E. LENTZ III | | |
|---|---|---|
| **Job Titles & Responsibilities (¶¶45, 49)** | **Lentz's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| | | unintended acceleration "for a long time" and had known about the "sticky" accelerator pedal defect since at least Oct. 2009. (¶130) |
| | | • Feb. 2010: Toyota admits that the Company's priorities of "first, safety; second, quality; third, volume" "became confused" during the Class Period. (¶¶53, 137) |
| | | • July 2010: Toyota President Akio Toyoda admits the Company "slacked in . . . attention to the basics of manufacturing." "It was as if we were engaged in car manufacturing in a virtual world and became insensitive to vehicle failings and defects in the market." (¶¶21, 140) |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT IRVING A. MILLER | | |
|---|---|---|
| **Job Title & Responsibilities (¶¶46, 49)** | **Miller's Statements** | **Additional Facts Supporting Core Operations Scienter Inference** |
| **Toyota USA**<br><br>• Group Vice President of Environmental and Public Affairs (2001 - Present)<br><br>**Responsibilities**<br><br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA<br><br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class Period | **Statement No. 31:**<br><br>Nov. 29, 2009 *New York Times* article stating "we are very confident that we have addressed this [unintended acceleration] issue" and "have come to the conclusion this is pedal misapplication or pedal entrapment."<br><br>**Statement No. 32:**<br><br>Dec. 5, 2009 letter published in the *Los Angeles Times* stating that "we are highly confident that we have addressed the root cause of unwanted acceleration – the entrapment of the accelerator pedal."<br><br>**Statement No. 33:**<br><br>Dec. 23, 2009 letter published in the *Los Angeles Times* stating that an L.A. Times article about untended acceleration "wrongly and unfairly attacks Toyota's integrity and reputation" and that "Toyota has a well-earned reputation for integrity." | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant.  As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Miller's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br><br>• 2009: Internal document in which Toyota NA noted that TMC "will most likely not easily budge from their position that there is no vehicle defect. Especially considering the global ramifications. (¶116)<br><br>• Jan. 16, 2010: Internal email from **Miller** to **Toyota USA**'s Executive Coordinator for Corporate Communications acknowledging preexisting accelerator pedal defect and stating "the time to hide this one is over."  Email forwarded to **TMC**. (¶122) |

16

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT ROBERT S. CARTER | | |
|---|---|---|
| **Job Title And Responsibilities (¶¶47, 49)** | **Carter's Statements** | **Additional Facts Supporting Core Operations Inference** |
| **Toyota USA**<br><br>• Group Vice President and General Manager for the Toyota Division (4/2007 – Present)<br><br>**Responsibilities**<br><br>• Oversight of all sales, logistics, and marketing activities for Toyota USA<br><br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA<br><br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class Period | **Statement No. 30**<br><br>Nov. 2, 2009 conference call with media representatives at the Thomson Reuters Auto Summit and statements that "once we became aware of [incompatible floormat problems] . . . we immediately released a consumer alert," the focus is on the floormat and "there is absolutely no evidence that goes beyond that," and "there is absolutely no evidence to support" any other defects that could cause unintended acceleration. | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant.  As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Carter's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br><br>• Jan. 16, 2010: Internal email from **Miller** to **Toyota USA**'s Executive Coordinator for Corporate Communications acknowledging preexisting accelerator pedal defect and stating "the time to hide this one is over."  Email forwarded to **TMC**. (¶122) |

**Supplemental Appendix**

*In re Toyota Motor Corporation Securities Litigation*, Master File No. CV 10-922 DSF (AJWx)

| DEFENDANT ROBERT C. DALY | | |
| --- | --- | --- |
| Job Title And Responsibilities (¶¶48, 49) | Daly's Statements | Additional Facts Supporting Core Operations Inference |
| **Toyota USA**<br><br>• Senior Vice President (1/2009 - Present)<br>• Executive Committee Member (Current)<br><br>**Responsibilities**<br><br>• Customer service division, information systems, University of Toyota, finance, corporate shared services, human resources, North America Planning, and legal affairs<br>• Directly involved in the day-to-day operations of TMC, Toyota NA and Toyota USA<br>• Controlled the content of SEC filings, press releases, and other public statements of Toyota during the Class Period | **Statement No. 29:**<br><br>Nov. 2, 2009 Press Release claiming NHTSA reviewed and approved Toyota's assertion that "no defect exists in vehicles in which the driver's floor mat is compatible with the vehicle and properly secured," "NHTSA concluded that . . . the only defect trend . . . involved the potential for accelerator pedals to become trapped near the floor by out-of-position or inappropriate floor mat installation," and unintended acceleration had been "repeatedly and thoroughly investigated by [Toyota and] NHTSA, without any finding of defect other than the risk from an unsecured or incompatible floor mat." | The same facts supporting the "core operations" inference identified above in this column apply to each Individual Defendant. As alleged in the Complaint, each Individual Defendant served as a key officer, director, and/or executive and the undisclosed information was important to Toyota's core business.<br><br>In further support of the "core operations" inference, as set forth below, the Complaint alleges Defendant Daly's *actual* exposure to information regarding the undisclosed unintended acceleration problems affecting virtually every Toyota model:<br><br>• June 2005: Internal email confirms numerous meetings and document exchanges occurred between Toyota USA and TMC regarding unintended acceleration. (¶59)<br>• Jan. 16, 2010: Internal email from **Miller** to **Toyota USA**'s Executive Coordinator for Corporate Communications acknowledging preexisting accelerator pedal defect and stating "the time to hide this one is over." Email forwarded to **TMC**. (¶122) |