# Exhibit A

1

```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

                              ---

           THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING




                                        )
                                        )
                                        )
   In Re Toyota Motor Corporation       )   Case No.
   Securities Litigation                )   CV 10-922-DSF(AJWx)
                                        )
                                        )
   _____        )



                REPORTER'S TRANSCRIPT OF PROCEEDINGS

                      Los Angeles, California

                     Monday, October 17, 2011




   Pamela A. Batalo, CSR, FCRR
   Official Reporter
   Roybal Federal Building
   255 East Temple Street
   Room 181-I
   Los Angeles, California  90012
   (213) 687-0446
```

```
 1  APPEARANCES:
 2
 3   FOR PLAINTIFF              BERNSTEIN, LITOWITZ, BERGER &
 4   MARYLAND STATE             GROSSMANN, LLP
 5   RETIREMENT AND             BY:  BENJAMIN GALDSTON
 6   PENSION SYSTEMS:                BLAIR NICHOLAS
 7                              12481 HIGH BLUFF DRIVE
 8                              SUITE 300
 9                              SAN DIEGO, CA 92130-3582
10
11                              FAIRBANK & VINCENT
12                              BY:  ROBERT H. FAIRBANK
13                              444 S. FLOWER STREET
14                              SUITE 3860
15                              LOS ANGELES, CA  90071
16
17   FOR DEFENDANT              SHEARMAN & STERLING, LLP
18   TOYOTA MOTOR               BY:  STUART J. BASKIN
19   CORPORATION:               599 LEXINGTON AVENUE
20                              NEW YORK, NY  10022-6069
21
22                              GIBSON, DUNN & CRUTCHER, LLP
23                              BY:  KAY ELLEN KOCHENDERFER
24                              333 S. GRAND AVENUE
25                              LOS ANGELES, CA  90071-3197
```

1  <u>Los Angeles, California, Monday, October 17, 2011</u>

2                    <u>11:12 a.m.</u>

3                       -oOo-

4         THE CLERK:  Calling Item No. 8, CV 10-922-DSF, *In Re Toyota Motor Corporation Securities Litigation*.

6         MR. NICHOLAS:  Good morning, your Honor.  Blair Nicholas of Bernstein, Litowitz, Berger & Grossman for the lead plaintiff.

9         MR. GALDSTON:  Good morning, your Honor.  Benjamin Galdston also of Bernstein Litowitz on behalf of the lead plaintiff.

12        MR. FAIRBANK:  Good morning, your Honor.  Robert Fairbank on behalf of the plaintiffs.

14        THE COURT:  Good morning.

15        MR. BASKIN:  Good morning, Judge.  Stuart Baskin on behalf of Toyota, defendants.

17        MS. KOCHENDERFER:  Good morning, your Honor.  Kay Kochenderfer on behalf of defendants.

19        THE COURT:  Good morning.

20        And, Mr. Baskin, in the Central District, it's *your Honor* not *Judge*.

22        All right.  The first thing, I'll do is answer your question about Statement 28, the Saylor issue.  I did not intend to allow the plaintiff to go forward on that statement, so I think that was where you had both come out, but that's my

```
 1  intent.
 2          The schedule for class certification is acceptable,
 3  except I will have the hearing on either June 11 or a later date
 4  if June 11 isn't a date that works for all of you, so you can
 5  let us know about that.
 6          You referred to the Manual for Complex Litigation.  I
 7  know that's in my standard order, and this is the first time
 8  anyone's suggested it should actually be used, so I pulled it
 9  out, and a suggestion that it be used wasn't terribly helpful.
10  You need to point out to me exactly what portions you think
11  should apply.  And then if there's a dispute as to which
12  portions you're going to use or provisions you're going to use,
13  let me know.
14          Also if there's anything that you believe that I
15  should be doing differently because you want a certain provision
16  to apply under the manual, you need to let me know what that is
17  specifically.
18          Now, as far as the discovery, I'm a little confused.
19  I can understand why the plaintiff wants the case to go to trial
20  sooner than the defendant does, but you seem to want a
21  relatively short discovery period, while at the same time
22  telling me all the things you need to do, including asking for
23  50 depositions, including six that may go more than seven hours,
24  but you're asking for a discovery cutoff of June 29.  So if I
25  went with that suggestion and then didn't grant the inevitable
```

```
 1   request for a continuance, I don't think you'd be very happy.
 2   I'm not sure how you figured you could get all that done between
 3   now and June 29.
 4            MR. NICHOLAS:  We actually don't think it's
 5   particularly difficult.  We've taken more depositions in that
 6   amount of time, and we think we can complete discovery in that
 7   amount of time.  We're not anticipating a request to extend that
 8   date, and we would stick to that date.
 9            THE COURT:  Famous last words.  How are you going to
10   get foreign depositions?  Are you going to want foreign
11   depositions?
12            MR. NICHOLAS:  We are going to take discovery.  We're
13   going to subpoena certain foreign defendants for sure.  We're
14   going to have --
15            THE COURT:  Subpoena?
16            MR. NICHOLAS:  We're going to have to go through the
17   form requirements for taking those depositions.
18            THE COURT:  Exactly.  Have you figured out what those
19   are?
20            MR. NICHOLAS:  It's not particularly easy.  It's
21   difficult, and we'll have to see if defendants will cooperate to
22   allow us to take certain of those depositions, but it's a
23   challenge.  There is no question about that.
24            THE COURT:  And so if you're not done, that's it;
25   you're going to give up your right to take whatever depositions
```

