# Exhibit C

Stuart J. Baskin (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
Email: sbaskin@shearman.com

Patrick D. Robbins (State Bar No. 152288)
Jeffrey S. Facter (State Bar No. 123817)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
Email: probbins@shearman.com
        jfacter@shearman.com

Kay E. Kochenderfer (State Bar No. 125847)
Gareth Evans (State Bar No. 138992)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
Email: kkochenderfer@gibsondunn.com
        gevans@gibsondunn.com

Attorneys for Defendants Toyota Motor
Corporation, Toyota Motor North America, Inc.,
Toyota Motor Sales, U.S.A., Inc., Katsuaki
Watanabe, Fujio Cho, Yoshimi Inaba, James E.
Lentz III, Irving A. Miller, Robert S. Carter, and
Robert C. Daly

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE TOYOTA MOTOR CORPORATION SECURITIES LITIGATION | CASE NO. CV-10-0922 DSF (AJWx) **NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES** Declaration of Emily V. Griffen and Request for Judicial Notice Filed Separately Hearing: February 27, 2012 Time: 1:30 p.m. Place: Courtroom 840 Judge: Hon. Dale S. Fischer |

# NOTICE OF MOTION AND MOTION

## FOR PARTIAL JUDGMENT ON THE PLEADINGS

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2012 at 1:30 p.m., or as soon thereafter as the matter can be heard in the courtroom of the Honorable Dale S. Fischer, United States District Court, Central District of California, Western Division, Courtroom 840, 255 East Temple Street, Los Angeles, California, 90012, Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc. (together, "Toyota"), Katsuaki Watanabe, Fujio Cho, Yoshimi Inaba, James E. Lentz III, Irving A. Miller, Robert S. Carter and Robert C. Daly (collectively, "Defendants") will move the Court for an order for partial judgment on the pleadings.

Defendants seek an order from the Court dismissing all claims based on three of the allegedly false or misleading statements at issue in the Consolidated Class Action Complaint ("Complaint"), Nos. 20, 24 and 26 (*see* Appendix to Complaint), pursuant to Federal Rule of Civil Procedure 12(c) because the Complaint fails to plead facts establishing the elements of loss causation and scienter for those statements.

This Motion is made following the conference of counsel required by Local Rule 7-3, which took place on November 14, 2011, and further discussions among counsel on November 18, 2011.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Emily V. Griffen in support of the Motion, all pleadings, exhibits, documents, and other records and files in this action, and upon such other evidence or arguments as may be presented at the hearing in this matter.

DATED:  December 9, 2011          SHEARMAN & STERLING LLP

By:_____/s/ Stuart J. Baskin_____
                    Stuart J. Baskin

GIBSON, DUNN & CRUTCHER LLP

By:_____/s/ Kay E. Kochenderfer_____
                    Kay E. Kochenderfer

Attorneys for Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Katsuaki Watanabe, Fujio Cho, Yoshimi Inaba, James E. Lentz III, Irving A. Miller, Robert S. Carter, and  Robert C. Daly

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. THE STATEMENTS AT ISSUE ................................................................... 4

III. ARGUMENT ................................................................................................ 5

    A.    The Complaint Fails to Allege Facts Establishing Loss
        Causation Regarding Statements 20, 24 and 26 ................................... 5

        1.    The September 2009 and January 27, 2010 Floor
            Mat Entrapment Disclosures Do Not Establish Loss
            Causation For Statements 20, 24 and 26. .................................... 8

        2.    The Temporary Halt In Sales of Certain Models Due
            to the "Sticky Pedal" Recall In Late January and
            Early February 2010 Does Not Establish Loss
            Causation For Statements 20, 24 and 26. .................................... 9

    B.    The Complaint Fails to Allege Scienter Regarding
        Statements 20, 24 and 26. .................................................................. 12

IV. CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008) ................................................................ 12

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ............................................................... 6, 7, 8

*Glazer Capital Mgmt., LP v. Magistri,*
549 F.3d 736 (9th Cir. 2008) ........................................................ 13, 14

*In re Impac Mortg. Holdings, Inc. Sec. Litig.,*
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................ 14

*In re Int'l Rectifier Corp. Sec. Litig.,*
No. CV 07-02544-JFW (VBKx), 2008 WL 4555794 (C.D. Cal. May
23, 2008) ............................................................................................. 14

