BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
BENJAMIN GALDSTON (Bar No. 211114)
(beng@blbglaw.com)
DAVID R. KAPLAN (Bar No. 230144)
(davidk@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323
         -and-
GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Counsel for Lead Plaintiff Maryland
State Retirement and Pension System
and Lead Counsel for the Class*

*(Additional Counsel listed on signature page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TOYOTA MOTOR CORPORATION SECURITIES LITIGATION | Master File No. CV 10-922 DSF (AJWx) **DISCOVERY MATTER** LEAD PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM DEFENDANTS Special Master: Hon. Layn R. Phillips |

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.   INTRODUCTION .............................................................................................1

II.  DEFENDANTS' "THRESHOLD" OBJECTIONS SHOULD BE DENIED ......................................................................................................3

    A.   Refusal To Search For Pre-2008 Documents..........................................3

    B.   "Sticky Pedal" Subject Matter Restriction...............................................5

    C.   Seven-Custodian Limit.............................................................................6

III. CONCLUSION................................................................................................11

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                              Page

*Aluisi v. Elliott Mfg. Co., Inc. Plan*,
   2009 WL 565544 (E.D. Cal. Mar. 5, 2009) ......................................................... 10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................... 9

*City of Colton v. Am. Promotional Events, Inc.*,
   2011 WL 2222133 (C.D. Cal. June 7, 2011) ........................................................ 4

*In re CV Therapeutics, Inc. Sec. Litig.*,
   2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ........................................................ 7

*In re Entropin, Inc. Sec. Litig.*,
   487 F. Supp. 2d 1141 (C.D. Cal. 2007) ................................................................. 7

*F.D.I.C. v. Garner*,
   126 F.3d 1138 (9th Cir. 1997) ............................................................................... 4

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1993 (2009) .................. 9

*Glazer Capital Mgmt. L.P. v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ................................................................................. 7

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ............................................................................................... 3

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008) ................................................................. 7

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   513 F.3d 702 (7th Cir. 2008) ................................................................................. 7

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S. Ct. 1309 (2011) ........................................................................................... 9

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ............................................................................................... 1

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ................................................................................. 9

*Qualcomm Inc. v. Broadcom Corp.*,
  2008 WL 66932 (S.D. Cal. Jan. 7, 2008), *vacated in parts on other grounds*, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008) ............................................. 6

*S. Cal. Hous. Rights Ctr. v. Krug*,
  2006 WL 4122148 (C.D. Cal. Sept. 5, 2006) ....................................................... 4

*In re Seagate Tech. II Sec. Litig.*,
  1993 WL 293008 (N.D. Cal. June 10, 1993) ........................................................ 3

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) ............................................................................... 1

*In re Toyota Motor Corp. Sec. Litig.*,
  2011 WL 2675395 (N.D. Cal. July 7, 2011) ..................................................... 7, 8

*Upton v. McKerrow*,
  1996 WL 193807 (N.D. Ga. Feb. 20, 1996) ......................................................... 6

*In re Verifone Holdings Inc. Sec. Litig.*,
  2011 WL 1045120 (N.D. Cal. Mar. 22, 2011) ...................................................... 7

*Vining on Behalf of Vining v. Enter. Fin. Grp., Inc.*,
  148 F.3d 1206 (10th Cir. 1998) .......................................................................... 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ................................................................ 10

*Zelman v. JDS Uniphase Corp.*,
  376 F. Supp. 2d 956 (N.D. Cal. 2005) ................................................................. 3

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
  Rule 26 .................................................................................................................. 1

Federal Rules of Evidence
  Rule 406 .............................................................................................................. 10

## I. INTRODUCTION

As explained in Lead Plaintiff's opening brief, Defendants' refusal to produce core relevant documents is contrary to Rule 26 and the overwhelming weight of authority, and Defendants' Opposition ("Opposition" or "Opp.") to Lead Plaintiff's Motion To Compel Production Of Documents ("Motion" or "Mot.") provides no support for their arguments. As further explained below, Defendants' invented discovery standard finds absolutely no support in the law, being premised solely on their own self-serving characterization of what this case is "really" about – a characterization flatly at odds with Lead Plaintiff's claims and the Court's July 7 Order.[1]

*First*, Defendants contend that "the scope of discovery should be limited to evidence relevant to the seven remaining statements at issue." *See* Opp. at 4, 11. Defendants are wrong. It is axiomatic that a party is entitled to discovery of any matter, not privileged, that is relevant to the claims or defenses of any party. F.R.C.P. 26(b)(1). Proper discovery likewise includes information that is "reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Further, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Defendants ignore these well-settled principles and cite absolutely no legal authorities supporting their invented standard.

