BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
BENJAMIN GALDSTON (Bar No. 211114)
(beng@blbglaw.com)
DAVID R. KAPLAN (Bar No. 230144)
(davidk@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323
-and-
GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System and Lead Counsel for the Class*

FAIRBANK & VINCENT
ROBERT H. FAIRBANK (Bar No. 76359)
(rfairbank@fairbankvincent.com)
DIRK L. VINCENT (Bar No. 157961)
(dvincent@fairbankvincent.com)
444 S. Flower Street, Suite 3860
Los Angeles, CA 90071
Tel: (213) 891-9010
Fax: (213) 891-9011

*Liaison Counsel for the Class*

*(Additional Counsel listed on signature page)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| IN RE TOYOTA MOTOR CORPORATION SECURITIES LITIGATION | Master File No. CV 10-922 DSF (AJWx)<br><br>LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' "REDACTED COMPLAINT" SUBMISSION<br><br>Courtroom: 840<br>Judge: Dale S. Fischer |
|---|---|

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 4

A. Defendants Misstate The Legal Effect Of The Court's Ruling On Their Motion To Dismiss .......... 4

B. Defendants' Submission Is Procedurally Improper .......... 5

C. Defendants Redact Allegations That Are Relevant To The Sustained Claims .......... 7

III. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

Cases — Page

*In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955 (C.D. Cal. 2000) ....6

*Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181 (D.D.C. 1998) ....3

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) ....6

*Fed. Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*, 2004 WL 2513467 (N.D. Cal. Nov. 3, 2004) ....5

*S.E.C. v. PCS EdventuresA.Com, Inc.*, 2011 WL 337895 (D. Idaho Jan. 27, 2011) ....5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ....4

*In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395 (C.D. Cal. July 7, 2011) ....passim

*Upton v. McKerrow*, 1996 WL 193807 (N.D. Ga. Feb. 20, 1996) ....4

*Whatley-Bonner v. Pac. Telesis Grp. Comprehensive Disability Benefit Plan*, 2011 WL 6056997 (C.D. Cal. Dec. 2, 2011) ....6

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ....5, 6

*Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005) ....9

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 78u–4(b)(1) ....9

F.R.C.P. 12(f) ....2, 5, 6

**OTHER AUTHORITIES**

C. Wright & A. Miller, *Federal Practice & Procedure*, § 1382 (3d ed. 2011) ....6

Lead Plaintiff, Maryland State Retirement and Pension System ("Lead Plaintiff"), respectfully submits this response to "Defendants' Submission of Redacted Complaint" [ECF No. 245].

## I. INTRODUCTION

At the October 17, 2011 status conference ("Status Conference"), Defendants requested permission to submit to the Court a version of the Complaint that "scratch[es] out" allegations that Defendants contend are "out of the case" based on the Court's July 7, 2011 Order on Defendants' Motion To Dismiss [ECF No. 213] ("July 7 Order"). Oct. 17, 2011 Hearing Transcript of Status Conference ("Oct. 17, 2011 Tr.") at 7:11-12. Defendants made this request because, in their view, the Court's July 7 Order denying in part their motions to dismiss "dramatically narrowed the case" and affected the "scope" and "speed of discovery." Tr. at 7:1-4; 7:7-16.

In response, the Court authorized the parties to each submit a "document that the Court and the parties can look to that alleges now only the assertions [*i.e.*, false statements] that I said would remain in the case."[1] However, the Court cautioned Defendants that any submission would be "separate from the discovery issue," would not "address the discovery issue," and "doesn't necessarily circumscribe the case in the way you [Defendants] suggest that it does because if there are seven allegations [actionable statements], that doesn't mean that no discovery will be allowed on anything other than those specific items . . ." Tr. at 8:1-5; 8:9; 9:13-14.

