Stuart J. Baskin (admitted *pro hac vice*)
Email: sbaskin@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Patrick D. Robbins (State Bar No. 152288)
Email: probbins@shearman.com
Emily V. Griffen (State Bar No. 209162)
Email: egriffen@shearman.com
SHEARMAN & STERLING LLP
525 Market Street, Suite 1500
San Francisco, CA 94105-2723
Telephone: (415) 616-1100
Facsimile: (415) 616-1199

Kay E. Kochenderfer (State Bar No. 125847)
Email: kkochenderfer@gibsondunn.com
Gareth Evans (State Bar No. 138992)
Email: gevans@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Katsuaki Watanabe, Fujio Cho, Yoshimi Inaba, James E. Lentz III, Irving A. Miller, Robert S. Carter, and Robert C. Daly

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| IN RE TOYOTA MOTOR CORPORATION SECURITIES LITIGATION | CASE NO. CV-10-0922 DSF (AJWx) **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** <br><br> Hearing: February 27, 2012 <br> Time: 1:30 p.m. <br> Place: Courtroom 840 <br> Judge: Hon. Dale S. Fischer |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 1

    A.    The Complaint Fails to Allege Facts Establishing Loss Causation As To Statements 20, 24 and 26. ............................................. 1

    B.    The Complaint Fails to Allege Scienter As To Statements 20, 24 and 26. ........................................................................................................ 7

    C.    This Motion Does Not Seek Reconsideration of Any Issue Previously Decided by the Court. ......................................................... 10

III. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*617 Pension & Welfare Funds v. Apollo Group, Inc.*,
  633 F. Supp. 2d 763 (D. Ariz. 2009) .................................................................. 7

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ............................................................................. 6

*City of Los Angeles v. Santa Monica Baykeeper*,
  254 F.3d 882 (9th Cir. 2001) ........................................................................... 12

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ............................................................................. 9

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) .......................... 1, 3, 7

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ................................................................ 1, 7, 8, 9

*In re Ann Taylor Stores Sec. Litig.*,
  807 F. Supp. 990 (S.D.N.Y. 1992) .................................................................. 10

*In re Apollo Group, Inc. Sec. Litig.*,
  No. CV–10–1735–PHX–JAT, 2011 WL 5101787 (D. Ariz. Oct. 27, 2011) ................................................................................................................ 3, 5

*In re Bank of America Corp. Auction Rate Securities (ARS) Marketing Litig.*,
  No. 09–MD–02014 JSW, 2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ............. 3

*In re Gilead Sciences Securities Litigation*,
  536 F.3d 1049 (9th Cir. 2008) ......................................................................... 10

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................. 8

*In re Nuveen Funds/City of Alameda Sec. Litig.*,
  No. C 08–4575 SI, 2011 WL 1842819 (N.D. Cal. May 16, 2011) ..................... 3

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ..................................................................... 3, 4, 7

*In re STEC Inc. Sec. Litig.*,
  No. SACV 09–1304 JVS (MLGx), 2011 WL 4442822
  (C.D. Cal. Jan. 10, 2011) ................................................................................... 4

*In re Valence Technology Securities Litigation*,
  Case No. C 94-1542-SC, 1995 WL 274343 (N.D. Cal. May 8, 1995) ............. 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................. 10

*Janus Capital Group, Inc. v. First Derivative Traders*,
　131 S. Ct. 2296, 175 L. Ed. 2d 879 (2011) .......................................................... 8
*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
　540 F.3d 1049 (9th Cir. 2008) ............................................................. 1, 2, 3, 4, 7
*Milgard Tempering, Inc. v. Selas Corp. of Am.*,
　902 F.2d 703 (9th Cir. 1990) ............................................................................ 11
*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ........................................ 12
*Northern Telecom Ltd. Securities Litigation*,
　42 F. Supp. 2d 234 (S.D.N.Y. 1998) ................................................................ 10
*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems*,
　411 F. Supp. 2d 1172 (N.D. Cal. 2005) .............................................................. 4
*Quern v. Jordan*,
　440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) .................................... 11
*Sprint Telephony PCS, L.P. v. County of San Diego*,
　311 F. Supp. 2d 898 (S.D. Cal. 2004) .............................................................. 11
*United States v. Cote*,
　51 F.3d 178 (9th Cir. 1995) .............................................................................. 11
*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
　655 F.3d 1039 (9th Cir. 2011) ........................................................................ 3, 6

