# EXHIBIT 1

1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11 | In re: TOYOTA MOTOR CORPORATION ) Master File. No CV 10-922 DSF (AJWx)
   | SECURITIES LITIGATION )
12 | )  **DISCOVERY MATTER**
   | )
13 | )  Report and Rulings re: Completion of
   | )  Discovery Pursuant to the March 9, 2012
14 | )  Rulings re Lead Plaintiff's Motion to Compel
   | )  the Production of Documents From Defendants
15 | )
   | )  Special Master: Hon. Layn R. Phillips
16 | )
   | )
17 |_____)

18
19
20
21
22
23
24
25
26
27
28

Report and Rulings re: Completion of Discovery Pursuant to
the March 9, 2012 Rulings re Lead Plaintiff's Motion to
Compel the Production of Documents From Defendants

2670588

1         Pursuant to the request of the Special Master, and in furtherance of the March 9, 2012
Report and Rulings (the "March 9 Rulings" or the "Order") (Dkt. 256), the parties submitted letter
briefs to address timing for completion of document production by Defendants responsive to Lead
Plaintiff's First Set of Requests for Production (the "RFPs") and the Order.

          Having carefully considered the arguments presented, I conclude that Defendants'
proposed schedule for completion of production of documents is not feasible in light of the current
cut-off for fact discovery in this matter.  I also conclude that Lead Plaintiff's proposed schedule is
not practical.  Accordingly, for the reasons set forth below, ***it is hereby ordered***:

    1.    Defendants shall <u>complete</u> their production of all relevant documents that were
produced to governmental agencies regarding unintended acceleration issues by **August 1, 2012**,
and shall <u>substantially complete</u> its rolling production of all other documents responsive to the
RFPs and those compelled pursuant to the Order by **August 31, 2012**.  Defendants shall <u>complete</u>
this production by **September 10, 2012**, and shall <u>certify</u> by that date that all responsive
documents have been produced in compliance with the Order.

    2.    Regarding custodial files, Defendants shall <u>complete</u> production of all relevant
documents of all "Key Custodians" (as defined below) by **July 16, 2012**; and shall <u>complete</u> a
rolling production of all documents responsive to RFPs 41-42 from all current and former Toyota
board members and Senior Management (as defined in the RFPs) by **September 10, 2012**.

    3.    Defendants shall forthwith provide Lead Plaintiff with an updated list of all
custodial files that have been reviewed or that are being reviewed, as well as those that shall be
reviewed in light of this order, and based on the list of additional custodians already provided to
Defendants by Lead Plaintiff.  The parties shall complete meet and confer discussions within
seven (7) days of this Order regarding the scope of additional custodial files to be reviewed and
additional search terms proposed by Lead Plaintiff on June 15, 2012.  The parties shall submit to
the Special Master a joint report summarizing the status of these meet and confer discussions
within ten (10) days of this order.  It is the expectation that the parties shall collaboratively agree
to narrow the list to those custodians whose files are likely to contain relevant, non-cumulative
documents so as to complete the production of documents from these custodial files by September

2670588                                - 1 -               Report and Rulings re: Completion of Discovery Pursuant to
                                                                          the March 9, 2012 Rulings re Lead Plaintiff's Motion to
                                                                          Compel the Production of Documents From Defendants

10. Regarding search terms, the parties shall inform the Special Master as to prior discussions and/or any agreements concerning the use of search terms, and shall discuss the impact, if any, on the timing of the production of documents based on the use of additional search terms.

## I. Procedural History.

Plaintiff served its first set of RFPs on August 11, 2011, roughly one month after the Court's July 7, 2011 Order Denying in Part and Granting in Part Defendants' Motion to Dismiss. [Dkt. 213]. For the next four months, the parties engaged in meet and confer discussions; unable to resolve their differences, Lead Plaintiff filed its motion to compel on December 6, 2011. Briefing was completed on January 30, 2012. Thus, nearly six months passed between service of discovery requests and the submission of this matter to me.

On February 22, 2012, I issued Tentative Rulings; the parties submitted written responses on February 28, 2012. A telephonic hearing was held the following day and, on March 9, 2012, I issued my Report and Rulings. [Dkt. 256].

The March 9 Rulings set forth, in detail, specific limitations as to the scope of a number of the 28 contested RFPs. The Order also required the parties to meet and confer as to certain requests, in order to determine appropriate limiting parameters regarding the scope of production. These rulings were intended to accomplish three goals. First, to focus discovery on the production of core documents, including internal communications involving Toyota Senior Management, the Toyota Motor Corporation ("TMC") board, and key quality assurance personnel, as well as the speakers of the Actionable Statements and the Individual Defendants. March 9 Rulings at 20. Second, to prioritize the production of documents relating to the Actionable Statements. *Id.* Third, to narrow the scope of production by minimizing the burdens associated with the production and review of operational level documents of marginal, if any, relevance.