1  you haven't gotten done by then?
2       MR. NICHOLAS: Yes.
3       THE COURT: I wouldn't say that if I were you, but
4  okay. I don't know. I would grab that if I were the defense.
5       MR. BASKIN: Your Honor, realistically obviously
6  you're right. The schedule that they're proposing is
7  impossible. If they -- just getting -- just abiding by
8  appropriate Japanese procedure is going to be -- probably take
9  more time than they are proposing. If they really are -- it's
10 our position this should not proceed as if it was an accelerated
11 expedited discovery case, and obviously there are rules, and if
12 they want to propose a totally unrealistic time period with the
13 notion that when they're not completed, the discovery will get
14 cut off --
15      THE COURT: Their discovery will get cut off.
16      MR. BASKIN: You know, I'd actually like to discuss
17 that with my clients because I think it's a, you know, very,
18 very unrealistic, contrived position. Moreover, your Honor, I
19 think it's baked into a -- more importantly, I think we're
20 going -- we received on Friday from them a meet and confer
21 letter which goes to fundamentally the scope of the case, what's
22 left of the case after your Honor's ruling and whether, you
23 know -- whether they will be allowed discovery going back to
24 prehistoric times and a whole host of issues regarding the scope
25 that will really define the scope for discovery. And what I

1 would propose is a couple of things to your Honor. What we
2 would propose is that these scope issues will have to be
3 addressed in order to decide what's realistic in terms of the
4 speed of discovery.
5     We think, since we seem to have a totally different
6 view as to the meaning of your Honor's order -- I mean, we think
7 it has meaning, and it's pretty dramatically narrowed the case.
8 What we would propose is, your Honor, that leading up to these
9 fights over scope, these inevitable fights -- what looks like a
10 brewing fight over scope, that they should take their complaint
11 and conform it to your Honor's order, nothing more than scratch
12 out what they think is no longer in the case and we'll do the
13 same, and then your Honor or the magistrate or whoever is going
14 to decide these scope issues can decide really what's still in
15 the case and what's not. If enough comes out, we may be able to
16 proceed to June 2012.
17     But if -- what they're proposing regarding the scope
18 of the case, that basically it will be the *War and Peace* of
19 product liability cases is what they're really proposing should
20 be discovery here, and if it's going to be as huge as they're
21 proposing, then we think that would be a realistic time to fix a
22 discovery cutoff when we really know what's in the case.
23     THE COURT: Well, there is certainly a benefit, I
24 think, to having an actual document that the Court and the
25 parties can look to that alleges now only the assertions that I

1 said would remain in the case. That doesn't necessarily
2 circumscribe the case in the way that you suggest that it does
3 because if there are seven allegations, that doesn't mean that
4 no discovery will be allowed on anything other than those
5 specific items, so as I say, it would be helpful to see that,
6 and maybe -- I don't know what plaintiff's view is about doing
7 that.
8            MR. NICHOLAS:  Your Honor --
9            THE COURT:  Separate from the discovery issue.
10           MR. NICHOLAS:  I think it's pretty clear what's in the
11 case.  It's the seven statements in the case, and you have the
12 loss causation allegation.  We would be concerned about that
13 approach because, of course, the Court dismissed a number of
14 statements, and this is our operative complaint.  If we file an
15 amended complaint and we have a new operative complaint, you
16 give up appellate rights.  So I think any amended complaint is
17 going to include the statements that we had in the past and ask
18 this Court *you're going to have this dismiss them*.  We could
19 stipulate to a dismissal or something like that, but the
20 complaint won't be different.
21           We have to allege the statements that we believe are
22 actionable in the case.  If the Court decides to dismiss certain
23 of those statements, it's perfectly fine.  And the Court has
24 already done that.  We know what this case involves.  It
25 involves the seven actionable statements.  The Court made it