*In re Oracle Corp. Sec. Litig.,*
627 F.3d 376 (9th Cir. 2010) ................................................... 6, 8, 11

*In re VeriFone Holdings, Inc. Sec. Litig.,*
No. 07-6140, 2011 WL 1045120 (N.D. Cal. Mar. 22, 2011) ............. 13

*Limantour v. Cray Inc.,*
432 F. Supp. 2d 1129 (W.D. Wash. 2006) .......................................... 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
540 F.3d 1049 (9th Cir. 2008) .......................................... 6, 7, 8, 9, 11

*Motley v. Smith,*
No. 2:08-CV-01423-RLH-VPC, 2011 WL 2580345 (E.D. Cal. June
28, 2011) ............................................................................................... 5

*Pittleman v. Impac Mortg. Holdings, Inc.,*
No. SACV 07-0970 AG (MLGx), 2009 WL 648983 (C.D. Cal. Mar.
9, 2009) ............................................................................................... 13

*Ross v. U.S. Bank Nat'l Ass'n,*
542 F. Supp. 2d 1014 (N.D. Cal. 2008) ............................................... 5

*South Ferry LP, # 2 v. Killinger,*
542 F.3d 776 (9th Cir. 2008) ...................................................... 12, 13

*Zucco Partners, LLC v. Digimarc Corp.,*
552 F.3d 981 (9th Cir. 2009) ...................................................... 12, 13

## Statutes

15 U.S.C. § 78t(a) ...................................................................................... 5

## Other Authorities

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 1367 (3d ed. 2004) ......................................................... 6

# Rules

Fed. R. Civ. P. 12(h)(2)(B) ................................................................. 6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Toyota Motor Corporation ("TMC"), Toyota Motor North America, Inc. ("TMA"), Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota"), Katsuaki Watanabe, Fujio Cho, Yoshimi Inaba, James E. Lentz III, Irving A. Miller, Robert S. Carter, and Robert C. Daly (collectively, "Defendants") submit this Memorandum of Points and Authorities in support of their Motion for Partial Judgment on the Pleadings.

## **I. INTRODUCTION**

Through this Motion for Partial Judgment on the Pleadings, Defendants seek dismissal of Plaintiffs' claims based on three of the seven allegedly false statements that remain in this securities litigation under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. On a motion for judgment on the pleadings, the court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy, and dismiss the claim or enter judgment on the pleadings if the complaint fails to state a legally sufficient claim. Here, the three statements— identified as Statements 20, 24 and 26 in the Appendix accompanying Plaintiffs' Complaint[1] [Dkt. # 174-1]—cannot give rise to a claim under Sections 10(b) and 20(a) because the Complaint fails to allege facts sufficient to plead the required elements of loss causation and scienter.

This case arises out of recalls of Toyota vehicles related to alleged "unintended acceleration." As the allegations in the Complaint reveal, the generic phrase "unintended acceleration" refers to several different and distinct issues, each of which requires separate analysis and each of which only pertains to certain vehicle models. In late 2009 and early 2010, Toyota took steps to address two unrelated issues: (1) the possibility that a floor mat could entrap the accelerator pedal in certain models (discussed in alleged disclosures in September 2009 and the subject of recalls in late

---

[1] All references to the "Complaint" or "Compl." are to the Consolidated Class Action Complaint [Dkt. # 174].

2009 and early 2010) (Compl. ¶¶ 112-114, 180, 184); and (2) a possible mechanical defect that could result in a "sticky" accelerator pedal—*i.e.*, a pedal "becoming harder to depress, slower to return, or in the worst case, mechanically stuck in a partially depressed position." (Compl. ¶¶ 14, 124, 181, 182, 183, 185.) (With respect to the "sticky" pedal issue, Toyota announced on January 21, 2010 a recall affecting eight vehicle models. (*Id.*, ¶¶ 14, 124, 181.) On January 26, 2010, Toyota announced that it would temporarily suspend sales of those models and that, due to the sales suspension, it expected to stop producing the eight models on certain production lines during the week of February 1, 2010. (*Id.*, ¶¶ 15, 126, 183.))