*Second*, Defendants' deliberate and erroneous mischaracterization of Lead Plaintiff's claims and the Court's July 7 Order underlies their refusal to produce core relevant documents. Defendants would prefer that this case be limited to the Individual Defendants' knowledge of a single admitted "sticky pedal" defect. Defendants also pretend that just four Actionable Misstatements (instead of seven)

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

remain at issue, the Class Period entails a scant three months (rather than nearly two years), and this case concerns simply the scienter of the Individual Defendants (and not the Company Defendants) regarding only the "sticky pedal" defect (and not the dangerous UA condition).[2] But that is not what this case is "really" about, and the Federal Rules do not permit Defendants unilaterally to dictate the scope of discovery based on self-invented distortions. Moreover, Defendants' positions are contrary to a plain reading of both the Complaint and the July 7 Order.

The July 7 Order lifted the PSLRA discovery stay and Lead Plaintiff's document requests were served nearly six months ago. Remarkably, Defendants have produced fewer than 25,000 pages of documents in total since discovery commenced, despite having gathered, reviewed and produced millions of pages of indisputably relevant documents in the Toyota Multi-District Litigation ("MDL"), government investigations, and other UA litigation. In conjunction with their MPJOP, Defendants' refusal to produce these same documents here amounts to nothing more than a *de facto* discovery stay in this action that should be rejected.

In sum, Defendants fall far short of meeting their heavy burden to show that the subject discovery should not be allowed under the discovery standards of Rule 26, the Court's July 7 Order, and well-settled case law. Indeed, Defendants provide no evidence or legal support for their burden or relevance objections. Accordingly, Defendants' objections should be overruled and they should be ordered to commence production of all responsive documents immediately.

---

[2] Defendants point to their Motion For Partial Judgment On The Pleadings ("MPJOP"), which seeks to conform this action to their litigation contentions. *See* Evans Declaration In Support Of Defendants' Opp. ("Evans. Decl."), Exs. C-E. Defendants' renewed attack on the pleadings, however, simply rehashes intensely factual arguments made, and lost, in their Motion To Dismiss ("MTD"). Their "Redacted Complaint" (*see* Evans Decl., Ex B), which attempts to "redact" from Lead Plaintiff's Complaint over 28 pages of factual matter, ignores Judge Fischer's warning that the July 7 Order "doesn't necessarily circumscribe the case in the way that you [Defendants] suggest that it does because if there are seven allegations [actionable statements], that doesn't mean that no discovery will be allowed on anything other than those specific items." *See id.*, Ex. A, at 8:1-5. Lead Plaintiff opposes Defendants' MPJOP and has filed a counter-submission to their "Redacted Complaint." *See* Supplemental Declaration Of Benjamin Galdston In Support Of Lead Plaintiff's Motion To Compel, Ex. 1.

## II. DEFENDANTS' "THRESHOLD" OBJECTIONS SHOULD BE DENIED

### A. Refusal To Search For Pre-2008 Documents

Lead Plaintiff's opening brief explained that the class period in securities cases serves only to define the plaintiff class (Mot. at 6-9), but does not circumscribe the time period for discovery because relevant information pre- and post-dates the class period, often by several years. Defendants neglect to address Lead Plaintiff's cited cases or offer any legal authority of their own.[3] They also fail to explain why they exceed their own time restriction in their discovery to Plaintiffs, in most requests with no time limitation whatsoever.