Despite the Court's guidance, three months after the Status Conference and in connection with their opposition to Lead Plaintiff's discovery motion, Defendants filed their "Redacted Complaint" – an advocacy piece that goes far beyond what the Court contemplated or authorized at the Status Conference. Defendants' submission does ***not*** limit its redactions to only the misstatements and

[1] *Id*. at 7:24-8:1. The Court's instructions followed confirmation that it had dismissed claims on Statement 28. *Id*. at 3:22-4:1.

claims that the Court held were not actionable under the requisite pleading standards, but strikes ***over twenty-eight pages of factual allegations*** from Lead Plaintiff's Complaint. For example, Defendants redact almost the entire "Background" sections of the Complaint alleging facts pre-dating 2008 (¶¶50-101), which include facts the Court specifically relied upon in sustaining Lead Plaintiff's claims. The sheer volume of information "scratched out" by Defendants is massive – ***nearly fifty pages in total, or one-half of the Complaint***.

At bottom, Defendants' "Redacted Complaint" is nothing more than an impertinent and redundant compilation of the same arguments Defendants make in their Rule 12(c) motion pending before the Court and their opposition to Lead Plaintiff's motion to compel pending before Special Master Phillips. *See* F.R.C.P. 12(f) (authorizing the Court to strike from a pleading an insufficient defense or "impertinent" or "redundant" matters). Defendants' stated bases for their gutting Lead Plaintiff's Complaint reflect these same litigation contentions. In truth, Defendants simply prefer that little or no discovery be had in this case.[2]

Moreover, the basic premise underlying Defendants' redactions is fatally flawed. Defendants take the myopic view that each allegation can only support – or "serve as underlying factual predicate to" – claims on one type of misstatement. Thus, factual allegations that Defendants believe support misstatements about (1) the "quality and safety" of Toyota vehicles cannot, in Defendants' view, also support misstatements about (2) Toyota's "legal or regulatory compliance," or (3) "non-sticky pedal unintended acceleration." Nor, in Defendants' view, can factual allegations supporting misstatements about any of these three topics support misstatements (4) denying the existence of Unintended Acceleration

---

[2] Indeed, in "meet and confer" discussions prior to Defendants' submission of their "Redacted Complaint," Defendants indicated that they are unwilling to concede that ***any*** allegations of the Complaint are relevant for discovery purposes. *See* Dec. 22, 2011 email from K. Kochenderfer to B. Nicholas and B. Galdston, attached hereto as Exhibit B ("[T]he fact that Defendants have not redacted other provisions in the Complaint is not meant to act as an admission that these allegations are appropriate for discovery.").

("UA") in Toyota vehicles—*i.e.*, the sustained statements. Defendants' logic defies common sense and is contrary to binding Supreme Court precedent that the allegations of a complaint cannot be parsed out and scrutinized in isolation, but should be read together and holistically with the complaint's other well-pleaded allegations.

Finally, Defendants' argumentative "Redacted Complaint" is procedurally improper, and can serve no useful purpose or have any legal effect on the "scope" of the action. Lead Plaintiff is not aware of any Rule or any reported case – and Defendants cite none – where, following a motion to dismiss ruling, a defendant is permitted to re-write the complaint to conform it to defendant's litigation contentions and defenses. The plaintiff – not the defendant – is the "master of the complaint," and Lead Plaintiff is best able to identify the "factual predicates" for the sustained claims in this action.[3] Here, there is no dispute among the parties that the Court's July 7 Order dismissed Lead Plaintiff's Exchange Act claims arising from 26 alleged false statements, as well as claims arising under the Japanese securities laws and claims against Defendant Kinoshita, for purposes of trial in this action. As explained below, the factual allegations in the Complaint remain relevant to the sustained claims and Defendants' 51 affirmative defenses, as well as providing important context for the fraud. Accordingly, Defendants' submission of a "Redacted Complaint" is a waste of the Court's resources and the Court should strike or ignore it.

---

[3] *Cf. Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (defendant cannot act as "sole arbiter" of relevancy in discovery and "arrogate[] to itself the authority to decide questions of relevance which is unquestionably the decision of the judge.").