## Statutes

15 U.S.C. § 78u-4(b)(1) .............................................................................................. 9
15 U.S.C. §§ 78dd-1 ................................................................................................... 9

## Rules

Fed. R. Civ. P. 11 ........................................................................................................ 4
Fed. R. Civ. P. 12(b) ................................................................................................. 10
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 7, 11
Fed. R. Civ. P. 12(c) ................................................................................... 7, 10, 11, 12
Fed. R. Civ. P. 12(g) ................................................................................................. 11
Fed. R. Civ. P. 12(g)(2) ........................................................................................ 10, 11
Fed. R. Civ. P. 12(h)(2) ........................................................................................ 10, 11
Fed. R. Civ. P. 9(b) ............................................................................................. 6, 7, 9

## I.

## INTRODUCTION

Plaintiffs' Opposition attempts to divert the Court from a focused examination of the legal sufficiency of the loss causation and scienter allegations regarding Statements 20, 24 and 26 concerning the Tacoma and Prius. Controlling Supreme Court and Ninth Circuit precedent, however, make clear that the Complaint fails to adequately plead loss causation or scienter regarding these statements. And, a motion for judgment on the pleadings is a proper motion to raise these issues.

With respect to the loss causation issue, the Supreme Court's *Dura* decision and the Ninth Circuit's *Metzler* decision provide that the Court must dismiss a Section 10(b) claim when the complaint fails to allege that the price of the securities at issue "*fell significantly*" in conjunction with a corrective disclosure in which the truth became known. Here, Plaintiffs fail to plead facts demonstrating that the price of Toyota's ADSs fell significantly after a corrective disclosure because the only possible corrective disclosures for the Tacoma and Prius were about floor mat entrapment issues.

With respect to scienter, the Ninth Circuit's *Glazer* decision requires Plaintiffs to plead the scienter of the *individual* who actually made the allegedly false statements and expressly rejects the argument that Plaintiffs can rely upon the scienter of a different corporate executive. Here, Plaintiffs concede—as they must—that they have failed to plead any facts demonstrating the scienter of Bill Kwong, who made Statements 20, 24 and 26. Instead, they incorrectly argue that they are not required to plead the scienter of a company spokesperson. That is not the law in the Ninth Circuit. Plaintiffs' fundamental problem is that they are bound by the law of the Ninth Circuit where they elected to file this case—not the law elsewhere or what they wish it otherwise might be.

Plaintiffs are also incorrect on the procedural issue. The Court did *not* previously decide the specific arguments Defendants make in this Motion and, therefore, the "law of the case" doctrine is inapplicable (as are Local Rules 7-17 and 7-18).

/ / /

1

## II.

## ARGUMENT

### A. The Complaint Fails to Allege Facts Establishing Loss Causation As To Statements 20, 24 and 26.

Plaintiffs fail to plead facts establishing loss causation regarding Statements 20, 24 and 26. These are quotations attributed to Toyota employee Bill Kwong published in news articles concerning two discrete vehicles, the Tacoma pickup truck and the Prius hybrid. Plaintiffs claim that the statements were misleading because they failed to disclose issues related to "unintended acceleration." The only such problem in the Tacoma or Prius ever announced, however, was the potential for floor mats to trap the accelerator pedal ("floor mat entrapment"). This is the only corrective disclosure that could possibly have caused Plaintiffs' alleged loss stemming from Statements 20, 24 and 26. The Court should dismiss Plaintiffs' claims based on these statements because the Plaintiffs neither plead nor argue that any floor mat-related announcement caused a significant drop in the price of Toyota's ADSs.[1]