The parties were instructed to report to me as to any remaining areas of disagreement relating to the RFPs subject to the meet and confer requirements. On March 23, 2012, the parties reported that they had engaged in productive discussions, which were on-going.

On June 8, 2012, Lead Plaintiff asked for the Special Master's assistance to address the timing for completion of document production, claiming that an impasse had been reached in the

meet and confer discussions over the previous month.[1] Letter briefs (the "Submissions") were exchanged on June 18, 2012.

**II.     Discussion**

Based on the parties' Submissions, the following seems apparent: (1) Defendants have a significant amount of work ahead of them in order to complete the production of documents responsive to the Order; (2) the parties have been unable to resolve potentially significant disagreements as to the scope of production, including as it relates to two critical pacing items – the custodial files to be reviewed and the search terms to be used; and (3) there has not been the necessary meet and confer to address these issues. The Submissions tend to set out somewhat absolutist positions. This is not conducive to resolving the issues facing the parties, and I am concerned that both sides may be too quick to declare an "impasse" or to claim that substantial compliance with the Order within a very tight time frame is "impossible".

The discovery rules are "intended to operate with minimal judicial involvement and to rely on the honesty and good faith of counsel in dealing with adversaries." *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 WL 2578571, *15 (C.D. Cal. Sept. 18, 2007). Based on the Submissions presented to me, I am not able to resolve all the disputes. I nonetheless shall make certain rulings, and instruct the parties to immediately meet and confer to identify how the remaining unresolved issues can be addressed.

**A.     The Status of Defendants' Efforts to Collect, Review, and Produce Documents.**

Between the March 9, 2012 Rulings and June 18, 2012 (the date of the Submissions), it appears that Defendants' production comprises largely of documents already reviewed and produced in the Multi-District Litigation ("MDL").[2] The balance of the production since the March 9 Rulings – approximately 12,095 documents – are "unique to this case", and reflect

---

[1] This email was preceded by correspondence sent to the Special Master which raised a number of issues, including the issue of timing for substantial completion. The parties were able to address the various issues set forth in the exchange of correspondence on their own, save, apparently, the issue of timing for completion of production.

[2] Defendants report that as of June 18, 2012 it has produced a total of 1,311,198 documents (comprising 5,712,529 pages) from the files of 360 individuals and 60 non-custodial data sources.

2670588 - 3 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

searches of files not reviewed for the MDL Production. Lead Plaintiff's Submission at 2. These "non-MDL" documents are from the custodial files of 18 "key individuals", *i.e.*, the Individual Defendants and the persons identified on Defendants' Initial Disclosures (the "Key Custodians"). Defendants anticipate substantial completion of these documents by early July. In light of that representation, it is my expectation that this milestone has already been completed.

Defendants represent that it will complete or substantially complete productions "from a large number of individual sources" by early July. They do not indicate who these custodians are, or whether these files were collected from sources other than the custodial files reviewed in the MDL Production. Defendants state that they "are now turning to collecting and reviewing documents of TMC's board members", having "prioritized" the production of documents responsive to the bulk of the RFPs (which, they believe, will be substantially completed by September). Defendants' Submission at 4.

Defendants' proposed September completion date is qualified by three issues which they claim will likely extend the timeline until December 2012: (1) the proposed addition by Lead Plaintiff of new search terms beyond those currently being used by Defendants; (2) the proposed expansion of custodial files to be searched (Lead Plaintiff identified an additional (150+) individual and several Toyota entity custodians); and (3) "logistical challenges" related to the collection and review of documents in the possession, custody, or control of TMC's current or former board members; challenges which, Defendants contend, require until the end of the year, regardless as to whether the list of search terms expands diametrically, or whether files of "new custodians" are searched.

Lead Plaintiff objects to the pace (and thoroughness) of production, and claims there are numerous deficiencies in the document production to date.

First, it contends that Defendants' production amounts largely to a "document dump" of materials already produced in the MDL, and comprises largely of "operational documents" of marginal relevance. There is no dispute, however, that the MDL involved significant discovery involving, among other things, the causes, potential causes, remedies, or potential remedies for unintended acceleration, all of which are responsive to the RFPs. Lead Plaintiff states that it

2670588 - 4 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

"reluctantly" accepted Defendants' offered reproduction of the MDL documents; but Defendants contend that it gave Lead Plaintiff "the option of receiving either a reproduction in which Defendants would remove documents they determined were not relevant to this case or the broader production", which, essentially, included virtually every document produced in the MDL within the relevant time period. May 10, 2012 Evans Letter at 10. The Lead Plaintiff chose the latter, perhaps out of concern that the culling process would involve a delay longer than what Defendants calculated, or what Lead Plaintiff was prepared to accept. Whatever its reasons, Lead Plaintiff asked for the MDL Production, and it got it (all 5.5+ million pages), notwithstanding the direction in the Order that the parties seek to minimize the mutual burdens associated with the production and review of what is likely an over-inclusive production.