9

1  very clear in its order.
2              THE COURT:  Okay.  I'll tell you what.  You file
3  something that you think properly reflects --
4              MR. BASKIN:  That's fine, your Honor.
5              THE COURT:  And you can just call it a submission.
6  It's not going to be a complaint or an amended complaint.  It's
7  just going to be a submission that maybe will at least make it
8  quicker to look for things in the complaint.  Don't -- I mean,
9  just redact the things that you think are out.  Don't mess with
10 the document itself.
11             MR. BASKIN:  Just cross it out -- that's fine,
12 your Honor.
13             THE COURT:  Exactly.  But that doesn't address the
14 discovery issue.  Let me talk, before I come up with dates --
15 let me talk about my thoughts/orders on the other things that
16 you have in your report.
17             I'm going to allow 30 depositions without further
18 leave of Court.  If you need more, Counsel, you need to justify
19 taking not only additional ones over 30, but all of the previous
20 30 that you've taken, so you don't get to waste time in the
21 original 30 and then say *but we need somebody who is essential*
22 *here*.  So I would suggest that you carefully evaluate all of the
23 depositions that you want to take.
24             On the other hand, if you've taken 30 that you need
25 and you want some more, certainly I think professional counsel

1  should work together and try to avoid discovery disputes.
2         For depositions with interpreters -- that is not where
3  an interpreter is just sitting in the room in case the deponent
4  needs an interpreter, but an interpreter is actually
5  interpreting -- the deposition time is expanded to nine hours,
6  and I don't know about Japanese, frankly, so I don't know what
7  the expansion factor is. That may actually not be enough. I
8  know the expansion factor for Spanish, for example, is about 30
9  percent. If Japanese is similar, then nine hours wouldn't be
10 equivalent to seven, but you can again work on that.
11        You may need to break up a deposition, even if it's
12 shorter than nine hours, unless you're going to have
13 interpreters switching off. I'm sure you know that's a very
14 intensive process, so again I'll leave it to you to cooperate
15 and do things in an effective way.
16        If you plan on videotaping the depositions, be sure
17 the interpreters are using consecutive interpretation because it
18 will be extremely difficult for us to hear the English questions
19 so that we know what the answers are for if that interpreter's
20 voice is going on at the same time the question is being asked.
21 I've had that done in a criminal case, and it was really
22 extremely difficult to work with. Or you can use a Sennheiser
23 device like we do in court just so there's not extra noise that
24 the jury is going to have to work through to figure out what the
25 questions or answers are.

1           And, again, you can certainly agree on longer
2  depositions.  Anything you can agree to in that regard, other
3  than changing deadlines, is fine with me.
4           On the subject of disputes, I thought you had agreed
5  to use the discovery masters that were appointed by Judge Selna.
6           MR. NICHOLAS:  I think we had agreed to use the
7  discovery masters.  I think they had opposed.
8           MS. KOCHENDERFER:  Yes.  That's correct, your Honor.
9  We made a filing -- I think it was last August -- in which we
10 addressed some of the points of potential coordination with the
11 MDL, and we had proposed using the magistrate here, and actually
12 the magistrate has entered the protective order that we
13 stipulated to fairly recently.
14          THE COURT:  Yes.  And he's not going to do anything
15 else on your case.
16          MS. KOCHENDERFER:  Okay.
17          THE COURT:  So you use Judge Selna's or you find
18 another one, or if you can't agree, you provide your top three
19 names for each side to me with their resumes and fee structures
20 and all that, but this is -- the magistrate judges are just as
21 overworked as the district judges, and in a case where, I don't
22 know how many millions or billions of dollars you claim are at
23 stake here, I'm not imposing on Judge Wistrich or any other
24 magistrate judge to deal with your disputes.  So you should work
25 that out and get -- if you can't work it out, get your proposals

```
 1  to me.  If you can work it out, then get me your proposed order
 2  as to how the process will work and who the person will be at
 3  your earliest convenience.
 4          So the defendant now claims that the case will come
 5  down to three or four claims.  I guess you're planning on
 6  bringing motions to reduce it even further.  There is a recent
 7  Supreme Court case on loss causation.  I'm not sure --
 8          MR. NICHOLAS:  Are you referring to --
 9          THE COURT:  It had to do the with the class
10  certification issue.
11          MR. NICHOLAS:  The Haliburton case, your Honor.
12          THE COURT:  Yes.  I assume you've both looked at that.
13  I don't know if that has anything to do with this case or not.
14          MR. NICHOLAS:  Yes, it does.
15          THE COURT:  Okay.  So you can consider how that
16  impacts any -- I know you were talking about a making a motion
17  based on loss causation.  It didn't have anything to do with
18  class certification, I don't think, but whatever you plan to do
19  I suppose you'll do sooner rather than later to make another
20  effort to reduce the kind of discovery that your client will be
21  subject to, so that's fine.
22          But that being said, I'm not sure why the case would
23  take 15 to 25 days.  That's kind of a high estimate, not that
24  the plaintiff's is very much lower.  We don't need to discuss
25  that at this time.  At the time of the pretrial conference, if
```