Plaintiffs—purchasers of Toyota Motor Corporation American Depositary Shares ("ADSs")—contend that the seven allegedly false statements remaining in the case following the Court's ruling on Defendants' Motion to Dismiss [Dkt. # 213] are actionable under Sections 10(b) and 20(a) because they have adequately pleaded the elements of these claims, including loss causation (*i.e.*, that corrective disclosures proximately caused their economic losses) and scienter (*i.e.*, that defendants knowingly or with deliberate recklessness made material false or misleading statements). But Plaintiffs have failed to adequately plead either loss causation or scienter with respect to Statements 20, 24 and 26, which Toyota employee Bill Kwong allegedly made regarding the ***Tacoma*** pickup truck in two *Detroit Free Press* articles on April 7 and June 10, 2008 (Compl. ¶¶ 161, 163) and regarding the ***Prius*** in an April 23, 2009 article in *Westword*, a free alternative weekly newspaper in Denver, Colorado (Compl. ¶ 166).

To plead loss causation, Plaintiffs must allege facts showing that the price of the securities at issue *fell significantly*—and not just a modest drop—after the market learned the truth (a "corrective disclosure"). Of the corrective disclosures alleged in the Complaint, however, Plaintiffs have only pleaded a significant decline in the price of Toyota ADSs associated with *one* announcement—the one on January 26, 2010, in which Toyota announced it was temporarily suspending U.S. sales of eight models

involved in the recall for sticking accelerator pedals. (*See* Compl. ¶¶ 126, 183.) This price decline does not establish loss causation for Statements 20, 24 and 26, which Mr. Kwong made regarding the Tacoma and Prius between 20 months and 8 months before Toyota announced the "sticky pedal" recall, however, as neither the recall nor the sales suspension involved the Tacoma or Prius.

Additionally, Plaintiffs have failed to adequately plead scienter with respect to Statements 20, 24 and 26. In its July 7, 2011 Order on Defendants' Motion to Dismiss, the Court held that the "core operations" inference applied to certain of the Individual Defendants in finding that the Complaint adequately pleaded scienter as to their statements. (*See* July 7, 2011 Order [Dkt. # 213] at 6-8.) None of the Individual Defendants made Statements 20, 24 or 26. The core operations inference only applies to members of a corporation's management. Toyota employee Bill Kwong, who is quoted in the articles, is neither a named defendant nor a member of Toyota's management, and Plaintiffs have not pleaded his scienter.

Accordingly, the Complaint fails to adequately plead loss causation or scienter regarding Statements 20, 24 and 26, and the Court should dismiss Plaintiffs' claims based on those statements. As the Court recognized at the Scheduling Conference on October 17, 2011, in bringing this Motion, Defendants seek to limit the scope of this litigation to four statements made in late 2009 that Defendants contend are the proper focus of this case and the discovery that the parties will conduct. (*See* Oct. 17, 2011 Hearing Tr. at 12:4-21 [Dkt. # 234]) ("[T]he defendant now claims that the case will come down to three or four claims. . . . I know you were talking about making a motion based on loss causation. . . . [B]ut whatever you plan to do I suppose you'll do sooner rather than later to make another effort to reduce the kind of discovery that your client will be subject to, so that's fine.").)

/ / /

/ / /

/ / /

3

## II. THE STATEMENTS AT ISSUE

This motion seeks dismissal on the pleadings of Plaintiffs' claims with respect to Statements 20, 24 and 26. In their Appendix to the Complaint, Plaintiffs do not identify any "speaker" with respect to these statements other than the defendant Toyota entities. As alleged in the Complaint, the articles in which they appear, however, attribute the statements to TMS employee Bill Kwong.

- Statement 20: An April 7, 2008 *Detroit Free Press* article about complaints of unintended acceleration in the Tacoma quotes Mr. Kwong as saying Toyota found no problems with the Tacoma that would explain the complaints, that "[w]e don't feel it's an issue with the vehicle," and that "a misapplication of the pedals by the driver" could account for the complaints. (*See* Compl. ¶ 161; App. No. 20; Declaration of Emily V. Griffen ("Griffen Decl."), Ex. A; Request for Judicial Notice ("RJN") at 1-3.)