Lead Plaintiff further established that a discovery period of January 1, 2004, through the date of production is not only "relevant" to its claims and Defendants' 51 Affirmative Defenses under Rule 26's broad standards, but is rationally tied to key UA events alleged in the Complaint, including events the Court specifically relied on in the July 7 Order. Mot. at 2-3, 7-9. Defendants' argument that the Court's reliance on pre-2008 facts was "limited to whether Plaintiffs had satisfied the underlying requirements of a pleading doctrine" is wholly unsupported. They cite no authority limiting "core operations" facts to the pleading stage, nor have they attempted to explain why "core operations" evidence would be inadmissible to prove scienter at trial.[4] Similarly, Defendants' argument that their 51

---

[3] Defendants' attempt to distinguish *In re Seagate Tech. II Sec. Litig.* (*see* Opp. at 9) on the basis that there the discovery period was only 16 months fails because, in comparison, the class period was less than *6 months*. *See* 1993 WL 293008 (N.D. Cal. June 10, 1993), at *2 n.1. Defendants' assertion that *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 970 (N.D. Cal. 2005), is inapposite because Defendants purportedly "do not seek to limit discovery based upon the putative class period," also fails as there is no other explanation for Defendants' arbitrary time period for discovery. In contrast, Lead Plaintiff alleges that 2004 was a threshold year for UA at Toyota. *See* ¶¶74-80 (describing increasing regulatory pressure as a result of "strong recent trend of UA incidents" involving Toyota vehicles, including over 100 "unique consumer complaints" that Toyota admitted to regulators "may relate to the alleged defect"); all references to "¶" are to paragraphs of the Complaint.

[4] As the Supreme Court has recognized, "[p]roof of scienter required in fraud cases is often a matter of inference from circumstantial evidence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91 (1983).

Affirmative Defenses relate to the claims "as limited by" the July 7 Order is nonsensical because the Order explicitly relies on pre-2008 documents and events.

Next, Defendants refuse to produce documents dated prior to 2008 because they *speculate* that probative evidence of scienter is unlikely to be found more than two years before the **last** Actionable Misstatement at the end of 2009.  Opp. at 9. This argument fails on multiple levels: (1) the Actionable Misstatements begin in April 2008; (2) the Complaint alleges numerous pre-2008 facts that the Court specifically cited for a strong inference of scienter; (3) pre-2008 discovery is relevant to a host of issues in addition to scienter (*e.g.*, falsity, materiality, loss causation, and Defendants' 51 Affirmative Defenses); and (4) the relevance of pre-2008 information is a question to be determined in the first instance *by* discovery, not by Defendants' unsupported speculation.  Defendants' related argument (Opp. at 11) that "background" facts in the Complaint and the Court's Order "should not determine the discovery period" would turn the law of discovery on its head.  The well-pleaded factual allegations of the Complaint, including pre-2008 facts emphasized by the Court, provide essential context for the claims and *establish* such facts are appropriate topics for discovery.

Finally, Defendants' burden objection to pre-2008 documents necessarily fails because Defendants provide no support.[5]  This omission is not surprising because, as Defendants acknowledge, they have already collected and produced the bulk of the subject discovery in other proceedings, including millions of pages in the MDL and other proceedings (compared to fewer than 25,000 pages in this action).  Moreover, 2004 is a reasonable starting date because the Court's July 7

---

[5] *See F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) ("[W]e cannot hold that the subpoenas are overbroad or unduly burdensome absent a showing by Appellants of additional support for this position"); *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 2222133, at *5 (C.D. Cal. June 7, 2011) ("Objections that discovery is overly burdensome generally fail unless the objecting party supports the burdensomeness contention with adequate declarations or affidavits."); *S. Cal. Hous. Rights Ctr. v. Krug*, 2006 WL 4122148, at *3 (C.D. Cal. Sept. 5, 2006) (denying burden objections because they were "conclusory and provide[d] no information to support a finding that production of the requested items would unduly burden defendants").

Order and the Complaint support a discovery period beginning in 2000 – *i.e.*, 50% more than Lead Plaintiff's period and six times longer than Defendants' period.