## II. ARGUMENT

### A. Defendants Misstate The Legal Effect Of The Court's Ruling On Their Motion To Dismiss

Defendants' submission misstates the legal effect of the Court's ruling on Defendants' Motion To Dismiss. *See In re Toyota Motor Corp. Sec. Litig.*, 2011 WL 2675395 (C.D. Cal. July 7, 2011) ("*In re Toyota*" or the "Order"). The Court's Order dismissed *claims* arising from certain statements the Court held were not actionable under the requisite pleading requirements, and claims asserted under Japanese law. However, the Order did not dismiss *allegations*, as Defendants now pretend. Indeed, the Court found that, even with respect to allegations that Defendants characterize as the "factual predicate" for dismissed statements, while "[m]any [] allegations can be [] discounted when viewed individually" those same statements, "when assessed 'holistically' . . . create a strong inference of scienter." *In re Toyota*, 2011 WL 2675395, at *4 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23, 326 (2007)); *see* June 6, 2011 Hearing Transcript for Motion to Dismiss ("MTD Tr.") at 37:13-18 ("First of all, let me comment that I agree with [plaintiffs'] counsel that the case has to be looked at, I think the word the Supreme Court used was *holistically*, and in its entirety, so we can't just parse out individual statements and throw them out and say *well, we're not left with anything*. I have to look at them as a whole.") (emphasis in original).

Defendants' submission removes from the Complaint paragraph after paragraph of highly relevant factual allegations, including detailed factual allegations that clearly relate to and provide context and support for the sustained claims. Indeed, the Court specifically relied on these same allegations in finding that the Complaint alleges a strong inference of Defendants' scienter for the seven misstatements that remain in the case; yet Defendants now ask the Court to "scratch" them out. *See supra* pp. 6-7; *see also Upton v. McKerrow*, 1996 WL 193807, at *2 (N.D. Ga. Feb. 20, 1996) (holding that prior ruling dismissing

assertions in securities fraud complaint "did not order these allegations stricken" and the assertions remained relevant, including for discovery purposes).

**B. Defendants' Submission Is Procedurally Improper**

Procedurally, Defendants' submission has no basis in the Federal Rules and can have no legal effect on the prosecution of this action. If Defendants genuinely believe that the Court's ruling on their motion to dismiss means that every allegation in the Complaint that could possibly be construed as a "factual predicate" for dismissed statements should no longer remain "in the case" for purposes of trial, the Federal Rules contain many procedures to resolve such contentions, including discovery motions, protective order motions, *in limine* motions, and summary judgment motions. As the Court recognized at the Status Conference, however, submission of a "redacted" complaint that purports to strike factual allegations to advance a party's litigation contentions is not appropriate.

Defendants will have the opportunity at summary judgment or trial to argue the relative weight of disputed allegations and evidence. At the pleading stage, however, Defendants are not authorized to unilaterally strike from the Complaint well-pleaded factual allegations involving disputed issues of fact. *See, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (district court erred when granting defendant's motion to strike allegations purportedly precluded as a matter of law because the motion "was really an attempt to have certain portions of [the] complaint dismissed or to obtain summary judgment"); *S.E.C. v. PCS EdventuresA.Com, Inc.*, 2011 WL 337895, at *5 (D. Idaho Jan. 27, 2011) ("Defendants ask the Court to strike a number of allegations in the complaint essentially because Defendants disagree with them. The Court cannot resolve disputed factual issues on a Rule 12(f) motion to strike. Those issues should be addressed in a motion for summary judgment."); *Fed. Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*, 2004 WL 2513467, at *1 (N.D. Cal. Nov. 3, 2004)

(background material or other matters of an evidentiary nature should not be stricken from the pleadings).