Plaintiffs offer no response to the fact that Toyota's ADSs dropped only 0.8% from September 14 to 16, 2009, when Toyota issued statements about a problem related to floor mats (and then more than recovered within a couple days thereafter). (*See* Opening Mem. at 8-9; Griffen Decl., Ex. E (historical TMC ADS prices); RJN at 4.) This insignificant price decline is fatal to a claim of loss causation arising from alleged floor mat entrapment in the Tacoma and Prius. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (holding plaintiffs failed to adequately plead loss causation where defendant company's "stock recovered very shortly after the modest 10% drop that accompanied" a corrective disclosure).

---

[1] Plaintiffs confuse Defendants' argument regarding the "sticky pedal" recall. Defendants' position in this Motion is that the only issue as to which Plaintiffs have adequately *pleaded loss causation* is in connection with the "sticky pedal" issue. Statements 20, 24 and 26 are about two specific vehicle models (the Tacoma pickup truck and the Prius hybrid), which Plaintiffs do not allege had the "sticky pedal" defect or were subject to the "sticky pedal" recall.

2

Instead, Plaintiffs propose overlooking the requirement of a significant price decline in pleading loss causation, arguing without citation that this is "not the law." (Opp. at 12.) Plaintiffs are mistaken, as the governing Supreme Court and Ninth Circuit cases upon which Defendants rely unequivocally state. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (requiring that plaintiffs allege facts showing that the price of the securities at issue "*fell significantly after the truth became known*") (emphasis added); *Metzler*, 540 F.3d at 1064 (same). *See also WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011) ("A plaintiff can plead loss causation by alleging that the share price fell significantly after the truth became known . . . .").

Plaintiffs fail to plead that the market learned of a defect in the Tacoma and Prius related to "unintended acceleration" and reacted to that problem or defect, causing Toyota's ADSs to drop significantly. Citing almost entirely out-of-Circuit cases, Plaintiffs contend that they need not allege a corrective disclosure that is a "mirror image" of the alleged false statement. That is not Defendants' position. (Opp. at 12-13 & n.11.) Rather, Defendants seek to hold Plaintiffs to the Ninth Circuit's requirement that "the *market learned of and reacted to the practices the plaintiff contends are fraudulent. . . .* [T]o establish loss causation, the market must learn of and react to *those particular practices themselves*." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (emphasis added).[2]

---

[2] *See also Metzler*, 540 F.3d at 1063 ("The [complaint] does not allege that the June 24 and August 2 announcements disclosed— or even suggested— to the market that Corinthian was manipulating student enrollment figures . . . , which is the fraudulent activity that Metzler contends forced down the stock that caused its losses."); *In re Apollo Group, Inc. Sec. Litig.*, No. CV–10–1735–PHX–JAT, 2011 WL 5101787, at *16-17 (D. Ariz. Oct. 27, 2011) ("Plaintiffs . . . do not assert the necessary causal link between Defendants' fraudulent practices and those practices becoming generally known to the market."); *In re Nuveen Funds/City of Alameda Sec. Litig.*, No. C 08–4575 SI, 2011 WL 1842819, at *10 (N.D. Cal. May 16, 2011) ("Here, as in *Metzler* and *Oracle*, plaintiffs have failed to show that the price that Comcast paid for the System was the result of the market learning about and reacting to defendants' alleged fraud."); *In re Bank of America Corp. Auction Rate Securities (ARS) Marketing Litig.*, No. 09–MD–02014 JSW, 2011 WL 740902, at *15 (N.D. Cal. Feb. 24, 2011) ("Lead Plaintiffs do not allege when the *rate cap waivers* were revealed to the market . . . .