Second, Lead Plaintiff contends that the production contains "remarkably few" if any documents from the work files of key individual custodians, including Toyota Senior Management and other senior managers.[3] Also claimed missing from the production are documents from the files of various corporate custodians, *i.e.*, Toyota foreign subsidiaries in countries where governments launched unintended acceleration investigations. It is not clear from Defendants' Submission whether these files have been, or shall be, searched.

It does appear that – at least as to some Key Custodians -- a non-trivial production has been made. As of May 10, Defendants reported that they had produced 10,971 responsive documents (39,752 pages) from Individual Defendant Jim Lentz's files; 8,815 documents (69,771 pages) from Robert Daly's files; 2,335 documents (8,866 pages) from Yoshimi Inaba's files; 1,211 documents (7,297 pages) from Irving Miller's files; and 1,038 documents (3,474 pages) from Robert Carter's files. May 10, 2012 Evans Letter at 3. Since that time, supplemental productions (*e.g.*, an additional 700 documents for Carter, and an additional 500 documents for Miller) have

---

[3] These include Akio Toyoda (the President and CEO of TMC and Chairman and CEO of Toyota NA), Ron Kirkpatrick, TMS's National Manager of Executive and Internal Communications, Shinji Yamaguchi, a TMC General Manager who received NHTSA investigation reports and other internal memos regarding unintended acceleration recalls, Steve St. Angelo, Toyota Chief Quality Officer and spokesman for Toyota in the wake of the unintended acceleration recalls, and Sumio Ohtsujo and Kevin Ro, both of whom held senior supervisory positions relating to Toyota's interaction with regulatory authorities, including the NHTSA.

2670588 - 5 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

been made. The raw numbers do not, standing alone, indicate whether this reflects a substantial, good faith effort to collect all relevant documents; it cannot be said, however, that these are (as Lead Plaintiff suggests) "remarkably few documents from the work files of the Individual Defendants." Lead Plaintiff's Submission at 2.

While Lead Plaintiff argues that documents from the *custodial files* of numerous current or former Toyota employees have not been produced, it does not claim that it has received no documents relevant to these individuals. It is therefore likely that the document production to date (including from 60 non-custodial data sources) contains emails and other documents relating to some of these individuals. One would expect that any search of corporate sources of ESI (as was done in connection with the MDL Production) would include a substantial amount of emails and documents that were shared, stored, or exchanged via these media with these individuals, regardless of whether this information also reposes in the individuals' custodial files. Both parties' submissions are silent on this question.

Third, while documents from numerous senior Toyota managers (or individuals identified in Lead Plaintiff's Initial Disclosures) have been produced (to the extent they were part of the MDL Production), Lead Plaintiff states that Defendants concede that they have not yet independently searched these custodial files (*i.e.*, separate from their prior search in the MDL Production) for documents responsive to the RFPs or compelled pursuant to the Order. Lead Plaintiff's Submission at 2. Defendants do not address the status of any independent review of these custodial files to locate documents not part of the MDL Production that are responsive to the RFPs. Presumably this is now being done.

Fourth, Lead Plaintiff states that it is "evident" that Defendants have not yet produced, or substantially produced, documents responsive to core topics compelled by the Order, including documents relating to "Government" oversight or investigations concerning unintended acceleration, and custodial files of Toyota's board members. Lead Plaintiff's Submission at 2-4. Defendants indicate that they will complete their productions of documents that were produced to governmental agencies regarding unintended acceleration between the end of June and September,

Defendants' Submission at 2, and "are now turning to collecting and reviewing Toyota board member documents." *Id*. at 4.

### B. Lead Plaintiff Raises Legitimate Concerns as to the Production Efforts to Date.

The parties are well-aware that the process of taking discovery in complex civil litigation is often time-consuming, burdensome, and expensive. This is particularly the case in securities fraud actions involving a lengthy class period and where the location, review, and production of documents and ESI is significant. This case is no exception. Having said that, Lead Plaintiff raises legitimate concerns as to both the scope of production and the pace of Defendants' efforts to date to comply with the March 9 Rulings. These concerns suggest, at minimum, that Defendants have a significant amount of work before them to comply with the Order, and that the pace of production to date has been inadequate to fulfill any reasonable expectation of timely completion in light of the discovery cutoff in this case. A few examples suffice to make the point:

First, Defendants do not explain why it required four months to "substantially complete" a production from 18 Key Custodians. Defendants state that they have provided Lead Plaintiff with "prompt access" to documents from these custodians. I do not think that this characterization matches the realities as to Defendants Cho (205 documents) and Watanabe (zero documents).