1  we get that far, I will be taking a look at the kinds of
2  witnesses, etc., that you plan to present, and I will let you
3  know how much time each side will have to try the case.
4          Again, the plaintiff is suggesting a relatively short
5  date for a trial in a case of this magnitude, at least from your
6  perspective; it's much larger than it is from the defense
7  perspective.  If there were any hope of having the two of you
8  agree on other dates that seem to me to be more realistic, I'd
9  have you do that, but I'm not sure --
10         MR. NICHOLAS:  Perhaps what we can do is we can meet
11 and confer on that, see if we can come to an agreement on this.
12 If we can, we can notify the Court.
13         THE COURT:  I really think -- I don't know how much
14 experience you've had with discovery issues in Japan.  It
15 doesn't sound like they're going to be willing to provide people
16 without the appropriate processes.  It depends on what treaties
17 people have signed and you have to go through the State
18 Department for some of them and not for others.  So I think you
19 really need to take a good look at what that process is.  And
20 then some of them you actually get to go take a deposition that
21 would be similar to what we would do here.  Sometimes you don't.
22 Sometimes you can only submit written questions and some
23 official over there asks them.  I don't know what the process
24 is, but I think you need to figure that out before you decide
25 whether these are really realistic dates.

1    I'll discuss with you at some future point screening
2    jurors for the trial based on how long I determine the trial is
3    going to be.  I also think we ought to have a status conference
4    maybe every four months or so.  So I think the best thing to do
5    is not to set any dates today, to have you go meet and confer
6    and see if you can come up with something more realistic and
7    pushing it off to -- basically the defense numbers would be
8    early 2015.  That's just really much too far in the future.
9    Early 2013 is probably a little bit too soon so maybe middle or
10   end of 2013 for a trial date and then work back from there would
11   be my suggestion, but if you can agree to dates, then I'm very
12   likely to go along with those.
13            As I said, you will be finding -- outside ADR is fine.
14   You will be finding somebody on the outside to do settlement, to
15   do discovery.  Whether it's the same person or a different one
16   doesn't particularly matter to me.
17            Maybe I should set a date a little bit sooner, maybe
18   two months from now, just in case you can't agree on dates and
19   can't agree on a discovery master and are continuing to fight
20   about other things, and then after we get our schedule set, we
21   can have conferences about every four months after that unless
22   something else comes up that we need to deal with.
23            MR. NICHOLAS:  That's fine.  The only thing I'd ask
24   about the discovery master is you should set a short deadline on
25   that because we have served discovery.  We will clearly probably

1  have disputes on that, so if we could get back to the Court
2  relatively quickly whether we have an agreement or not on that,
3  I'd appreciate that.
4          THE COURT:  All right.  Within 10 days.
5          MR. NICHOLAS:  I think that is completely reasonable.
6  Thank you.
7          THE COURT:  All right.  Anything else?  All right.
8  Two month date, Ms. Plato?
9          THE CLERK:  Yes, your Honor.  We would look looking at
10 the holidays.
11         THE COURT:  Do I get time off for the holidays?
12         THE CLERK:  Can we, please.  How about January 9?
13         THE COURT:  January 9.  All right.  January 9 at
14 11:00 a.m.  We will see you then.  Thank you.
15
16              (Proceedings adjourned at 11:31 a.m.)

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | *CERTIFICATE OF OFFICIAL REPORTER*                                       |
| 2  |                                                                          |
| 3  | *COUNTY OF LOS ANGELES )*                                                |
|    | *                       )*                                               |
| 4  | *STATE OF CALIFORNIA    )*                                               |
| 5  |                                                                          |
| 6  |                                                                          |
| 7  | *I, Pamela A. Batalo, Federal Official Realtime Court*                   |
| 8  | *Reporter, Registered Professional Reporter, in and for the*             |
| 9  | *United States District Court for the Central District of*               |
| 10 | *California, do hereby certify that pursuant to Section 753,*            |
| 11 | *Title 18, United States Code, that the foregoing is a true and*         |
| 12 | *correct transcript of the stenographically reported proceedings*        |
| 13 | *held in the above-entitled matter and that the transcript page*         |
| 14 | *format is in conformance with the regulations of the Judicial*          |
| 15 | *Conference of the United States.*                                       |
| 16 |                                                                          |
| 17 |                                                                          |
|    | *Date:  October 18, 2011*                                                |
| 18 |                                                                          |
| 19 |                                                                          |
| 20 |                                                                          |
|    | */s/ Pamela A. Batalo*                                                   |
| 21 | *Pamela A. Batalo, CSR No. 3593, FCRR, RPR*                              |
|    | *Federal Official Court Reporter*                                        |
| 22 |                                                                          |
| 23 |                                                                          |
| 24 |                                                                          |
| 25 |                                                                          |