- Statement 24: A June 10, 2008 *Detroit Free Press* article, also about the Tacoma, in which Mr. Kwong allegedly stated that there were "no flaws in the trucks and that many reports [of unintended acceleration] were 'inspired by publicity.'" The article also quotes a Toyota letter to the National Highway Traffic Safety Administration ("NHTSA") in response to a NHTSA investigation of the Tacoma stating that "extensive media coverage" of the Tacoma may explain many of the complaints, and that "it is clear that the majority of the complaints are related to minor drivability issues and are not indicative of a safety-related defect." Further, the article asserts that Mr. Kwong stated that "tests by the automaker and the NHTSA revealed no problems that would explain the complaints." (Compl. ¶ 163; App No. 24; Griffen Decl., Exs. B & C; RJN at 1-3.)

- Statement 26: An April 23, 2009 *Westword* article about complaints of unintended acceleration in the Prius quotes Mr. Kwong as saying that some "customers that say, 'I stood on the brake with all my might and the car just kept on accelerating'" may in fact "not [have been] stepping on the brake." (Compl. ¶ 166; App. No. 26; Griffen Decl., Ex. D; RJN at 1-3.)

# III. ARGUMENT

The Court should grant this Motion for Partial Judgment on the Pleadings because the Complaint fails to plead facts establishing loss causation or scienter regarding Statements 20, 24 and 26.[2] A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) involves the same standard as a motion to dismiss under Rule 12(b)(6). "Under either provision, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy, and dismiss the claim or enter judgment on the pleadings if the complaint fails to state a legally sufficient claim." *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008) (citation omitted). *See also Motley v. Smith*, No. 2:08-CV-01423-RLH-VPC, 2011 WL 2580345, at *1 (E.D. Cal. June 28, 2011).

## A. The Complaint Fails to Allege Facts Establishing Loss Causation Regarding Statements 20, 24 and 26.

In its July 7, 2011 Order, the Court did not address loss causation with respect to Statements 20, 24 and 26. With respect to ten of the other statements the Court dismissed on other grounds, however, the Court expressed "serious doubt" that the Complaint "pleaded sufficiently" loss causation. (*See* July 7, 2011 Order at 4). The Court encouraged Plaintiffs to amend their Complaint and "expand on" the loss causation allegations. *Id.* Plaintiffs, however, never amended their Complaint to address the Court's concern. In light of Plaintiffs' failure to cure remaining defects in the Complaint, this Motion for Judgment on the Pleadings provides an opportunity for the Court "to determine the sufficiency of the case before proceeding any further and

---

[2] As the Court set forth in its July 7, 2011 Order, to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, a plaintiff must allege facts showing that the defendants "(1) made a material misrepresentation (or omission), (2) with scienter, (3) in connection with the purchase or sale of a security, (4) reliance by the plaintiff, (5) economic loss, and (6) 'loss causation.'" (*See* July 7, 2011 Order at 2) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).) Section 20(a) provides a cause of action for "control person liability" and requires a primary violation (*e.g.*, of Section 10(b)) as a predicate to liability. *See* 15 U.S.C. § 78t(a).

investing additional resources in it." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 217 (3d ed. 2004); *see also* Fed. R. Civ. P. 12(h)(2)(B) (allowing parties to raise arguments for failure to state a claim "by a motion under Rule 12(c)").

According to the Supreme Court, in order to plead loss causation in a securities fraud case, plaintiffs must allege facts showing that the price of the securities at issue "*fell significantly* after the truth became known," *i.e.*, after a corrective disclosure. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (emphasis added). In addition, loss causation involves demonstrating "that the defendant's misrepresentation (or other fraudulent conduct) *proximately caused* the plaintiff's economic loss." *Id*. at 346. "Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a plaintiff suffers a loss as a result of the market's reaction." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010). *See also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).

Courts may dismiss securities fraud claims at the pleading stage where the complaint fails to allege facts demonstrating that the price of the securities declined following a corrective disclosure. In *Dura*, for example, the Supreme Court upheld the District Court's dismissal of the complaint for failure to adequately plead loss causation. *See Dura*, 544 U.S. at 340, 346-48. The Court held that plaintiffs' allegations that Dura's securities prices were "artificially inflated" were insufficient because the complaint "fail[ed] to claim that Dura's share price *fell significantly* after the truth became known[.]" *Id.* at 347 (emphasis added). Similarly, in *Metzler*, the Ninth Circuit affirmed the District Court's dismissal of the complaint on a Rule 12(b)(6) motion for failure to adequately plead loss causation. *Metzler*, 540 F.3d at 1063-65 (holding that "the complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses").