### B. "Sticky Pedal" Subject Matter Restriction

Defendants' attempt to restrict discovery to the Individual Defendants' knowledge of the "sticky pedal" defect is based solely on their attempt to recast this case in a manner that is pleasing to them, and finds no support in the Court's July 7 Order or a plain reading of the Complaint. As alleged in the Complaint, this securities fraud class action concerns Defendants' materially false and misleading statements and omissions about a dangerous UA *condition* that affected nearly Toyota's entire model line and wiped out substantial shareholder value when the truth about Toyota's UA problems became known, including multiple recalls to correct several UA defects (not just the "sticky pedal" defect). Mot. at 1-3, 10-11. The Court's July 7 Order confirms this, flatly contradicting Defendants' overly narrow mischaracterization of the claims. Among other things, the Court repeatedly referred to the UA "problem/s" or "defect/s," often using those terms in the plural, and recognized that Toyota's cover-up encompassed not only "some of the false statements alleged in the complaint," but "several of the previous NHTSA investigations" dating back to at least 2002, as well. Mot. at 11-12. Moreover, Defendants raised these same fact-intensive arguments in their motion to dismiss, which the Court rejected. *Id.* at 13-14.

Finally, Defendants' argument that discovery they characterize as relating to dismissed statements should not be permitted is misplaced, because such discovery also relates to the sustained statements. For example, discovery relating to Toyota's legal and regulatory compliance is also directly related to Defendants' scienter and motive for the sustained statements because, as Congress and NHTSA concluded, Toyota engaged in "a systematic disregard for the law" by "failing to report known safety problems" to U.S. officials and "hid[ing] a dangerous defect" from the public. Such discovery also remains relevant to other elements of Lead

Plaintiff's claims (e.g., materiality, loss causation), as well as Defendants' 51 Affirmative Defenses.[6]

### C. Seven-Custodian Limit

As established in the opening brief (Mot. at 15-17), Defendants' refusal to search the files of employees other than the Individual Defendants is flatly contradicted by the Court's July 7 Order, and reflects their misunderstanding of the claims. Documents maintained by such personnel are relevant to (i) the scienter of the Corporate Defendants; (ii) the scienter of the Individual Defendants; and (iii) a host of core issues in this case besides scienter (*e.g.*, motive, falsity, materiality, and the 51 Affirmative Defenses).[7] Moreover, a reasonable search requires Defendants to search the files of all employees, agents, subsidiaries, and others within their control likely to have responsive relevant information, irrespective of the size of the company.[8]

Defendants largely concede these points, offering only speculation that such discovery might not be fruitful, and baseless arguments and inapposite cases recycled from their motion to dismiss regarding "collective scienter." *See* Opp. at 14-15. However, the Complaint does not allege collective scienter, Lead Plaintiff did not rely on the collective scienter doctrine in opposing Defendants' MTD, and

---

[6] Mot. at 13 (citing *Upton v. McKerrow*, 1996 WL 193807, at *2-4 (N.D. Ga. Feb. 20, 1996) (compelling document requests relevant to assertions the court previously held were non-actionable because "all the documents sought could contain, or could lead to the discovery of, information directly relating to issues remaining in the case")).

[7] The Toyota Way, which required Defendants to be informed about "all important issues," including operations, makes it *especially* likely that documents maintained by Toyota personnel other than the Individual Defendants will contain probative evidence of scienter, including documents maintained by the Japanese "coordinators" who shadowed certain Individual Defendants or employees in their offices, the officials in Japan to whom the coordinators reported, and those with whom the Individual Defendants worked on a day-to-day basis. ¶40.

[8] Mot. at 16-17. *See also Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932 (S.D. Cal. Jan. 7, 2008), vacated in part on other grounds, 2008 WL 638108 (S.D. Cal. Mar. 5, 2008) (describing a reasonable procedure used by many large companies and imposing sanctions where party failed to implement such a procedure and produce in good faith all relevant and requested discovery from its employees and consultants involved with core issue in the case).

the Court did not sustain claims based on collective scienter.[9] Moreover, none of Defendants' cases addresses the manner of establishing corporate scienter for false statements disseminated via a company spokesperson.[10]

Based on their "threshold" objections, Defendants also improperly withhold documents that are plainly relevant to the claims and defenses of this action:

***The Actionable Misstatements.*** There is no dispute that the Motion should be granted as to Request Nos. 2-7.

***UA Causes And Internal Investigations.*** Defendants' categorical refusal to produce documents relating to causes or potential causes of UA (Request No. 12) and quality control communications concerning UA (Request No. 48) on "relevance" objections should be summarily overruled. These Requests go directly to the falsity and materiality of Defendants' repeated, unequivocal denials of any vehicle-based UA cause. This includes issues prior to the Class Period that Toyota continued to conceal during the Class Period (such as over 60,000 reports of engine surging in the Camry in 2004 alone (*see* ¶78; Opp. at 17)), and recalls in the U.S. and abroad concerning UA causes that Toyota had known about for years but which did not occur until after the first Actionable Misstatement in 2008 (such as recalls of over 26,000 Siennas concerning defects Toyota had known about for over five years). *See* ¶103; Opp. at 16. Defendants hypothesize – but provide no support – that such "operations-level documents" "never reached the attention" of the Individual Defendants. Defendants' unsupported speculation is beside the

---

[9] *In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395, at *3-5 (C.D. Cal. July 7, 2011); *see also In re Entropin, Inc. Sec. Litig.*, 487 F. Supp. 2d 1141, 1153 (C.D. Cal. 2007) (company's scienter established through individual defendants' scienter); *In re CV Therapeutics, Inc. Sec. Litig.*, 2004 WL 1753251, at *10 (N.D. Cal. Aug. 5, 2004) (same). Defendants conflate corporate scienter with "collective scienter," a doctrine which permits an inference of scienter for a corporation in certain limited circumstances where a plaintiff is unable to adequately allege scienter for any named defendant. *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008); *see also* Lead Plaintiff's Opposition To Defendants' MPJOP at 23-24.

[10] *See Glazer Capital Mgmt. L.P. v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008); *In re Verifone Holdings Inc. Sec. Litig.*, 2011 WL 1045120, at *9 (N.D. Cal. Mar. 22, 2011); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101-02 (C.D. Cal. 2008).

point. "Operations level documents" are relevant to show Toyota's scienter, particularly where such information was known or available to Toyota executives who controlled the Company, and relevant to the Individual Defendants' scienter because of the "Toyota Way."

For these same reasons, internal investigation documents (Request No. 18) are highly relevant to Lead Plaintiff's claims, and are probative of the nature, scope, and severity of the UA problems and Defendants' awareness and concealment of this "major issue." The attempt to place temporal/subject-matter/custodial limitations on this core discovery is improper for the reasons stated in Part II.A. above, and Defendants do not even attempt to address Lead Plaintiff's authorities.

***UA Remedies And Quality Control Communications***. The Complaint describes in detail Toyota's many "counter-measures" (*e.g.*, silent recalls, running changes, TSBs) to avoid costly and embarrassing recalls. Request Nos. 14 and 15 concerning these topics go straight to falsity, materiality, scienter, and loss causation, and are not "extremely overbroad" or "product liability-oriented discovery" as Defendants contend (Opp. at 17).

Their argument about "operations-level documents" (Opp. at 17-18) is beside the point. As discussed above, "operations-level" information is directly relevant to the veracity of Defendants' unequivocal denials of a UA problem or defects, the nature, scope and severity of the problems (materiality, loss causation), as well as scienter, particularly given Defendants' access to such information via the "Toyota Way." *See In re Toyota*, 2011 WL 2675395, at *4 (remedial measures show "management's awareness of the problems and the potential reasons for them"). Undoubtedly, investors would have considered the numerous countermeasures taken by Toyota to hide UA, including the Company's systematic

deception of regulators and consumers, to be material. Defendants' authorities are in accord.[11]

***Government Oversight And Defendants' "Countermeasures."*** Defendants' concealment of the UA condition and countermeasures to avoid UA recalls form a cornerstone of this case. Mot. at 4, 20-22. Their refusal to produce responsive documents on the purported ground that these allegations no longer "remain in the case" fundamentally misstates the legal effect of the July 7 Order, which dismissed *claims* arising from certain statements, not *allegations*. Mot. at 13-14. As Judge Fischer admonished Defendants at the last Status Conference, the Court's ruling sustaining seven actionable statements "doesn't mean that no discovery will be allowed on anything other than those specific items . . . ." Evans Decl., Ex. A, at 8:1-5. The refusal to produce UA documents provided to foreign governments because "the U.S. is the relevant forum" similarly remains improper because relevancy turns on the parties' claims and defenses, not the forum. Defendants' temporal/subject matter/custodial restrictions, including regarding government investigations into UA and related communications, are likewise baseless. *See* pp. 3-7 above.