Moreover, when viewed for what it is – a veiled motion to strike – Defendants' "Redacted Complaint" submission falls far short of meeting the applicable standards. Rule 12(f) permits the court to strike from the pleadings any "redundant, immaterial, impertinent or scandalous matter."[4] Before granting a motion to strike, "the court must be satisfied that there are no questions of fact, that the [claim or] defense is insufficient as a matter of law, and that under no circumstances could [it] succeed." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (citation omitted). A court will not strike a matter from the pleadings unless it is abundantly clear that it can have no possible bearing on the controversy before the court. *See In re 2TheMart.com, Inc. Sec. Litig*., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) ("If there is *any doubt* as to whether the allegations might be an issue in the action, courts will deny the motion.") (emphasis in original). "As a rule, motions to strike are regarded with disfavor and are generally denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Whatley-Bonner v. Pac. Telesis Grp. Comprehensive Disability Benefit Plan*, 2011 WL 6056997, at *2 (C.D. Cal. Dec. 2, 2011). Indeed, in case after case, "federal judges have made it clear" that Rule 12(f) motions to strike are "purely cosmetic or 'time wasters.'" C. Wright & A. Miller, *Federal Practice & Procedure*, § 1382 (3d ed. 2011) (citation omitted). So too here.

[4] Fed. R. Civ. P. 12(f). For purposes of Rule 12(f), immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. *Whittlestone*, 618 F.3d at 974. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Id.* As discussed above, these standards are applied very strictly.

### C. Defendants Redact Allegations That Are Relevant To The Sustained Claims

At the Status Conference, Defendants represented to the Court that their proposed submission would help the Court determine an appropriate discovery cut-off date for pre-trial scheduling purposes. *See* Oct. 17, 2011 Tr. at 7:13-16 (". . . then your Honor or the magistrate or whoever is going to decide these scope issues can decide really what's still in the case and what's not" and "[i]f enough comes out, we [Defendants] may be able to proceed to June 2012" as the discovery cut-off date). Defendants' overreaching "Redacted Complaint," however, is not helpful. The document is replete with instances in which Defendants attempt to eliminate from the Complaint well-pleaded factual allegations that are relevant to the core issues in this case and well within the ambit of the Court's July 7 Order. All told, Defendants redact over forty-nine pages – or over half – of Lead Plaintiff's Complaint.

As an initial matter, Defendants strike out allegations that are *per se* relevant to the claims and defenses in this action. These include, without limitation, whole paragraphs of the Complaint that the Court specifically relied upon in finding a strong inference of Defendants' scienter:

- ***Paragraph 98***, which the Court cited in finding that "Toyota's unintended acceleration issues were drawing enough media scrutiny that it is unlikely that management would not have been informed of the issues involved."; and

- ***Paragraph 101***, which the Court cited in finding that "contrary to Defendants' assertions, Plaintiffs have pleaded that Toyota was specifically aware that widespread unintended acceleration recalls would have been very costly for the company and celebrated avoidance of potential NHTSA mandated recalls."

*In re Toyota*, 2011 WL 2675395, at *4.

Defendants also strike from the Complaint whole paragraphs of allegations concerning the same topics the Court relied upon, but did not explicitly cite, in

sustaining the claims. *See, e.g.*, ¶¶71, 74, 76-78, 94, 96, 103 (NHTSA investigations between 2003 and 2010); ¶¶5, 7, 62, 67, 69, 71-72, 75, 79, 81-82, 85, 88, 90-92, 94, 99-100, 111 (Toyota's efforts to avoid NHTSA recalls and penalties); ¶¶63, 70, 73, 95 (steps taken to fix UA without recalls or disclosure).[5] There are numerous other examples of allegations that are *per se* relevant based on the Court's July 7 Order that Defendants strike from the Complaint. These allegations include: (1) the Individual Defendants' review and authorization of Toyota's securities filings (¶¶41-42, 49, 216), which are *per se* relevant to show the Individual Defendants' control under Lead Plaintiff's sustained Section 20(a) claims; and (2) incidents and measures taken in response to "pre-2008 unintended acceleration," which are *per se* relevant to many of Defendants' 51 Affirmative Defenses.[6]

To be sure, cataloguing all of the relevant allegations that Defendants strike from the Complaint and explaining why such redactions are improper would unnecessarily burden the Court. Suffice it to say, nearly all of Defendants' redactions are relevant to the sustained claims. Defendants also strike from the Complaint whole paragraphs that Lead Plaintiff cited in the Complaint and in its Appendix which allege, with particularity, why the sustained statements were false when made.[7]

---

[5] All references to "¶" are to paragraphs of the Complaint.