Plaintiffs contend that Statements 20, 24 and 26 fraudulently "concealed vehicle-based problems in the Tacoma and Prius models" related to unintended acceleration. (Opp. at 15.) If that were so, Plaintiffs must plead that the market learned of a defect in the Tacoma and Prius related to unintended acceleration *and* reacted to that problem, causing Toyota's ADSs to drop significantly. Plaintiffs have failed to allege any such connection between the alleged falsity of these statements and a price decline.[3]

Plaintiffs seek to divert the Court from a clear analysis of the issues by lumping together disclosures of different putative defects and different recalls—*i.e.*, floor mat entrapment on the one hand, and the "sticky pedal" issue on the other (*compare* Compl. ¶¶ 9 & 14)—and labeling them generically as "*the unintended acceleration condition.*" In so doing, Plaintiffs seek to create a single purported issue supposedly subject to multiple "partially corrective disclosures," out of what really are separate issues. (Opp. at 4, 12-14.) Under Plaintiffs' reasoning, if there were ten different defects, only one of which proximately caused a significant stock loss (*i.e.*, involved loss causation), then Plaintiffs could claim that all ten are in play, so long as they can find a common label to

---

Indeed, the focus of Lead Plaintiffs' loss causation allegations is that the disclosure of BAS's *bidding practices* . . . caused their losses. As such, Lead Plaintiffs fail to allege facts to show loss causation in connection with the *rate cap waivers*.") (citing *Metzler*) (emphasis added); *In re STEC Inc. Sec. Litig.*, No. SACV 09–1304 JVS (MLGx), 2011 WL 4442822, at *6 (C.D. Cal. Jan. 10, 2011) ("Plaintiffs have not alleged 'that the market became aware of, and the resulting stock drop resulted from,' disclosure of the fact that this statement was incorrect. *Metzler*, 540 F. 3d at 1064. Accordingly, Plaintiffs have not alleged loss causation with respect to this statement."). Plaintiffs rely heavily on *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems*, 411 F. Supp. 2d 1172 (N.D. Cal. 2005), but that case pre-dates *Metzler* and *Oracle* and involved plainly significant stock drops of 36% and 17%. *Id.* at 1178.

[3] Plaintiffs do not seriously dispute (because they cannot in good faith) that the Tacoma and Prius had nothing to do with the "sticky pedal" recall. Instead, they claim that the Court should not "accept the veracity or completeness of the contents of the [recall announcement] press releases, which Lead Plaintiff disputes," despite the fact that Plaintiffs rely on these same press releases throughout their Complaint. (Opp. at 24.) More importantly, as Defendants noted in their Opening Brief (at 10), the *Complaint does not even plead* that the Tacoma and Prius were subject to the "sticky pedal" recall (because Plaintiffs cannot do so consistent with Rule 11; *see id.* at 10 n.5). Consequently, due to Plaintiffs' pleading failure, Defendants do not need to establish this fact as a matter of judicial notice (and in fact only submitted those documents to show that amendment would be futile).

4

describe them. Plaintiffs' approach would gut loss causation as an element of a Section 10(b) claim by allowing issues for which there is no loss causation to be bundled under a common label with an issue for which there is loss causation.

Plaintiffs' reliance on the idea that the alleged corrective disclosures were the "materialization of concealed risks" does not help them either.[4] The "risk" that Statements 20, 24 and 26 allegedly "concealed" was the risk that the Tacoma and Prius had undisclosed problems that were causing unintended acceleration. The only such alleged problem that ever "materialized" with respect to the Tacoma or Prius was the floor mat entrapment recall as announced in the fall of 2009.[5] Again, however, Plaintiffs do not allege (or argue) a significant drop in the price of Toyota securities in connection with any floor mat entrapment recall announcement. Instead, Plaintiffs argue that *other* announcements in early 2010, announcing a *different* recall (sticky pedal) affecting *different* vehicle models that were not the subject of the news articles in which Mr. Kwong was quoted, constituted a "materialization of the concealed risk."[6]

---

[4] *See In re Apollo Group, Inc. Sec. Litig.*, No. CV–10–1735–PHX–JAT, 2011 WL 5101787, at *17 (D. Ariz. Oct. 27, 2011) ("Although Plaintiffs are correct that there is no prohibition against alleging loss causation through a series of disclosures, Plaintiffs must still show how each individual disclosure revealed at least some fraudulent conduct to the market and caused the resulting loss.").