Second, no explanation is given as to why the production of documents provided in response to regulatory investigations or oversight inquiries is not substantially completed, or why it will require Defendants up to six months from the date of the Order to do so. A sophisticated, global company presumably maintains careful records of the documents produced to regulators and other enforcement officials (and indeed may be required to preserve such documents), and should be able to locate them without an undue amount of effort. These investigations, and the Company's response thereto, are highly relevant to this case, *see* July 7, 2011 Order at 6, 7 (discussing "intense" regulatory scrutiny and no fewer than eight NHTSA investigations "which almost certainly have brought the matter to upper management's attention"), and therefore (along with internal communications relating to these inquiries) should have been prioritized for prompt production.

2670588 - 7 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

Third, there seems to be no dispute that Defendants have not (at least as of June 18) independently reviewed the custodial files used in the MDL Production to identify documents specifically relevant to the RFPs. Plaintiff's Letter at 2. While the MDL Production may contain a substantial number of documents relevant to this case, the focus of discovery in this case is, in numerous respects, different from that in the MDL. It may be that a substantial number of the custodial files already searched in the MDL Production will have few additional documents responsive to the RFPs. The parties are expected to discuss ways to narrow or prioritize the search of these 400+ custodial files, consistent with the Order's direction to meet and confer. Nonetheless, relevant custodial files will need to be searched, and this will likely require a substantial additional effort.

Fourth, Defendants have apparently produced few documents from the custodial files of Toyota's Senior Management[4] or its board members (RFPs 41-42). Lead Plaintiff's Submission at 3. Defendants were specifically required to produce documents from these custodial files. Order at 25-26. These files may contain highly relevant information, and should have been among those prioritized for production. As the Court noted: "The defects at issue were simply too significant for it to be plausible that top Toyota management was not aware of the possible ramifications of the problem by the time the statements at issue were made, especially given that Toyota is known for – and publicizes – a highly involved management style – the so-called 'Toyota Way.'" July 7, 2011 Order at 6.

Defendants state that they "believe" they will substantially complete production of documents responsive to the bulk of the RFPs by September. Defendants' Submission at 2. Missing from this list are RFPs 41 and 42. Defendants state that they are "now turning to collecting and reviewing documents of TMC's board members" responsive to these requests. *Id.* at 4 (emphasis added). Defendants do not mention the status of document production as to the

---

[4] "Senior Management" is defined in the Requests as the Individual Defendants and all officers of the Company, any employees reporting directly to these individuals, and any internal and external legal, financial, or regulatory advisors to Senior Management. Order at page 25, n. 25.

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

2670588                                    - 8 -

custodial files for Senior Management, a number likely to be substantially greater than the custodial files for TMC's "nearly 40" board members.

Defendants suggest that Lead Plaintiff's proposed timeline for document production is not realistic, given that the Order "greatly expand[ed] the scope of discovery beyond that which Defendants had previously considered appropriate to this case." Defendants' Submission at 3. This does not explain why, nearly four months after the Order, Defendants' production appears to amount to, essentially, a reproduction of MDL documents and a partial production of documents from the files of 18 Key Custodians. Much of the "heavy lifting" associated with any document production – the location, downloading, imaging, and review of documents (including for privilege or work product) – had presumably been done in the MDL Production. Defendants apparently turned over the entirety of that production, subject to withholding documents outside the relevant discovery period and certain engineering documents that were not relevant or otherwise subject to a claim of trade secret protection. While the volume of documents was significant, the task was not so daunting that it could justify delays in collecting and producing other, more relevant, documents.

As to the 18 Key Custodians, this is not a significant number, let alone one that could justify production delays. The identities and roles of these custodians were well-known to Defendants. It would not be surprising that at least some of their files have been preserved, reviewed, and produced in connection the various civil actions or regulatory, criminal, and Congressional inquiries which preceded these demands. Whatever challenges Defendants claim to have encountered in gathering and reviewing these documents (including the fact that some are in Japanese), they were known – or could have been discovered – months ago.

Between the time they were served with the RFPs and the March 9 Rulings, Defendants had seven months to gather and produce documents, including those which were responsive to the RFPs, even under Defendants' view as to what should constitute the "appropriate" scope of discovery. Defendants elected to not to produce these documents until their threshold subject matter and time-period objections were resolved. Having made the tactical choice not to collect documents contained in the files of certain of Toyota's board members, its Senior Management,

2670588 - 9 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

and other managerial-level employees, Defendants took the calculated but substantial risk that they would face an enormous task of making a prompt production of documents if their arguments were not persuasive. That choice does not excuse their failure to prepare for the eventuality that their positions would not prevail.[5]

In sum, the status of production raises questions as to the adequacy of the efforts undertaken to date, and necessarily informs any analysis as to the schedules both parties propose.