Although *Dura* acknowledges that plaintiffs are entitled to make a "short and plain statement" regarding loss causation that provides defendants with "fair notice of what the plaintiffs' claim is," that statement must nevertheless allege a causal connection between the purported fraudulent statement and a stock price decline.  *See Dura*, 544 U.S. at 346-47 (quotation omitted).  In *Metzler*, for example, the Ninth Circuit stated that *Dura* "does not allow a plaintiff to plead loss causation through 'euphemism' and thereby avoid alleging the necessary connection between defendant's fraud and the actual loss."  *Metzler*, 540 F.3d at 1064.  The Ninth Circuit therefore held that a plaintiff cannot simply allege an untethered stock price drop that purportedly revealed the fraud.  *See id.*[3]

Here, the Complaint fails to adequately plead loss causation regarding Statements 20, 24 and 26.  Plaintiffs' loss causation allegations appear at paragraphs 178-187 of the Complaint (entitled "Loss Causation"), in which Plaintiffs allege that two categories of corrective disclosures relating to potential causes of unintended acceleration caused Plaintiffs' loss:  (1) those regarding the possibility that a floor mat could entrap the accelerator pedal in certain models (discussed in alleged disclosures in September 2009 and the subject of recalls in late 2009 and early 2010) (¶¶ 180, 184); and (2) those regarding the "sticky pedal" recall and related temporary sales halt (discussed in alleged disclosures in late January and early February 2010) (¶¶ 181-183, 185-186).

/ / /

/ / /

/ / /

---

[3] "So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud.  Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited—that loss causation is established through an allegation that a stock was purchased at an inflated price.  Loss causation requires more."  *Metzler*, 540 F.3d at 1064 (citations omitted).

## 1. The September 2009 and January 27, 2010 Floor Mat Entrapment Disclosures Do Not Establish Loss Causation For Statements 20, 24 and 26.

The disclosures relating to floor mat entrapment in September 2009 and on January 27, 2010 (Compl. ¶¶ 180, 184) do not establish loss causation for Statements 20, 24 and 26 because the Complaint fails to allege a significant decline in the price of Toyota ADSs tied to those disclosures. *See Metzler*, 540 F.3d at 1062 ("[T]he complaint must allege that the defendant's 'share price *fell significantly* after the truth became known.'") (quoting *Dura*, 544 U.S. at 347) (emphasis added). *See also Oracle*, 627 F.3d at 392 (the market must react to the alleged corrective disclosure).

Plaintiffs have not alleged that the price of Toyota's securities dropped significantly following the statements in September 2009 indicating that using the wrong floor mat or an improperly installed floor mat could result in floor mat entrapment. (*See* Compl. ¶ 180.) The Complaint alleges, without a baseline or percentage, only that "[o]n these disclosures, the price of Toyota ADSs dropped to $82.46." (*Id.*) Plaintiffs' untethered allegation of an unspecified "drop" in ADS prices after these disclosures does not plead the significant price decline that *Dura*, *Metzler* and *Oracle* require. Nor was Plaintiffs' pleading failure mere oversight. Plaintiffs could not possibly amend the Complaint to correct this defect, because the ADSs did not in fact experience a significant price drop in connection with the floor mat announcements.

The floor mat announcements that Plaintiffs attempt to use as the basis for loss causation took place on September 14, 15 and 16, 2009. (*See* Compl. ¶ 180.) But the ADSs only dropped $0.65, *a mere 0.8%*, over the three days from September 14 to 16 (from $83.11 on September 14, to $82.72 on September 15, and then to $82.46 on September 16). The ADSs then closed higher at $82.61 on September 17 and $83.58 on September 18, more than making up for the insignificant decline. (*See* Griffen Decl., Ex. E (historical TMC ADS prices); RJN at 4.)

Plaintiffs also have not alleged a significant price decline after Toyota announced on January 27, 2010 after the market closed "that it had amended its October 5, 2009 defect report regarding the potential risk for floor mat entrapment to include certain other models in the recall campaign, adding approximately 1.1 million vehicles to the floor mat recall." (*See* Compl. ¶ 184.) On January 28, 2010, Toyota ADSs declined 2.63%, but then rebounded 3.82% two trading days later on February 1, 2010 (the 30th was a Saturday and the 31st was a Sunday). (*See id.; see also* Griffen Decl., Ex. E (historical TMC ADS prices); RJN at 4.)