Finally, Defendants' refusal to produce any document relating to government penalties on Toyota, its directors or senior management, including penalties concerning UA and failure to timely notify the public about safety defects – *other than the Company's April 2010 NHTSA Settlement Agreement*– is improper. The Complaint alleges that fraudulent concealment of UA was part of a systemic and pervasive policy and practice at Toyota of concealing known defects

---

[11] *See Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988) (adopting "fact-specific" materiality test and rejecting bright-line rule); *see also, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1319, 1321 (2011) (unanimously reaffirming *Basic*'s "total mix" standard for assessing materiality); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (resolving loss causation on summary judgment after "[e]valuating the totality of evidence"); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057-58 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1993 (2009) (loss causation is typically a fact question reserved for summary judgment or trial on a full evidentiary record).

and safety problems from regulators and the public, which resulted in the largest NHTSA fines ever. ¶¶63-65. Documents concerning Toyota's UA concealment are unquestionably relevant to and indeed highly probative of motive, scienter and materiality, among other things.[12]

***Toyota Securities Price Declines Related To UA.*** Defendants argue vagueness, but it is hard to understand how Request No. 9 could be clearer. Their attempt unilaterally to limit this Request to UA recalls or defects but not the quality or safety of Toyota vehicles is improper for the reasons stated in Part II.B. above. *See also* Mot. at 22-23. Similarly unsupported is Defendants' attempt to distinguish Toyota common stock from Toyota ADSs because the two securities are functional equivalents.[13]

***The "Toyota Way" And TMC's Responsibility For Defect/Recall Decisions.*** As Lead Plaintiff demonstrated (Mot. at 24), Defendants' production of *only* documents "*sufficient to describe*" the Toyota Way and "*sufficient to show*" TMC's responsibility or authority for making recall decisions is improper because such production excludes documents relevant to scienter, control, and Defendants' 51 Affirmative Defenses, among other issues. Their unsupported assertion that a complete response is "cumulative and unnecessary" does nothing to satisfy Defendants' discovery obligations or address Lead Plaintiff's contra authority. Mot. at 24.

***Custodial Files Of The Board And Senior Management.*** Documents maintained by Toyota's Board and senior management are plainly relevant to Lead Plaintiff's claims, including scienter for Toyota and the Individual Defendants (Mot. at 15-16), and Defendants do not even attempt to support their boilerplate objections.

---

[12] *See, e.g.*, *Vining on Behalf of Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1218-19 (10th Cir. 1998) (evidence of defendant's "pervasive, consistent pattern" of abusive business practice was "clearly relevant" to its motive and intent in the instant case and admissible under F.R.E. 406 (habit)); *Aluisi v. Elliott Mfg. Co., Inc. Plan*, 2009 WL 565544, at *7 (E.D. Cal. Mar. 5, 2009) (same).

[13] ¶¶197-99; *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 521 (S.D.N.Y. 2011).

## III. CONCLUSION

For the foregoing reasons and as explained in Lead Plaintiff's opening brief, Lead Plaintiff's motion should be granted in its entirety.

Dated: January 27, 2012

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP

*/s/ Benjamin Galdston*
BENJAMIN GALDSTON

BLAIR A. NICHOLAS
(blairn@blbglaw.com)
BENJAMIN GALDSTON
(beng@blbglaw.com)
DAVID KAPLAN
(davidk@blbglaw.com)
JOSEPH W. GOODMAN
(joseph.goodman@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:    (858) 793-0323
   -and-
GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:     (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System and Lead Counsel for the Class*

FAIRBANK & VINCENT
ROBERT H. FAIRBANK
(rfairbank@fairbankvincent.com)
DIRK L. VINCENT
(dvincent@fairbankvincent.com)
444 S. Flower Street, Suite 3860
Los Angeles, CA 90071
Tel:     (213) 891-9010
Fax:    (213) 891-9011

*Liaison Counsel for the Class*

MARYLAND OFFICE OF ATTORNEY GENERAL
DOUGLAS F. GANSLER
Attorney General of Maryland
JOHN J. KUCHNO
Assistant Attorney General
(jkuchno@oag.state.md.us)
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
Tel:    (410) 576-7291
Fax:    (410) 576-6955

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System*