[6] For example, Defendants' 11th Affirmative Defense alleges that "at all times mentioned in the Complaint and with respect to all matters therein contained, Defendants acted in good faith and exercised reasonable care and did not know . . . of any alleged misconduct, untruth, omission, or any other action alleged in the Complaint." Likewise, Defendants' 33rd Affirmative Defense alleges that "Defendants at no time were aware of facts indicating the probability that statements being made by Defendants to the investing public were materially incorrect or misleadingly incomplete." The Complaint amply alleges that, between 2000 and 2008, Defendants were, in fact, informed of serious UA problems in Toyota vehicles that rendered the seven sustained statements false and misleading when made. *E.g.*, ¶¶52-101.

[7] The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires plaintiffs to "specify each statement alleged to have been misleading" and provide "the reason or

Also improper is Defendants' redaction of all allegations that do not, in Defendants' view, relate to "non-sticky pedal unintended acceleration, including all allegations of pre-2008 unintended acceleration." ¶¶53, 59, 63-64, 66-80, 85-87, 89, 91, 95, 165(b), 168(a), & nn.10, 12-21. Significantly, these redactions would strike a mosaic of facts concerning the history of UA at Toyota in the years leading up to the actionable misstatements. Defendants strike these paragraphs wholesale even though the Court relied on the Complaint's well-pleaded allegations of UA at Toyota between 2003 and 2008 in finding a strong inference of scienter. This includes, for example, "no fewer than eight investigations into unintended acceleration between 2003 and 2010, which would almost certainly have brought the matter to upper management's attention." *In re Toyota*, 2011 WL 2675395, at *4. Indeed, the Court noted that the UA problems escalated over time, both in terms of the "thousands of reported unintended acceleration problems," and the "intense" government and media scrutiny that followed. *See id.* at *1, 4, 5.

Nor is there any support in the Court's July 7 Order for Defendants' contention that Plaintiffs' claims are somehow limited to the "sticky pedal" defect. Quite the contrary. The very first sentence of the July 7 Order states that the case arises out of statements made against "a background of allegations of defects in Toyota vehicles." *See In re Toyota*, 2011 WL 2675395, at *1. "Sticky" or "sticking" pedals are not mentioned once in the Court's July 7 Order. Instead, the July 7 Order repeatedly describes Defendants' "cover-up" of the UA "problem/s"

---

reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). Here, many of the reasons why the sustained statements are alleged to be misleading involve pre-2008 events. *See* ¶¶165(b),(e), 168(a), 177; Appendix pp. 122, 124, 128, 131-36. These pre-2008 facts shed light on the nature, scope and severity of the UA problem, and Defendants' awareness and understanding of it. As one court has explained, it is only "common sense" that the circumstances preceding the actionable statements bear on Defendants' scienter, because they are among those knowable at the time of the statements. *See Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 971-72 (N.D. Cal. 2005).

or "defect/s" – often using the terms "problems" and "defects" in the plural. *Id.* at *4. Moreover, as the Court explained, the scienter inquiry is "inherently comparative." *Id.* at *5. This is especially true because "Toyota did not claim to be uncertain" about the causes of UA, but "affirmatively pointed the finger at floor mat placement and driver error." *Id.*

Yet another example of relevant allegations that Defendants improperly strike from the Complaint are factual allegations that, in Defendants' view, support statements regarding "legal and regulatory compliance issues." ¶¶1, 5-7, 19, 56, 60-62, 81-82, 85, 88, 90-96, 98-101, 103, 107, 111, 121, & nn.11, 26-29, 33. The allegations are clearly relevant to the claims. Lead Plaintiff alleges that Defendants' concealment of the UA condition from regulators and their "countermeasures" to avoid UA recalls are a cornerstone of the underlying fraud. *E.g.*, ¶¶5, 7, 62, 67, 69, 71-73, 75, 79, 81-82, 85, 88, 90-92, 94, 99-100, 111. The Complaint describes in great detail how Defendants withheld information about Toyota's UA problems and misled regulators to avoid issuing recalls that would damage the Company's reputation and sales. Incredibly, Defendants' "Redacted Complaint" strikes allegations concerning internal emails touting Toyota's "wins" at lobbying NHTSA to avoid costly recalls, thereby saving Toyota more than $100 million (¶¶7, 101) – the very same allegations regarding Toyota's legal and regulatory compliance issues and efforts to avoid NHTSA recalls that the Court singled out as supporting a strong inference of scienter. *See supra* p. 6.