[5] Though there were multiple floor mat recall related announcements in the fall of 2009 (*see* Compl. ¶¶ 112-114, 119 & 120), Plaintiffs allege that only one series of such announcements caused their loss: the September 14-16, 2009 announcements (*see* Compl. ¶ 180), which are not alleged to have caused a significant price drop (0.8%, as discussed above). Plaintiffs do not allege that any other fall 2009 floor mat recall announcements (all of which specifically list the Tacoma and Prius as subject to that recall) caused them any loss, as those other announcements are not even mentioned in the "Loss Causation" portion of the Complaint. (Compl. ¶¶ 178-187.) Plaintiffs do reference one additional floor mat recall announcement on January 27, 2010 in the "Loss Causation" section (Compl. ¶¶ 128, 184), but that announcement merely added additional vehicle models other than the Tacoma and Prius to the floor mat recall, and Plaintiffs do not allege that the January 27 announcement even mentioned the Tacoma or Prius (nor could they, as it did not). That announcement thus could not have caused any loss related to Statements 20, 24 and 26, even if it had led to a significant price drop (which it did not). (*See* Opening Mem. at 9.)

[6] Plaintiffs' citation of various internal Toyota documents relating to potential concerns related to unintended acceleration in the Tacoma (Opp. at 5, 15 & n.13) also does not help them. Plaintiffs do not allege that these documents (unlike the eventual floor mat recalls) were disclosed to the market and caused a decline in ADS price.

5

Although Statements 20, 24 and 26 addressed claims of unintended acceleration in the Tacoma and Prius, Plaintiffs argue that they should be extrapolated to encompass unintended acceleration in all Toyota vehicles. Plaintiffs contend that "[b]y choosing to speak on the subject of unintended acceleration in Toyota vehicles, Defendants were obligated to 'speak truthfully about all material issues' and 'to be both accurate and complete.'" (*See* Opp. at 16.)

There are two fundamental flaws with this argument. *First*, as the articles themselves make abundantly clear, *they focus solely on the Tacoma* (Statements 20 and 24) *and the Prius* (Statement 26). They do not purport to address, nor do they in fact address, any other vehicle models. Indeed, Statements 20 and 24 concern a particular NHTSA investigation into the Tacoma, and no other model. (*See* Griffen Decl., Exs. A & B.) Similarly, Statement 26, entitled "The Prius Can Take Owners On A Wild Ride," discusses solely the Prius. (*See id.* Ex. D.) *Second*, contrary to Plaintiffs' assertion, there is no "freestanding completeness requirement" in the Ninth Circuit. The Ninth Circuit's decision in *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), provides that "Rule 10b-5 [prohibits] only misleading and untrue statements, not statements that are incomplete. . . . Often, a statement will not mislead even if it is incomplete or does not include all relevant facts." Plaintiffs' repeated citation to primarily out-of-Circuit cases requiring "completeness" (Opp. at 16-17) is unavailing, *as the Ninth Circuit in Brody plainly and unequivocally rejected such an approach*.

Thus, the only "corrective disclosure" that could have caused Plaintiffs' alleged loss with respect to Statements 20, 24 and 26 is that related to the floor mat recall (because that is the only defect related to unintended acceleration ever announced for the Tacoma and Prius). Plaintiffs have not alleged any floor mat announcement that resulted in a significant drop in the price of Toyota's ADS.[7]

---

[7] Contrary to Plaintiffs' assertion (Opp. at 10-11), "[i]t is unclear in this Circuit whether Rule 9(b)'s heightened pleading standard or whether Rule 8(a)(2)'s 'short and plain' statement applies to allegations of loss causation." *WPP Luxembourg Gamma Three*, 655 F.3d at 1053. "Logically, loss causation is one of the circumstances constituting