### C. The Parties' Proposed Timelines for Document Production.

Lead Plaintiff proposes the following schedule for completion of document production: (1) July 15, 2012 for the completion of documents from the files of the Individual Defendants, "Toyota's Senior Management and Board," and the individuals identified in the parties' Initial Disclosures; and (2) August 15, 2012, "for all other custodians." Lead Plaintiff does not specifically define which custodians fall into this second category. (Its Submission does not mention a list of an additional 150 + individual custodial files proposed to be searched, or the addition of new search terms.). Instead, it refers to broad categories of custodians – *e.g*., "management-level employees in Japan and the U.S."; "Toyota NHTSA/Government Liaison Personnel"; and Toyota Subsidiaries – which would be subject to a search and production by August 15th deadline.

---

[5] Defendants appear to have made little effort to prepare for that eventuality, or to begin any meaningful production during this time. Between September 26, 2011 and the mid-February, 2012, Defendants produced fewer than 3,000 documents (approximately 25,000 pages). On February 22, 2012, the day I issued my Tentative Rulings, and the day following the Court's denial of Defendants' Motion for Partial Judgment on the Pleadings (the "MPJOP"), Defendants produced an additional 7,288 documents (roughly 55,000 pages). Whatever their reasons for the delay, nothing prevented Defendants from collecting documents from the Individual Defendants, the Toyota board, or other "key individuals", and producing them, at least in accordance with the scope of discovery proposed in opposition to the motion to compel.

To the extent that Defendants banked on winning the MPJOP as a basis to limit the scope of discovery, Order at 4-5, n. 5 & 13, n. 17, that too was a risk assumed by Defendants. That said, Defendants well understood that the Class Period commenced April 7, 2008, and would not change unless it prevailed on its MPJOP. Nonetheless, Defendants proposed that the relevant period for discovery begin January 1, 2008. Once their motion was denied, Defendants pivoted, and proposed that "discovery first focus on the period from January 1, 2006 to April 19, 2010." *Id*. at 5. That seemed to be a concession of the obvious, *i.e*., that documents pre-dating January 1, 2008 are relevant to the Actionable Statements unsuccessfully targeted in the MPJOP, as well as to the other Actionable Statements. *Id*. at page 5, n. 6 (quoting Defendant's Comments on the Tentative Rulings) ("Defendants can represent that floor mat entrapment issues . . . became the subject of a NHTSA investigation in 2007".).

2670588 - 10 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

As noted, Defendants' proposed timeline contemplates substantial completion via rolling production by September. This schedule is qualified by three issues which they claim could extend the production schedule through December: (1) production of board members' documents; (2) new custodians; and (3) new search terms.

### 1. Board Member Documents.

Defendants state they prioritized substantially completing their productions of documents responsive to the bulk of the RFPs, and are "now turning to collecting and reviewing documents of [nearly 40] TMC's board members responsive to RFPs 41 and 42, if any." Defendants' Submission at 4. Defendants estimate that "the process of collection, review and production . . . will take six months." *Id*.

While Defendants argue that there is considerable burden attached to collecting and reviewing these documents, they offer no evidence that might justify the hardship they claim, or that would support their proposed time table. Nor do Defendants explain why they could not have begun the collection and review months ago. It is not at all unusual that in any case of this size and complexity a very substantial number of custodial files must be gathered and reviewed. The MDL Production, as Defendants note, involved over 400 custodial files – ten times the number of custodial files for TMC's board members. Many of the documents in the MDL custodial files were likely written in Japanese, or located in Japan. The same logistical challenges were addressed in that production. I strongly suspect that it did not require an equivalently long period of time to accomplish very similar tasks.

Instead, it appears that Defendants are not yet in a position to make any informed assessment as to how long it will take to produce these files, given that they are only now turning to the collection and review of these documents, and do not (and cannot) represent how voluminous the production might be, or how many documents would need to be reviewed. Nonetheless, they "believe that it is unlikely that any significant, new responsive documents will be found through this process." Defendants' Submission at 4. This (unsupported) statement neither explains the delay in collecting these documents, nor changes Defendants' obligations to produce what has been ordered.

Defendants also justify the delay by diminishing the relevance of the TMC board member files, and by claiming that they prioritized production of documents "of those who were involved in making the statements at issue [and] those involved in the recall decisions." Defendants' Submission at 4. Inferentially, this suggests that Defendants believe that many of TMC's board members were unaware or uninvolved in these events, or lack any contemporaneous knowledge of the accuracy of the Actionable Statements, TMC's direction of its responses to the NHTSA, or the "causes and potential remedies for reported unintended acceleration." *Id*. Lead Plaintiff is entitled to test these assertions against the documents. I do not so easily accept Defendants' unsupported characterization of the marginal relevance of these documents.