In *Metzler*, the Ninth Circuit held that plaintiffs failed to adequately plead loss causation where the defendant company's "stock recovered very shortly after the modest *10%* drop that accompanied" a corrective disclosure. *See Metzler*, 540 F.3d at 1064 (emphasis added). *See also Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1162 (W.D. Wash. 2006) (dismissing claim regarding deferred tax asset for failure to allege loss causation where "stock price dropped from $3.47 to $3.18 the next day but recovered to $3.53 two days later"). Here, the temporary decline was much smaller than in *Metzler*—2.63% versus 10%—and the price rebounded within two trading days

Accordingly, Plaintiffs have failed to plead that the disclosures regarding floor mat entrapment establish loss causation for Statements 20, 24 and 26.

## 2. The Temporary Halt In Sales of Certain Models Due to the "Sticky Pedal" Recall In Late January and Early February 2010 Does Not Establish Loss Causation For Statements 20, 24 and 26.

Plaintiffs have alleged declines in Toyota's ADS price in connection with Toyota's announcements beginning on January 26, 2010 regarding a temporary suspension of sales of eight models involved in the "sticky pedal" recall announced on January 21, 2010. (*See* Compl. ¶¶ 181-183, 185, 186; *see also* Griffen Decl., Ex. E

/ / /

/ / /

/ / /

(historical TMC ADS prices); RJN at 4.)[4]  This alleged price decline, however, cannot establish loss causation for Statements 20, 24 and 26.  The Tacoma and Prius—which were the subject of  Statements 20, 24 and 26—were neither part of the "sticky pedal" recall nor part of the temporary sales halt of the eight vehicle models involved in the "sticky pedal" recall.

Statements 20, 24 and 26 appeared in two *Detroit Free Press* articles in April and June 2008 (Statement Nos. 20 and 24) and in a *Westword* article in April 2009 (Statement No. 26).  The titles and content of these articles demonstrate on their face that they were each discussing a particular Toyota vehicle model—*i.e.*, the Tacoma (Statement Nos. 20 and 24) and the Prius (Statement No. 26).  (*See* Griffen Decl., Ex. A ("Toyota Pickup Probe Pushed; Sudden Acceleration Claims Hard to Pin Down"), B ("Toyota Denies Tacoma Is Defective; Media Inspired Acceleration Claims, It Says") and D ("The Prius Can Take Owners On A Wild Ride").  *See* Compl. ¶¶ 161, 163, 166; App. Nos. 20, 24 and 26; RJN at 1-3.)  Plaintiffs have not alleged that either vehicle was subject to the 2010 "sticky pedal" recall and they have failed to plead facts demonstrating that either the Tacoma or the Prius ever had a sticky pedal problem.[5]

/ / /

/ / /

---

[4] Plaintiffs have failed to allege a significant decline in ADS price immediately following the "sticky pedal" recall announcement on January 21, 2010.  *See* Compl. ¶ 181 (alleging a 2.49% decline on January 22, 2010).  Similarly, they have failed to allege a significant price decline following a January 25, 2010 *Reuters* article stating that Toyota offered to repair vehicles in Europe to address potentially faulty accelerator pedals.  *See* Compl. ¶¶ 181-182 (alleging a decline in ADS price of just 0.52% from January 21 to January 25, 2009).  Plaintiffs have alleged declines tied to Toyota's announcement of a temporary suspension of sales and production of certain models on January 26, 2010 related to the "sticky pedal" recall (8%), February 2, 2010 (5.7%), and February 3, 2010 (6%).[4]  *See* Compl. ¶¶ 183, 185, 186; *see also* Griffen Decl., Ex. E (historical TMC ADS prices); RJN at 4.

[5] Nor could Plaintiffs amend the Complaint to cure this problem, because neither the Tacoma nor the Prius was subject to the  "sticky pedal" recall or associated sales halt.  (*See* Griffen Decl., Ex. F (Jan. 21, 2010 TMS press release) ("not affected are Toyota Prius, Tacoma [and certain other models]"), Ex. G (Jan. 26, 2010 TMS press release) (same); *see* RJN at 1-3.)