Likewise, Defendants' redaction of factual allegations that, in their view, relate only to dismissed statements about "general quality and safety issues" is flatly at odds with the Court's July 7 Order and Lead Plaintiff's claims. As the Court found, the Complaint puts Toyota's "carefully cultivated reputation for quality and safety" and "market credibility" squarely in play. *See In re Toyota*, 2011 WL 2675395, at *4. Moreover, allegations relating to Toyota's deteriorating quality and safety explain how the "extreme" operational problem came to exist in

the first place. *See id.* The Complaint alleges, including through an internal Toyota memo sent directly to Defendant Watanabe, that the UA problems concealed from investors were the result of Toyota's changed corporate strategy, beginning in 2000, to become the world's largest automobile manufacturer through aggressive cost-cutting. In testimony before Congress, Toyota's President and CEO Akio Toyoda confirmed that the UA recalls were caused by the Company's "rapid" expansion. ¶¶53, 137. As Mr. Toyoda later told *Fortune* magazine, "It was as if we were engaged in car manufacturing in a virtual world and became insensitive to vehicle failings and defects in the market." ¶¶21, 140.

Tellingly, Defendants strike some factual allegations related to "general quality and safety issues" but do not strike other allegations on that topic, such as those referenced above quoting Mr. Toyoda. Indeed, many of Defendants' subject matter redactions are similarly inconsistent. The reason is basic: factual allegations may "serve as underlying factual predicate for" more than one misstatement.

## III. CONCLUSION

Lead Plaintiff maintains the factual allegations in the Complaint remain relevant in this case, including for purposes of appeal. Defendants' overreaching "Redacted Complaint" serves no useful purpose in this case and is only a waste of the Court's and the parties' resources. Accordingly, the Court should strike or ignore it.

Consistent with the Court's instructions at the Status Conference, Lead Plaintiff submits the attached "Conformed Complaint," which conforms the Complaint to the Court's July 7 Order and the Court's instructions at the October status conference by highlighting "only the assertions . . . that remain in the case" (*i.e.*, the seven misstatements that remain actionable for purposes of trial). Lead Plaintiff acknowledges that the Court's July 7 Order dismissed without prejudice the Exchange Act claims arising from 26 statements and all claims against

Defendant Kinoshita, and dismissed with prejudice the Japanese law claims and the Exchange Act claims for "domestic purchasers" of Toyota common stock. The submission of the Conformed Complaint is without prejudice to any of rights of Lead Plaintiff or the Class, including appellate or other rights.

Dated: January 27, 2012

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

*/s/ Blair A. Nicholas*

BLAIR A. NICHOLAS
(blairn@blbglaw.com)
BENJAMIN GALDSTON
(beng@blbglaw.com)
DAVID KAPLAN
(davidk@blbglaw.com)
JOSEPH W. GOODMAN
(joseph.goodman@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

-and-

GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System and Lead Counsel for the Class*

FAIRBANK & VINCENT
ROBERT H. FAIRBANK
(rfairbank@fairbankvincent.com)
DIRK L. VINCENT
(dvincent@fairbankvincent.com)
444 S. Flower Street, Suite 3860
Los Angeles, CA 90071
Tel: (213) 891-9010
Fax: (213) 891-9011

*Liaison Counsel for the Class*

MARYLAND OFFICE OF ATTORNEY GENERAL
DOUGLAS F. GANSLER
Attorney General of Maryland
JOHN J. KUCHNO
Assistant Attorney General
(jkuchno@oag.state.md.us)
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
Tel: (410) 576-7291
Fax: (410) 576-6955

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System*