Finally, Plaintiffs assert that Defendants have not cited a case granting a Rule 12(c) motion regarding loss causation. (Opp. at 4, 18-19.) In doing so, they ignore that Defendants have cited several cases (*Dura* and *Metzler* among them) dismissing claims for failure to plead loss causation on a Rule 12(b)(6) motion, which even Plaintiffs admit "is subject to the same legal standards" as Rule 12(c). (*See* Opp. at 7.)[8]

### B. The Complaint Fails to Allege Scienter As To Statements 20, 24 and 26.

Plaintiffs' scienter arguments are striking for what they do not argue. Plaintiffs abandon any effort to suggest that they have pleaded Mr. Kwong's scienter (instead incorrectly asserting that they need not do so, contrary to *Glazer*). (Opp. at 19-22.) Plaintiffs admit that "the Complaint does not allege collective scienter" and that they purportedly do not rely on that doctrine, which the Ninth Circuit has never embraced. (Opp. at 23.) Nor do Plaintiffs argue that the "core operations" inference—which the Court held in its ruling on Defendants' Motion to Dismiss applied to *certain of the Individual Defendants* in finding that the Complaint adequately pleaded scienter as to *their* statements—applies to Mr. Kwong, who is not a high-level executive.

Instead, Plaintiffs appear to argue that when a company spokesperson makes statements on behalf of a corporate entity, the entity's scienter either (i) need not be alleged at all, or (ii) is somehow satisfied by allegations regarding the scienter of *other* executives of the company. Again, this is simply not Ninth Circuit law. *See, e.g., Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("the PSLRA

---

fraud for which Rule 9(b) demands particularity because without loss causation, there is no securities fraud claim." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 813 (D. Ariz. 2009) (internal quotations omitted). In any event, the different pleading standards do not matter in this case under *Dura*, *Metzler* and *Oracle* for the reasons set forth above. *Metzler*, 540 F.3d at 1063-64.

[8] Plaintiffs argue that loss causation is supposedly "highly fact-intensive" and "properly the subject of expert testimony and analysis." (Opp. at 11-12, 24-25.) Not once, however, in their Opposition do Plaintiffs point to an alternative alleged significant price decline associated with a corrective disclosure regarding floor mat entrapment. Thus, by definition, this is not a "highly fact intensive" issue. Additionally, this Court is plainly capable of determining—without the assistance of an expert—that a price decline of less than one percent is not "significant."

7

requires [plaintiff] to plead scienter with respect to *those individuals who actually made the false statements . . .")* (emphasis added); *see also id.* ("that [plaintiff] could have shown that a *different executive* knew . . . would do nothing to resuscitate [plaintiff's] claims.") (emphasis added). *See also In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D. Cal. 2008) ("A corporation cannot act without human agents, and therefore 'a defendant corporation is deemed to have the requisite scienter for fraud *only if the individual corporate officer making the statement has the requisite level of scienter . . . .*") (citations omitted) (emphasis added).

      Plaintiffs' repeated citation to *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 175 L. Ed. 2d 879 (2011) for the proposition that "Toyota" was the "maker" of Statements 20, 24 and 26, and therefore that Plaintiffs need not plead Mr. Kwong's scienter, confuses elements of their claim. (Opp. at 6, 19-21.) *Janus* is not a case about corporate scienter. Rather, it is a case about whether statements made by one *entity* can be deemed to have been "made" by a different entity. Even if Statements 20, 24 and 26 could be said to have been made by "Toyota," that does not answer the separate and additional question whether "Toyota" did so with the requisite scienter. While *Janus* may answer the first question, it does not even reach the second—addressed at length by the Ninth Circuit in *Glazer*—*i.e.*, when and how a corporate entity may be found to have scienter with respect to that statement.