First, during the Class Period, TMC's board appears to have been comprised entirely of "inside," management directors. These directors had been, or were at the time they served on the board, longstanding Toyota employees who occupied very senior positions at the Company.[6] Second, the Court's analysis of the sufficiency of "core operations" inference of scienter focused on the knowledge of Toyota's senior management, including those who sat on the TMC board. July 7 Order at 6. *See also* Order Denying Motion for Partial Judgment on the Pleadings [Dkt. 253] at 1-2, n.2 ("it is unlikely that the law allows corporations to shield themselves from securities fraud liability by funneling fraudulent statements through an 'ignorant' spokesperson with no way for the public to know who, specifically, prepared the spokesperson's statements"). These rulings strongly suggest that this discovery ought to be a priority, so that Lead Plaintiff may test whether the TMC board "remained blissfully unaware of the mounting evidence" that "the

---

[6]   *See* Toyota Motor Corporation (SEC Form 30-F) (June 24, 2009) at 103:

>   1. Directors. Toyota currently does not have any directors who will be deemed as an "independent director" as required under the NYSE Corporate Governance Rules for U.S. listed companies. Unlike the NYSE Corporate Governance Rules, the Corporation Act does not require Japanese companies with a board of corporate auditors such as Toyota to have any independent directors on its board of directors. While the NYSE Corporate Governance Rules require that the non-management directors of each listed company meet at regularly scheduled executive sessions without management, Toyota currently has no non-management director on its board of directors. Unlike the NYSE Corporate Governance Rules, the Corporation Act does not require, and accordingly Toyota does not have, an internal corporate organ or committee comprised solely of independent directors.

2670588                                - 12 -                Report and Rulings re: Completion of Discovery Pursuant to
                                                                      the March 9, 2012 Rulings re Lead Plaintiff's Motion to
                                                                      Compel the Production of Documents From Defendants

1 accumulating reports of unintended acceleration . . . probably could not all be attributed to
2 misaligned floor mats," or whether these directors were aware of the possibility that Toyota was
3 "deliberately reckless to mislead investors into believing that Toyota had definitively identified the
4 source of the unintended acceleration problem" when it "affirmatively pointed the finger at floor
5 mat placement and driver error. " July 7, 2011 Order at 8.

6      In sum, I see no basis that would justify further delay in the complete production of these
7 files. Similarly, I am troubled by the fact that custodial files of Toyota's Senior Management have
8 not already been produced, or that the production of these files is not substantially completed.
9 *See* n. 3 *supra*.

10            **2.**     **Custodial files.**

11      Lead Plaintiff requests that deadlines be tied to the production of custodial files of Toyota
12 board members, various Toyota subsidiaries, individuals identified in Lead Plaintiff's Initial
13 Disclosures, senior Toyota management, management level employees in Japan and the United
14 States, and Toyota NHTSA/Government liaison personnel. Many of these individuals are not
15 included among the 360 custodians whose files were reviewed for the MDL Production; less than
16 one-half of the individuals identified on Plaintiff's Initial Disclosures are MDL custodians or
17 "key" custodians identified by Defendants. As noted, Lead Plaintiff identifies several senior
18 Toyota employees, who almost certainly have relevant documents, but from whose files it claims
19 Defendants have yet to produce any documents.

20      Defendants' proposed production timeline prioritized substantial completion of 18 Key
21 Custodians by early July. Defendants' Submission at 2. Defendants also make reference to the
22 completion or substantial completion of productions "from a large number of individual sources
23 included in their productions by that time." *Id*. It is not clear whether this refers only to an
24 additional search of custodial files reviewed in the MDL Production, or a search of additional
25 custodial files. Defendants' proposal says little else as to the scope of its additional collection
26 efforts, including what other entities and individuals' custodial files will be searched, or the
27 methodology for identifying such sources.
28

2670588     - 13 -    Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

On this record it is not possible, or appropriate, for me to order that a production timeline be tied to Lead Plaintiff's suggested categories of custodians, with the exception of those specifically ordered to be produced – TMC's board members and Senior Management.

First, it is unclear who are the custodians Lead Plaintiff believes fall within the generic description "management level employees in Japan and the United States," or "Toyota NHTSA/Government liaison personnel." Nor is it clear that all employees who fit within these broad categories have any relevant, non-cumulative information. These could number in the hundreds, if not the thousands, of custodians. Lead Plaintiff makes no showing to justify the necessity of such a potentially burdensome search. Similarly, while Lead Plaintiff identified roughly 60 individuals in its Initial Disclosures and in its Complaint which it believes are "likely" to have relevant information, that list, standing alone, cannot support the demand that Defendants retrieve and search every one of these files. Some undoubtedly have relevant information; Defendants indicate that they have collected and are reviewing files from a number of these individuals. Others are listed as, *e.g.*, "FNU [first name unknown] Ito." While Lead Plaintiff is not expected to be able, at the outset of discovery, to identify every Toyota employee likely to have relevant information, there should be some concrete showing that such a custodial file search will yield relevant, non-cumulative documents.