To establish loss causation, "the market must learn of and react to" information revealing that the particular statements at issue were false. *Oracle*, 627 F.3d at 392 ("Loss causation is established if the market learns of a defendant's fraudulent act or practice, the market reacts to the fraudulent act or practice, and a plaintiff suffers a loss as a result of the market's reaction."). *See also Metzler*, 540 F.3d at 1063-64. In *Metzler*, the Ninth Circuit held that the plaintiffs failed to allege a sufficient connection between the alleged fraud and the corrective disclosure, and thus failed to plead loss causation. *See id.* at 1063-65. The alleged corrective disclosures in *Metzler*—an article regarding a governmental investigation and an earnings announcement—did not disclose to the market that defendant Corinithian Colleges was manipulating student enrollment figures, which was the fraudulent activity that plaintiffs alleged drove the stock price down. *See id.* at 1063-64. Similarly, here, the disclosures related to the sales halt associated with the "sticky pedal" recall did not reveal that statements about claims of unintended acceleration in the Tacoma and Prius were false, as that recall and related temporary suspension of sales did not involve the Tacoma or Prius.

Accordingly, the Complaint fails to allege facts sufficient to establish loss causation for Statements 20, 24 and 26.[6]

///

///

---

[6] Plaintiffs may assert that other alleged corrective disclosures purportedly related to unintended acceleration caused their loss in connection with Statements 20, 24 and 26, such as the January 2009 Sienna trim panel recall or the November 25, 2009 announcement that as part of the floor mat entrapment recall Toyota would re-design the length of the accelerator pedal and the shape of the floor under the pedal in certain vehicle models. (*See* Compl. ¶¶ 11, 71, 103, 120). Plaintiffs did not include the Sienna trim panel recall or the November 25, 2009 floor mat recall announcement in the "Loss Causation" section of the Complaint (*id.* ¶¶ 178-187) and neither disclosure supports loss causation for Statements 20, 24 and 26. The Sienna trim panel recall did not involve the Tacoma and Prius—which were the subjects of Statements 20, 24 and 26. Additionally, the Complaint does not allege price declines associated with the Sienna trim panel recall (¶¶ 71, 103) or the redesign of the accelerator pedal and shape of the floor surface (¶¶ 11, 120). In fact, with respect to the accelerator pedal and floor surface redesign, the ADSs closed at $77.86 on November 25, 2009, up $1.81 from the prior day's close at $76.05. (*See* Griffen Decl., Ex. 4 (historical TMC ADS prices); RJN at 4.)

11

**B.**     **The Complaint Fails to Allege Scienter Regarding Statements 20, 24 and 26.**

Although the Court in its July 7, 2011 Order on Defendants' Motion to Dismiss relied upon the "core operations inference" in allowing the case to proceed as to Statements 20, 24, 26 and 29-32, it did not reach the issue of whether the core operations inference applies to Mr. Kwong, who made Statements 20, 24 and 26. (*See* July 7, 2011 Order at 6-8.) As the Court stated in its Order, "[t]he core operations inference arises where the particular facts at issue were so important to the company that it is 'absurd' to suggest that the *individual defendants* would not have had 'contemporaneous knowledge' of them." (*See id.* at 6) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008)) (emphasis added). Mr. Kwong is not an Individual Defendant.

The core operations inference cannot establish Mr. Kwong's scienter because the inference only applies to a corporation's senior management. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (the core operations inference may apply where there are "allegations regarding *a management's role* in the company that are particular and . . . where the nature of the relevant fact is of such prominence that it would be absurd to suggest that *management* was without knowledge of the matter," *e.g.*, where information "is readily apparent to the defendant corporation's *senior management*") (quotation marks omitted, emphasis added); *South Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008) (allegations about "*management's role in a corporate structure* and the importance of the corporate information about which *management* made false or misleading statements may . . . create a strong inference of scienter when made in conjunction with detailed and specific allegations about *management's exposure to factual information* within the company," for example, "specific admissions from *top executives* that they are involved in every detail of the company" or where "the nature of the relevant fact is of

12

1    such prominence that it would be 'absurd' to suggest that *management* was without

2    knowledge of the matter") (emphasis added) (quotation omitted).

3         The Complaint does not allege that Mr. Kwong is a Toyota officer or member of

4    its management.  Indeed, the Complaint alleges nothing about Mr. Kwong other than

5    that he was a "spokesman" quoted in the *Detroit Free Press* and *Westword* articles.