      According to Plaintiffs, "if the law supported Defendants' position, corporations and their executives would have a license to commit securities fraud with impunity by employing unknowing spokespeople to disseminate false or misleading corporate statements to the public." (Opp. at 20-21.) This straw man is wrong. If Plaintiffs could plead facts with particularity showing that someone with scienter purposefully fed Mr. Kwong lies to disseminate, then Mr. Kwong's personal scienter might well be irrelevant. No such allegations are made in the Complaint, however. There is no allegation that any executive at Toyota, such as the Individual Defendants, directed Kwong to "disseminate false or misleading corporate statements" to journalists.

8

More importantly, the Ninth Circuit again has rejected Plaintiffs' legal position. In *Glazer*, the Court refused to hold the defendant company liable for a statement in a merger agreement attached to an SEC filing which stated that the company was in compliance with all laws, when in fact the company was allegedly violating the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd-1, *et seq*. ("FCPA"). Noting that the CEO, Magistri, signed the merger agreement containing the allegedly false statement (and who thus made the statement), the Ninth Circuit found that Magistri's knowledge of the FCPA violations was not adequately alleged, and therefore held that the statement was not actionable because scienter was not adequately pleaded on the part of the individual speaker, *and thus scienter was not adequately pleaded for the company*. *See Glazer*, 549 F.3d at 745.

The Ninth Circuit in *Glazer* expressly affirmed the concept (which Plaintiffs fundamentally disagree with) that "the PSLRA requires [plaintiffs] to plead scienter with respect to *those individuals who actually made the false statements* in the merger agreement." *Glazer*, 549 F.3d at 745 (emphasis added). The court also held that naming *another executive* as a defendant would be futile, because "Glazer was required to plead *individual scienter with respect to Magistri because Magistri was responsible for actually making the statements* in the merger agreement. [T]he fact that Glazer could have shown that *a different executive knew* about the FCPA violations would do nothing to resuscitate Glazer's claims." *Id.* (emphasis added).[9]

---

[9] It cannot be disputed that Plaintiffs must plead scienter with particularity with respect to *each* defendant for *each* statement alleged to be false or misleading. The PSLRA's heightened pleading requirements insist that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1). *See also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.") (citation and internal quotation marks omitted).

1       Plaintiffs' view of scienter appears to be that when a spokesperson makes a
2 statement on behalf of a company, no allegation of anyone's scienter is required.[10] This
3 position is incorrect, as a recent case directly on point demonstrates. *See In re Vivendi*
4 *Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 544 (S.D.N.Y. 2011). In *Vivendi*, the
5 court granted judgment as a matter of law with respect to "a quotation that was
6 attributed to '*Vivendi Universal spokesperson Antoine Lefort*' in an article" because
7 "plaintiffs did not introduce any evidence whatsoever regarding Lefort's knowledge or
8 state of mind" or "any evidence that anyone at Vivendi endorsed or authorized this
9 statement, or that any actor at Vivendi who had scienter directed Lefort to make this
10 statement"; "It is not even clear from the record who Lefort is, what his role at Vivendi
11 was, and whether he would have had any reason to believe that his statement was false.
12 . . . Plaintiffs have failed to prove scienter with respect to this statement." *Id.* (emphasis
13 added). Replace "Lefort" with "Kwong" and "evidence" with "allegation," and *Vivendi*
14 is essentially indistinguishable from this case.

15 **C.**     **This Motion Does Not Seek Reconsideration of Any Issue That The Court**
16        **Previously Decided.**

17       Seeking to avoid focus on the merits of Defendants' Motion, Plaintiffs argue that
18 it is precluded by Local Rules 7-17 and 7-18 (Opp. at 2 n.3) and that it "is foreclosed by
19 the law of the case doctrine." (Opp. at 1, 8-10.)[11] Local Rules 7-17 and 7-18, and the