Second, Lead Plaintiff took the position at oral argument on the motion to compel that it is Defendants' obligation to make the determination as to who are the relevant custodians, based on the input already provided by the Court, the Complaint, and the Initial Disclosures. Lead Plaintiff also argued that given Defendants' substantially greater familiarity with the custodians and the documents they may have, Defendants should identify the custodians from whose files documents will be produced. Lead Plaintiff would then be able to test the sufficiency of such a search through Rule 30(b)(6) depositions.

This protocol puts the initial burden on Defendants to locate these custodians, based on a good faith search consistent with the Order. It is a substantial burden, given that, if the search for responsive documents is to be done in compliance with the Order, it will doubtless require Defendants to identify and search the files of a very significant number of individual custodial

2670588 - 14 -

Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

files, well beyond those identified on Defendants' Initial Disclosures, or in the possession, custody, or control of Toyota's Senior Management or its Board.  Likewise, any reasonable search would, of necessity, anticipate extensive review of corporate files, including those of Toyota subsidiaries, to the extent that they would contain relevant documents not already locatable in non-custodial data sources that have been, or that will be, searched.

Once that search is undertaken, it is incumbent on both parties to discuss its scope in order to determine whether Defendants' efforts are sufficient to allow Lead Plaintiff a full and accurate understanding of the facts.  The expectation is that Lead Plaintiff will be able to test the adequacy of Defendants' efforts by reviewing what has been produced, and through Rule 30(b)(6) deposition testimony.  To this end, the March 9 Rulings instructed the parties to meet and confer not only as to the categories of documents relating to the causes or potential causes of unintended acceleration, but *to whom* that information was transmitted.  Order at 19.[7]  In that way, at least some preliminary criteria for identifying custodians could be established, based on an understanding as to how, and to whom, information was reported up to senior officials within TMC.[8]  To the extent that Lead Plaintiff obtains information that leads it to believe that additional custodial files not reviewed by Defendants may contain responsive documents, it may present that information to the Court.  *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 WL 818061, at *7 (D. Del. Apr. 30, 2002).

---

[7] The March 9, 2012 Rulings required the parties "to discuss the communication of such information within the Company, and specifically to the operational headquarters of Toyota in Japan and the United States, in order to ascertain the manner in which such information was communicated, to whom it was communicated, and how and to what extent it was reviewed by Toyota quality assurance engineers, Toyota managers, and those employees responsible for interacting with the NHTSA."  Order at 19.

[8] Plaintiff alleges that Toyota's decision-making structures maximized control by TMC, Complaint at ¶¶39-40, and involved all key corporate decisions ranging from recalls, communications, and marketing to interactions with regulators. *Id.* at ¶54.  For purposes of prioritizing discovery, the focus should relate to what Lead Plaintiff alleges was a centrally-managed and tightly controlled corporate structure that governed both the flow of information and the decisions made by TMC during the Class Period.  Moreover, the allegations concerning the "Toyota Way" suggest that there may be centralized sources at TMC for the collection of documents, including those relevant to identifying these reporting relationships.  This may not make the collection of documents substantially easier, but it certainly could sharpen the focus as to who may be relevant custodians.

2670588 - 15 -

Report and Rulings re: Completion of Discovery Pursuant to
the March 9, 2012 Rulings re Lead Plaintiff's Motion to
Compel the Production of Documents From Defendants

Should such a showing be made, it may not, by itself, necessitate further orders by the Special Master beyond the immediate production of these documents. It could, however, raise serious doubts that Defendants' efforts to locate and produce relevant information have not been commensurate with the expectations set forth in the March 9 Rulings. The presentation of persuasive evidence of material non-compliance could cast doubts on whether there was a good faith search of documents. *See generally Wingnut Films, Ltd.*, 2007 WL 2578571.

Defendants note that Lead Plaintiff has proposed that Defendants "add to the sources of their productions over 150 individuals and several entities, in addition to the 360 individuals and 60 non-custodial sources of documents in Defendants' production to date." Defendants' Submission at 3. Defendants state, however, that they "do not anticipate that they will agree to add most of the individuals and entities Lead Plaintiff has requested," as they are likely to have little relevant, additional documents, or were relatively low-level employees. *Id*. To the extent that they agree to do so, or are ordered to do so, they anticipate that could extend document production through the end of the year.

Although Lead Plaintiff does not discuss this list, Defendants indicate that there have been some meet and confer discussions regarding the expanded scope of custodial searches, and that on May 18 Lead Plaintiff provided information regarding the grounds for these requests. Without further information, it is not possible for me to gauge whether the addition of some or all of these custodians is warranted, or whether (if warranted) it would necessitate an extension of the deadline for completion of document production.