6    (*See* Compl. ¶¶ 161, 163, 166.)[7]  The position of spokesperson is clearly insufficient

7    for application of the core operations inference, as the inference is premised upon the

8    notion that senior management would likely be aware of facts regarding matters of

9    great importance to the company.  *See Zucco*, *supra*, 552 F.2d at 1000; *South Ferry*,

10   *supra*, 542 F.3d at 785-86.  *See also* July 7, 2011 Order at 6.  Moreover, Plaintiffs have

11   not otherwise pleaded any facts establishing Mr. Kwong's scienter.

12        Because Plaintiffs have failed to plead Mr. Kwong's scienter, they also have

13   failed to plead the scienter of the Toyota entity defendants regarding Statements 20, 24

14   and 26.  To plead a corporation's scienter, plaintiffs must plead facts showing that the

15   *particular individual* within the corporation who actually made the statements did so

16   with scienter.  *See, e.g., Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th

17   Cir. 2008) ("the PSLRA requires [plaintiff] to plead scienter with respect to *those*

18   *individuals who actually made the false statements*") (emphasis added); *In re VeriFone*

19   *Holdings, Inc. Sec. Litig.*, No. 07-6140, 2011 WL 1045120, at *9 (N.D. Cal. Mar. 22,

20   2011) ("In the Ninth Circuit, a corporation is deemed to have acted with scienter with

21   regard to a public statement only if the director or officer *who made the alleged*

22   *misstatement* acted with scienter.") (emphasis added) (citation omitted).[8]  Moreover,

---

[7]  At the hearing on Defendants' Motion to Dismiss, the Court instructed Plaintiffs to
file a supplemental submission addressing the positions of the Individual
Defendants in order to assist it in analyzing application of the core operations
inference.  Plaintiffs' submission did not mention Mr. Kwong, who is not an
Individual Defendant.  (*See* Hearing Tr. at 22:11-23:1); June 6, 2011 Civil Minutes
(Dkt. No. 205); Pl's Suppl. Appendix (Dkt. No. 208).)

[8]  *See also Pittleman v. Impac Mortg. Holdings, Inc.*, No. SACV 07-0970 AG
(MLGx), 2009 WL 648983, at *3 (C.D. Cal. Mar. 9, 2009) ("Because Plaintiff fails
to plead scienter on the part of [any individual defendant], Plaintiff cannot

13

the Ninth Circuit has not recognized any "collective scienter" theory based on allegations that knowledge of falsity must exist somewhere in the organization. *See Glazer*, 549 F.3d at 744 ("there is no case law supporting an independent 'collective scienter' theory") (quotation omitted); *see also id.* at 745 ("that [plaintiff] could have shown that a *different* executive knew . . . would do nothing to resuscitate [plaintiff's] claims." (emphasis added).

Accordingly, Plaintiffs have failed to plead scienter regarding Statements 20, 24 and 26, because the core operations inference cannot apply to Mr. Kwong and because the Complaint otherwise fails to allege any facts establishing Mr. Kwong's scienter.

## IV. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c), and dismiss Statements 20, 24 and 26 of the Complaint with prejudice.

DATED: December 9, 2011      SHEARMAN & STERLING LLP

By:      /s/ Stuart J. Baskin
        Stuart J. Baskin

---

successfully plead scienter on the part of [the corporate defendant]. '[A] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter.' Neither [individual defendant] has the requisite level of scienter. Thus, [the corporate defendant] does not have the requisite level of scienter") (quoting *Glazer*) (citations omitted); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008) ("A corporation cannot act without human agents, and therefore 'a defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter . . . .'") (citations omitted); *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008) ("Plaintiffs have failed to plead facts that support a strong inference of scienter against Alex Lidow and McGee, the only defendants that allegedly made misleading statements in violation of Section 10(b) or Rule 10b-5. Accordingly, Plaintiffs fail to plead scienter with respect to International Rectifier") (citations omitted).

GIBSON, DUNN & CRUTCHER LLP


By:_____/s/ Kay E. Kochenderfer_____
Kay E. Kochenderfer

Attorneys for Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Katsuaki Watanabe, Fujio Cho, Yoshimi Inaba, James E. Lentz III, Irving A. Miller, Robert S. Carter, and  Robert C. Daly