---

[10] Plaintiffs cite *In re Gilead Sciences Securities Litigation* (Opp. at 20 n.17), but that case is about loss causation, not scienter. In any event, the spokeswoman in *Gilead* was alleged to be "acting with the knowledge and approval of Gilead and its officers," unlike here. 536 F.3d 1049, 1052 (9th Cir. 2008). Plaintiffs' reliance on *In re Ann Taylor Stores Sec. Litig.*, 807 F. Supp. 990, 1004-5 (S.D.N.Y. 1992) is not well-placed, as that case pre-dates the PSLRA, relies on the now-defunct group pleading doctrine, and refers to an "anonymous spokesperson," which is not the case here. *In re Valence Technology Securities Litigation*, Case No. C 94-1542-SC, 1995 WL 274343, at *11 (N.D. Cal. May 8, 1995) and *Northern Telecom Ltd. Securities Litigation*, 42 F. Supp. 2d 234, 248 (S.D.N.Y. 1998) have no relevance, as they address when defendants' entanglement with statements by third-party analysts can result in attribution of those reports to the company.

[11] Plaintiffs suggest that Rule 12(g)(2) bars Defendants' Rule 12(c) motion. (Opp. at 9 n.10.) This argument fails. The Federal Rules explicitly provide that, despite the filing of a prior Rule 12(b) motion, the three defenses listed in Rule 12(h)(2) – including failure to state a claim – may be raised in a later Rule 12(c) motion for

10

law of the case doctrine, however, do not apply to issues that the court has not previously considered and decided. *See* L-R 7-17 and 7-18 (applying to motions for reconsideration); *Quern v. Jordan*, 440 U.S. 332, 347 n.18, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined."); *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (holding law of case inapplicable because court's earlier refusal to act on a suggestion in a footnote did not show question had been considered and decided). Specifically, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990).

Here, the Court did not address Defendants' loss causation argument as to Statements 20, 24 and 26 in its July 7, 2011 Order. Instead, the Order only mentioned loss causation with respect to *other* statements that it dismissed and as to which the Court expressed "serious doubt" that the Complaint "pleaded sufficiently" loss causation. As to these statements, the Court encouraged Plaintiffs to amend and "expand on" the loss causation allegations (which Plaintiffs elected not to do). (July 7, 2011 Order at 4 and at 5 n.5.) Similarly, although Defendants argued in their Motion to Dismiss that Mr. Kwong's scienter must be pleaded to find scienter against Toyota for Statements 20, 24 and 26, the Court did not reach or address that issue in its July 7, 2011 Order, which only addressed scienter of the Individual Defendants (who are not alleged to be liable for Statements 20, 24 and 26) pursuant to the core operations inference (which both parties agree does not apply to Mr. Kwong).[12]

---

judgment on the pleadings. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(2). *See, e.g., Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004) (declining to bar Rule 12(c) motion via Rule 12(g) despite prior Rule 12(b)(6) motion for failure to state a claim).

[12] Incongruously, Plaintiffs also appear to argue pursuant to Fed. R. Civ. P. 12(g)(2) that Defendants purportedly waived their arguments by *not* making them in their Motion to Dismiss. *See* Opp. at 9 n.10. Once again, Plaintiffs are completely incorrect on the law, as Rule 12(g)(2)—by referring to Rule 12(h)(2)—expressly exempts Rule 12(c) motions from such a waiver.

Even if it were otherwise, the law of the case doctrine does not prevent this Court's orderly consideration of these issues for the first time. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge."); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (even if court previously decided issue, law of the case doctrine is "discretionary, not mandatory and is in no way a limit on [a court's] power") (quotation omitted).

## III.
## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c), and dismiss Statements 20, 24 and 26 of the Complaint with prejudice.

DATED: February 13, 2012        SHEARMAN & STERLING LLP

By: /s/ Stuart J. Baskin
Stuart J. Baskin

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Kay E. Kochenderfer
Kay E. Kochenderfer

Attorneys for Defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., Katsuaki Watanabe, Fujio Cho, Yoshimi Inaba, James E. Lentz III, Irving A. Miller, Robert S. Carter, and Robert C. Daly