However, Lead Plaintiff identifies a number of senior Toyota executives – many of whom are not on Defendants' list of custodians. *See* Ex. B to Defendants' Submission. These include Akio Toyoda, the President and CEO of TMC and Chairman and CEO of Toyota NA, Steve St. Angelo, Toyota's Chief Quality Officer and spokesman in the wake of the unintended acceleration recalls, and Ron Kirkpatrick, TMS's National Manager of Executive and Internal communications. *See also* n. 3 *supra*. Lead Plaintiff states that Mr. Kirkpatrick "helped write Toyota's Q&A forms regarding unintended acceleration ("UA"), was in charge of writing Defendant Lentz's scripts about UA," and was a recipient of Defendant Miller's "smoking gun" email. Lead Plaintiff's

2670588 - 16 -

Report and Rulings re: Completion of Discovery Pursuant to
the March 9, 2012 Rulings re Lead Plaintiff's Motion to
Compel the Production of Documents From Defendants

1  Submission at 2.  The notion that these individuals are likely to have little, additional relevant
2  information does not strike me as plausible; nor is it explained why these individuals are not
3  already among the custodians whose files are being collected.  Whatever the reasons for not
4  producing the files for these (and other) Toyota employees who are likely to have relevant
5  information, that failure should not warrant an extension of time to collect and produce documents
6  which (arguably) should have been among those prioritized for discovery.  (It may well be the
7  case that Defendants have begun collecting and reviewing these documents.)

8  These omissions relate directly to Lead Plaintiff's legitimate concerns as to potential gaps
9  in the scope and thoroughness of Defendants' production to date.  The parties shall meet and
10 confer to discuss what Lead Plaintiff perceives to be gaps in Defendants' document production,
11 beginning with the custodians discussed above.  To the extent that Defendants maintain their
12 position that "almost all of these requests have been made on very tenuous grounds, at best",
13 Defendants' Submission at 3, I expect that Lead Plaintiff will test that position through additional
14 discovery and motion practice.

15 It is, however, my expectation that further motion practice will not be needed, and that the
16 gaps identified in the scope of production will be addressed via meet and confer discussions.
17 Defendants have represented their belief that they will be in compliance with the Order as to
18 virtually all of the RFPs by September.  It is their burden to insure, through a diligent and
19 thorough search of responsive records, that they meet this obligation.

20 **3.  Search Terms**

21 Defendants state that they provided Lead Plaintiff "voluntarily and without solicitation"
22 their search terms.  Defendants' Submission at 3.  While Defendants do not say when they
23 provided these terms to Lead Plaintiff, the use of search terms is standard practice in any case of
24 this magnitude.  It is expected that the producing party will identify its search terms promptly, and
25 that the parties will collaborate on such a list at the earliest practical opportunity.

26 It is not clear whether the parties already exchanged such a list, or came to an agreement as
27 to these search terms.  Defendants do not say, and the Lead Plaintiff's letter is silent regarding
28 search terms.  Nonetheless, Defendants report that on June 15, Lead Plaintiff "proposed new

2670588 - 17 - Report and Rulings re: Completion of Discovery Pursuant to the March 9, 2012 Rulings re Lead Plaintiff's Motion to Compel the Production of Documents From Defendants

1  search terms in addition to those that Defendants had been using thus far", Defendants'
2  Submission at 3, as if to suggest that Lead Plaintiff waited until mid-June to engage in a
3  discussion regarding search terms.  Defendants point to this development as an issue that could
4  further delay production, and note that the parties have yet to meet and confer on this topic.  It
5  may be that these new search terms could have been brought to Defendants' attention months ago;
6  it could also be the case that Defendants' failure to produce documents in a more timely manner
7  hindered Lead Plaintiff from identifying certain of these search terms, some of which may be in
8  Japanese; or, it could be that Defendants should have included these terms in its search list from
9  the outset, and are only now being prodded to do so once Lead Plaintiff came to appreciate their
10 relevance.  While it is possible that the addition of new search terms could have an impact on
11 Defendants' ability to timely complete its production, it also may have less impact than
12 Defendants suggest, given that they are only now beginning the process of collecting certain
13 custodial files, and (as of mid-June) had not begun to independently search the custodial files used
14 in the MDL Production for documents specifically relevant to these RFPs.

15      Until such time as the parties conclude their meet and confer discussions regarding new
16 search terms, it is premature for me to order any adjustment to the timeline for completion of
17 production pursuant to the RFPs and the Order.

19 IT IS SO ORDERED:

21 July 6, 2012                                         _____
                                                       Layn R. Phillips
22                                                     Former U.S. District Judge

2670588                           - 18 -

Report and Rulings re: Completion of Discovery Pursuant to
the March 9, 2012 Rulings re Lead Plaintiff's Motion to
Compel the Production of Documents From Defendants