BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
BENJAMIN GALDSTON (Bar No. 211114)
(beng@blbglaw.com)
DAVID R. KAPLAN (Bar No. 230144)
(davidk@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323
    -and-
GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System and Lead Counsel for the Class*

FAIRBANK & VINCENT
ROBERT H. FAIRBANK (Bar No. 76359)
(rfairbank@fairbankvincent.com)
DIRK L. VINCENT (Bar No. 157961)
(dvincent@fairbankvincent.com)
444 S. Flower Street, Suite 3860
Los Angeles, CA 90071
Tel:   (213) 891-9010
Fax:   (213) 891-9011

*Liaison Counsel for the Class*

*(Additional Counsel listed on signature page)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TOYOTA MOTOR CORPORATION SECURITIES LITIGATION | Master File No. CV 10-922 DSF (AJWx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:   Oct. 15, 2012<br>Time:   1:30 p.m.<br>Courtroom: 840<br>Judge:   Hon. Dale S. Fischer |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT ................................................................................................ 5

    A.   Rule 23(a)'s Prerequisites Are Not Disputed................................. 5

    B.   Rule 23(b)(3)'s Requirements Are Also Satisfied ......................... 5

        1.   The *Basic* Presumption Of Reliance Is Established ................................................................................. 6

        2.   Defendants Fail To Rebut The *Basic* Presumption ..................................................................................... 7

        3.   The *Affiliated Ute* Presumption Also Applies ........................................................................................... 12

III. CONCLUSION........................................................................................... 12

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                                                           <u>Page</u>

*Affiliated Ute Citizens of Utah v. U.S.*,
    406 U.S. 128 (1972) .................................................................................................. 5, 12

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ...................................................................................... 7

*In re Ashanti Goldfields Sec. Litig.*,
    2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) .................................................................... 7

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .............................................................................................. passim

*In re Bayer AG Sec. Litig.*,
    2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .................................................................. 7

*Bharucha v. Reuters Holdings PLC*,
    1993 WL 657863 (E.D.N.Y. Oct. 29, 1993) ..................................................................... 7

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ....................................................................................... 7

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) ......................................................................................... 12

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ........................................................................................ 1, 3

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .............................................................................. passim

*Cartwright v. Viking Indus. Inc.*,
    2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ............................................................... 12

*Chamberlan v. Ford Motor Co.*,
    223 F.R.D. 524 (N.D. Cal. 2004) .................................................................................... 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
    273 F.R.D. 586 (C.D. Cal. 2009) ........................................................................... 3, 7, 8, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................... 4

*Dean v. China Agritech, Inc.*,
   2012 U.S. Dist. LEXIS 70683 (C.D. Cal. May 3, 2012) .................................... 11, 12

*In re Deutsche Telekom Ag Sec. Litig.*,
   229 F. Supp. 2d 277 (S.D.N.Y. 2002) ........................................................................ 7

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................... 5

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008) ................................................................................. 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ........................................................................................... 4, 6

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
   2012 WL 1028642 (S.D.N.Y. Mar. 27, 2012) ......................................................... 11

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   242 F.R.D. 568 (W.D. Wash. 2007) ........................................................................ 12

*In re HealthSouth Corp. Sec. Litig.*,
   261 F.R.D. 616 (N.D. Ala. 2009) ........................................................................... 5, 7

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ............................................................................... 7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) ............................................................................... 7

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ................................................................................................... 5

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) ..................................................................................... 7

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) ........................................................................... 4, 7

*Local 703, I.B. of T. Grocery and Food Emps. Welfare Fund v. Regions Fin. Corp.*,
   2012 WL 2318105 (N.D. Ala. June 14, 2012) .......................................................... 8

*Lumen v. Anderson*,
   280 F.R.D. 451 (W.D. Mo. 2012) ........................................................................ 3, 11

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ................................................................................ 12

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) .................................................................................... 7

*In re Moody's Corp. Sec. Litig.*,
  274 F.R.D. 480 (S.D.N.Y. 2011) .................................................................................. 7

*Morrison v. Nat'l Austl. Bank, Ltd.*,
  130 S. Ct. 2869 (2010) ................................................................................................ 10

*In re Nice Sys. Sec. Litig.*,
  188 F.R.D. 206 (D.N.J. 1999) ...................................................................................... 7

*In re PolyMedica Corp. Sec. Litig.*,
  432 F.3d 1 (1st Cir. 2005) ............................................................................................ 9

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................................. 7

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ........................................................................ 8

*In re SCOR Holding (Switz.) AG Litig.*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008) .......................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................................... 5

*In re Toyota Motor Corp. Sec. Litig*,
  2011 WL 2675395 (C.D. Cal. July 7, 2011) .............................................................. 12

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
  209 F.R.D. 353 (S.D.N.Y. 2002) .................................................................................. 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................... 7

**STATUTES, RULES & REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................ passim

Federal Rules of Evidence
    Rule 301 ................................................................................................................ 7
    Rule 702 ................................................................................................................ 4
    Rule 703 ................................................................................................................ 4

## I. INTRODUCTION

This action meets all the requirements for class certification. As set forth in Lead Plaintiff's opening brief and supporting expert report of Chad Coffman, CFA, each and every requirement of Rule 23 has been satisfied. Maryland SRPS, a prominent public pension fund and experienced fiduciary, is the paradigmatic class representative envisioned by Congress: an institutional investor that has actively supervised and directed Lead Counsel, diligently responded to written discovery and appeared for deposition, provided substantial strategic guidance and input through its own attorneys at the Maryland Attorney General's office, and affirmed its commitment to maximize the Class-wide recovery. Lead Plaintiff further established with "material sufficient to form a reasonable judgment" that common questions of fact and law predominate, a class action is superior to other available methods of adjudication, and the proposed Class Period and Class definition are appropriate. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

In addition, Lead Plaintiff established that this securities fraud action satisfies the five factors set forth in *Cammer v. Bloom,* 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), which are accepted by courts nationwide as sufficient evidence of market efficiency entitling investors to a class-wide presumption of reliance under the Supreme Court's holding in *Basic Inc. v. Levinson*, 485 U.S. 224, 245-47 (1988) (adopting fraud-on-the-market doctrine pursuant to which individual investors do not need to show direct reliance on misstatements). The evidence here includes numerous undisputed facts which, separately and collectively, provide strong support for a finding of market efficiency throughout the Class Period, including:

- Toyota ADRs ***traded on the New York Stock Exchange*** ("NYSE") – by far the world's largest stock exchange by market capitalization of its listed companies – which is entitled to a ***rebuttable presumption of efficiency***.

- Toyota was actively followed by a ***plethora of media outlets and at least 17 securities analysts***, which issued more than 20,000 reports on Toyota, one of the largest companies in the world.

- Toyota ADRs were **among the most actively traded of all ADRs**, with an average weekly turnover of approximately 8%, far exceeding the 2% standard for a "strong presumption" of market efficiency under *Cammer*.
- Toyota ADRs were predominately owned by **institutional investors**; and
- The market price for Toyota ADRs **responded quickly to new, material news**, and in a manner nearly identical to Toyota common stock.

While not required, Lead Plaintiff also provided the Court with an expert report providing **empirical evidence** of informational efficiency, *i.e.*, that the market price for Toyota ADRs rapidly impounded new, Company-specific information, the principal legal test for market efficiency under *Basic* and *Cammer*. Plaintiffs' expert, Mr. Coffman, performed an ***event study***, which is the established analytical tool accepted by courts and finance professionals for empirically evaluating market efficiency in securities class actions, and also performed ***additional*** empirical and objective analyses, ***all*** of which further confirm market efficiency here. Significantly, Lead Plaintiff's expert, Mr. Coffman, has extensive experience assessing market efficiency for plaintiffs, defendants, and D&O insurers in litigation, as well as for a well-respected mediator, the Honorable Daniel Weinstein (Ret.), and his expert opinions on market efficiency have been repeatedly accepted by courts.

Unquestionably, Defendants expended substantial resources and took extraordinary measures to search for issues to challenge class certification. Over several months, Defendants obtained extensive party and non-party document discovery and crisscrossed the country to take seven depositions in five different states totaling nearly 40 deposition hours, including the depositions not only of the proposed Class Representative, Maryland SRPS, but also of Maryland SRPS's investment managers, and the two additional named plaintiffs (neither of which are proposed class representatives), thereby requiring a three-week extension of the class certification briefing schedule. Nevertheless, Defendants' opposition is more remarkable for what it does ***not*** challenge than what it does, conceding that Lead Plaintiff has established

virtually all of Rule 23's requirements. Specifically, Defendants do not challenge **any** of Rule 23(a)'s prerequisites or Rule 23(b)'s "superiority" requirement.

Defendants' only challenge concerns Rule 23(b)(3)'s "predominance" requirement. However, consistent with long-standing public policy favoring class-wide resolution of securities fraud cases, the overwhelming weight of authority holds that where, as here, plaintiffs allege a "common course of conduct" of misrepresentations that affect all members of the class in the same manner, common questions predominate. *See, e.g.*, *Blackie*, 524 F.2d at 902. As in virtually all securities class actions, plaintiffs rely on the fraud-on-the-market doctrine, which provides a class-wide presumption of reliance under *Basic*. Moreover, where, as here, plaintiffs demonstrate "informational efficiency" through admissible evidence, the burden of proof shifts to Defendants to rebut the presumption by affirmatively establishing that the market did ***not*** rapidly impound new, Company-specific information. Defendants do not even attempt to meet their burden.

As an initial matter, Defendants provide no evidence directly addressing market efficiency, such as a competing event study, and their arguments are off-point. Defendants' argument that the market price for Toyota ADRs did not always "correctly" reflect the security's "fundamental value" has been widely rejected, including in this District. *See*, *e.g.*, *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 611 (C.D. Cal. 2009) (emphasizing that the "fundamental value" version of efficiency "has been rejected by the cases"). Likewise, Defendants' "expert," Professor Gompers, offers no opinion on the salient issue of informational efficiency, and his fundamental value opinions were recently rejected out-of-hand as "not legally relevant" and a "different conception of an efficient market than is used by the law." *Lumen v. Anderson*, 280 F.R.D. 451 at \*7 (W.D. Mo. 2012). Nor do Defendants otherwise contend that the market for Toyota ADRs was inefficient during the Class Period. Under similar circumstances, Judge Alsop of the Northern District found "no reason to

deprive plaintiff the benefit of the fraud-on-the-market presumption." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 527 (N.D. Cal. 2009).

Even more troubling, Defendants' "predominance" challenge relies entirely on the report of its expert, whose credibility is dubious at best. In particular, Professor Gompers *falsely testified* in both his expert report and extensively at deposition that he performed a "robustness" check, which he claimed supported his "fundamental value" opinions. Yet, two weeks after his deposition, and only after being pressed for the documentation that he testified under oath evinced this "robustness" check, Professor Gompers *recanted* his sworn testimony, admitted that he never performed the analysis, and thus had "no way of knowing one way or another" the results of such test.[1] Not surprisingly, as the Rebuttal Report of Lead Plaintiff's expert demonstrates, the "robustness" test not only provides no support of Professor Gompers's conclusions, but instead, provides *additional support* for market efficiency.

At bottom, Defendants claim only that Lead Plaintiff has not provided *enough* evidence of market efficiency. As explained below and in more detail in the accompanying Coffman Rebuttal Report and other related filings, Defendants' arguments (and the opinions of their expert) only raise issues that are irrelevant to the legal standard of market efficiency and are routinely rejected by the courts.[2] Accordingly, because Lead Plaintiff has made a *prima facie* showing of market efficiency, which Defendants have failed to rebut, plaintiffs are entitled to a Class-wide presumption of reliance.

---

[1] Lead Plaintiff will be moving to exclude Professor Gompers' testimony and report pursuant to Fed. R. Evid. 702 and 703, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) (plaintiffs are not required to prove loss causation at class certification). Plaintiffs incorporate by reference all arguments made in Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Exclude Report of Chad Coffman and Lead Plaintiff's Motion to Exclude the "Expert" Report of Professor Gompers.

Moreover, because plaintiffs' fraud claims are grounded in Defendants' material *omissions*, reliance may also be presumed under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972).

Finally, if Defendants' arguments are accepted, the strong "national public interest" underlying the federal securities laws favoring class treatment will be severely undermined.[3] As the Supreme Court has made clear, private securities class actions like this one are "an essential supplement" to enforcing the securities laws and protecting the integrity of the U.S. capital markets.[4] Rejecting market efficiency for Toyota ADRs – a security that actively trades on the NYSE and is among the largest ADR programs – would be unprecedented in the Ninth Circuit and federal securities law jurisprudence. Indeed, *every* published decision addressing ADRs has found market efficiency.

## II.   ARGUMENT

### A.   Rule 23(a)'s Prerequisites Are Not Disputed

Defendants do not dispute that Rule 23(a)'s prerequisites are satisfied. Accordingly, the Court should find that: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims or defenses of Maryland SRPS are typical of the claims or defenses of the Class; and (4) Maryland SRPS and Lead Counsel will fairly and adequately protect the interests of the Class. *See* Fed. R. Civ. P. 23(a)(1)-(4).

### B.   Rule 23(b)(3)'s Requirements Are Also Satisfied

As established in Lead Plaintiff's opening brief, this action also meets all the requirements for class certification under Rule 23(b)(3): (1) "the questions of law or fact common to class members predominate over any questions affecting only

---

[3] *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 639 (N.D. Ala. 2009) (transactions on securities exchanges are "affected with a national public interest") (quoting, *inter alia*, the Securities Exchange Act of 1934).

[4] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Defendants do not dispute that a class action is superior to any alternative method of adjudicating this controversy. Defendants challenge only the "predominance" element of Rule 23(b)(3), namely, whether questions of individual reliance upon Defendants' alleged misstatements will predominate over questions common to all class members. As explained below, Defendants' challenge fails.

### 1. The *Basic* Presumption Of Reliance Is Established

In order to invoke the fraud-on-the-market presumption of reliance, plaintiffs need only show "the misstatements were publicly known," "the stock traded in an efficient market," and the transactions at issue "took place 'between the time the misrepresentations were made and the time the truth was revealed.'" *Halliburton*, 131 S. Ct. at 2185 (quoting *Basic*, 485 U.S. at 248, n.27). With respect to market efficiency, courts consistently apply the five *Cammer* factors. As demonstrated in Lead Plaintiff's opening brief, all five *Cammer* factors are satisfied here. Mot. at 18-19. While not required, Lead Plaintiff also submitted the expert report of Mr. Coffman, who analyzed each of the *Cammer* factors (as well as four additional factors that courts and academics have found helpful to the analysis of market efficiency) and performed an event study, which provides empirical evidence supporting his opinion that "there is a clear cause and effect relationship between new material public information about Toyota and the market price of its ADRs." Coffman Report, ¶¶18-64 (*Cammer* factors), ¶¶65-75 (additional factors).

Defendants do not dispute that all but the last of the five *Cammer* factors are satisfied here. With respect to *Cammer* factor five, Defendants do not argue that the market for Toyota ADRs was not informationally efficient. Defendants also do not claim that ADRs generally suffer some "anomaly" that renders any market for ADRs inefficient. Indeed, *every* published decision addressing an ADR market has found

efficiency.[5] Moreover, that Toyota ADRs trade on the NYSE is not just "probative" of efficiency, but alone creates a rebuttable presumption of efficiency.[6] In short, the market for Toyota ADRs during the Class Period was a paradigm of market efficiency.[7]

### 2. Defendants Fail To Rebut The *Basic* Presumption

Having established a presumption of reliance, the burden shifts to Defendants to prove that the market for Toyota ADRs was *not* efficient during the Class Period.[8] The salient inquiry is whether the market for Toyota ADRs during the Class Period "rapidly

---

[5] *See, e.g., LDK Solar*, 255 F.R.D. at 527; *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, at *13 (S.D.N.Y. 2012); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 99 (D. Conn. 2010); *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 574 (S.D.N.Y. 2008); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298 (S.D.N.Y. 2010); *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *1 (S.D.N.Y. Dec. 15, 2008); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 272 (S.D.N.Y. 2008); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 79 (S.D.N.Y. 2007); *In re Ashanti Goldfields Sec. Litig.*, 2004 WL 626810, at *19 (E.D.N.Y. Mar. 30, 2004); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002); *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 354-55 (S.D.N.Y. 2002); *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 478 (S.D.N.Y. 2002); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 208 (D.N.J. 1999); *Bharucha v. Reuters Holdings PLC*, 1993 WL 657863, at *5 (E.D.N.Y. Oct. 29, 1993).

[6] *See, e.g., Billhofer*, 2012 WL 928147, at *9 (a security "listed on the NYSE, AMEX, NASDAQ, or a similar national market" is presumed to trade in an efficient market); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 489 n.3 (S.D.N.Y. 2011) (same); *HealthSouth*, 257 F.R.D. at 281 (same).  Defendants' cases are in accord. *See In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 208 (E.D. Pa. 2008) ("Courts have routinely held that securities traded on the NYSE . . . trade in an efficient market").

[7] *See, e.g., Cammer,* 711 F. Supp. at 1286-87; *Countrywide*, 273 F.R.D. at 614 (the presence of well-informed institutional investors is supportive of market efficiency). As Maryland SRPS's investment managers explained at deposition, Lead Plaintiff invested in Toyota ADRs because, among other things, the Company "had supplanted GM as [the] number one car company in the world" and had a reputation for "quality" defect-free products, a "very strong balance sheet," "quality" financial statements and management, and the market for Toyota ADRs was a "well-developed market" with "enough liquidity." *See* Galdston Decl., Ex. 5 at 53:6-8, 107:4-7, 119:3-5; Ex. 6 at 30:14-15, 58:23-59:1.

[8] *See* Fed. R. Evid. 301; *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011) ("To rebut the presumption of reliance afforded to plaintiffs who establish a fraud on the market, a defendant has the burden of 'eliminat[ing] the possibility that a rational jury could find that the alleged misrepresentations and omissions misled the market.'") (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1376-78 (9th Cir. 1994)).

and fully impound[ed] all material, publicly available information." *See, e.g.*, *Countrywide*, 273 F.R.D. at 612. While Defendants and their expert concede that the market for Toyota ADRs satisfies the first four *Cammer* factors, they attempt to dismiss these factors as "irrelevant" or "largely descriptive" but not dispositive of market efficiency. *See* Gompers Report, ¶¶29-31, 55-62; Opp. at 10, 17-19. Defendants' contentions, however, defy more than two decades of class certification jurisprudence.[9] Indeed, many courts have found it unnecessary to consider **any** additional *Cammer* factors where, as here, a security trades on the NYSE - a presumptively efficient market.[10] Courts have also rejected Defendants' argument that the "cause and effect" test, alone, is dispositive of market efficiency. *See, e.g., In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1339 (N.D. Ga. 2007) (faulting defendants' expert report because it "relates only to one of the nine factors that courts have identified as important in determining market efficiency [*i.e.*, the cause and effect test]").

Significantly, Defendants do not contend that the Toyota ADR market was **inefficient** nor offer any evidence of their own that directly addresses informational efficiency.[11] Instead, Defendants challenge the admissibility of Mr. Coffman's expert report and claim that Lead Plaintiff has not provided **enough** evidence of efficiency.[12] As explained below, Defendants' arguments are premised on a "fundamental value"

---

[9] *See, e.g., Countrywide*, 273 F.R.D. at 612 (discussing "long line of courts that have relied on the *Cammer* factors").

[10] *See, e.g., Local 703, I.B. of T. Grocery and Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2012 WL 2318105, at *9 n.13 (N.D. Ala. June 14, 2012) [ECF No. 151] (unnecessary to "delve into" the *Cammer* factors because "the NYSE is recognized as the epitome of market efficiency."); *Cammer*, 711 F. Supp. 1292 ("certain markets [including the NYSE] are developed and efficient for virtually all the securities traded there").

[11] Defendants' expert admits that he "wasn't asked to affirmatively render an opinion on the market being inefficient" and that he did not perform "an independent daily event study." Galdston Decl., Ex. 3 at 57:19-21, 63:24-25.

[12] The Court can find the fraud-on-the-market presumption applies based solely on the undisputed elements of Rule 23 and the uncontested facts supporting efficiency, *i.e.*, regardless of the admissibility of Mr. Coffman's report. *See supra* Part II.B.1.

standard that is not relevant to the legal standard of informational efficiency and has been soundly rejected in the case law.

**Instances of Illiquidity**: Instead of addressing informational efficiency, Defendants' expert, Professor Gompers, examined certain minute-by-minute trading and preselected days that Defendants contend show purported "illiquidity." *Id.* at 61:7-8. Defendants argue that these purported "transitory" (*i.e.*, fleeting) "indicators of illiquidity" raise "questions" about market efficiency (Opp. at 19-24), but Defendants do not quantify such "instances" of illiquidity or provide any meaningful way to evaluate their magnitude or pervasiveness during the Class Period, or as compared to the market for any comparable large-cap stock. In truth, as explained in Mr. Coffman's Rebuttal Report and summarized below, the "instances" identified by Defendants' expert are measured in seconds or minutes, are commonplace in all large developed markets, are not unique to Toyota ADRs, actually confirm that the Toyota ADR market overall was able to absorb large transactions without significant price disturbances, and thus, provide no support for Defendants' arguments. *See also, e.g.*, *Countrywide*, 273 F.R.D. at 610-12 ("Efficiency is not an all-or-nothing phenomenon" and the district court must draw lines "sensibly" to determine "whether a market processes information in such a way as to justify investor reliance") (quoting *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 14-18 (1st Cir. 2005). Moreover, "illiquidity" is not equivalent to inefficiency, as Defendants acknowledge.

**Bid-Ask Spreads**: Defendants' bid-ask spread analysis (Opp. at 20-24), a metric often used to assess market depth and liquidity, is highly misleading and fundamentally flawed. As explained in Mr. Coffman's Rebuttal Report, Defendants' expert calculated and compared bid-ask spreads in absolute dollar terms without taking into account the widely divergent trading prices of Toyota ADRs and its "peer" firms. Professor Gompers compared the bid-ask spread for Toyota ADRs, which traded as high as $106.82 per share during the Class Period, to the bid-ask spread for stocks that traded at a fraction of that price, such as Ford Motor Co. which traded as low as $1.01 per share

during the Class Period, but made no adjustment for this enormous price difference. Not surprisingly, the bid-ask spread for higher-priced stocks when expressed in absolute dollar terms is greater – often in multiples – when compared to lower-priced stocks. As explained in Mr. Coffman's Rebuttal Report, when correctly calculated as a percentage of market price, the bid-ask spread for Toyota ADRs compared favorably against both price and industry peers, fully consistent with market efficiency.

Notably, Professor Gompers *recanted sworn testimony* in his expert report and in deposition that he performed a "robustness" test to account for such enormous share prices differences, and *admitted* that he never performed such a cross-check. Galdston Decl., Ex. 4. It is not surprising that Professor Gompers now claims he never performed any percentage analysis. As explained in the Coffman Rebuttal Report, the results of this "robustness" check fully support market efficiency and directly refute Professor Gompers's "expert" opinions.

**Institutional Trading Behavior:** Defendants speculate "that institutional investors . . . could not execute large block trades efficiently in the ADS market" and "voted with their feet" by converting ADRs to common stock, even incurring transaction costs.[13] But, Defendants' expert admits he assumed but did *nothing* to inquire why any institutional investor may have converted shares, whether those shares were subsequently held or sold, or whether transaction costs (which are discretionary) actually were incurred. Galdston Decl., Ex. 3 at 199:4-201:23. Similarly, Professor Gompers did nothing to rule out any *other* reasons why institutional investors might convert ADRs to common stock, such as internal trading policies, hedging or risk

---

[13] Opp. at 22-24. Defendants' contention (Opp. at 23 n.7) that the Class should exclude investors who converted ADRs to common stock or *vice versa* during the Class Period is misplaced. The Class, as defined, includes only investors who purchased or otherwise acquired ADRs during the Class Period and held the security (whether as an ADR or converted to equivalent ordinary shares) through a corrective disclosure. This definition comports with the Supreme Court's "transaction test" in *Morrison v. Nat'l Austl. Bank, Ltd.*, 130 S. Ct. 2869 (2010).

management, currency concerns, or dividend policies – none of which suggest "illiquidity," let alone inefficiency.

Significantly, Defendants' arguments about instances of "illiquidity" and whether the market for Toyota ADRs always "accurately" or "correctly" reflected the "correct fundamental value" of the security fail to directly address the core question of market efficiency, and Defendants cite no court that has found "illiquidity" dispositive of informational efficiency. As noted above, nearly identical arguments raised by the ***same defense expert*** were recently rejected as "not legally relevant" and "not the sort of market needed to support the fraud on the market described in *Basic*." *Lumen*, 2012 WL 444019, at *7-8 (granting class certification).

Defendants' reliance on two decisions finding that the plaintiffs in those cases failed to establish the *Basic* presumption is misplaced. *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 2012 WL 1028642 (S.D.N.Y. Mar. 27, 2012) declined to certify the class because plaintiff's expert study "contained several significant errors" and "other serious errors" (*id*. at *5) and, even after an opportunity to correct those errors, plaintiffs' second study contained some of the same errors and additional errors. *Id*. at *6. The *Freddie Mac* court concluded that plaintiffs' expert's "analysis changed so many times in important ways and was so internally inconsistent" it was "unreliable and unpersuasive." *Id*. at *8. No such errors, inconsistencies, or poorly supported opinions exist here. Indeed, Mr. Coffman's Rebuttal Report only confirms his original analysis and finding of market efficiency.[14] Similarly, *Dean v. China Agritech*, *Inc*., 2012 U.S. Dist. LEXIS 70683, (C.D. Cal. May 3, 2012) found that the second and fifth *Cammer* factors were not satisfied, whereas here, the second *Cammer* factor is not even disputed. Critically, as to the fifth *Cammer* factor, because "[p]laintiffs' own experts differ in their conclusions," the *Agritech* court found

---

[14] Moreover, in *Freddie Mac*, plaintiffs subsequently sought reconsideration and filed a notice of appeal, and while on appeal, plaintiffs' motions were mooted when the court granted leave to file a second amended ***class action*** complaint.  Galdston Decl., Ex. 7.

plaintiffs failed to meet their burden. *Id*. at *19-20. *China Agritech* has no bearing here.

### 3. The *Affiliated Ute* Presumption Also Applies

Finally, this case concerns Defendants' omission to disclose a dangerous unintended acceleration condition in Toyota vehicles, and is thus entitled to the *Affiliate Ute* presumption of reliance. As the Supreme Court explained, in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."[15] Here, there can be no question that a reasonable investor would consider an undisclosed dangerous unintended acceleration condition and numerous defects material. *See In re Toyota Motor Corp. Sec. Litig*, 2011 WL 2675395, at *4 (C.D. Cal. July 7, 2011). District courts have repeatedly held that a presumption of reliance applies for securities fraud claims where defendants fail to disclose defects.[16] Accordingly, a presumption of reliance is independently warranted under *Affiliated Ute*.

### III. CONCLUSION

For the foregoing reasons and as explained in Lead Plaintiff's opening brief, the Class should be certified pursuant to Rule 23(a) and (b), Lead Plaintiff Maryland SRPS should be appointed Class Representative, and Bernstein Litowitz Berger & Grossmann LLP should be appointed Class counsel.

---

[15] *Affiliated Ute*, 406 U.S. at 153; *see also Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999) ("We have applied the *Affiliated Ute* presumption to cases that 'are, or can be cast in omission or non-disclosure terms.'"); *Cartwright v. Viking Indus. Inc.*, 2009 WL 2982887, at *14 (E.D. Cal. Sept. 14, 2009) (reliance is presumed where the plaintiffs "have *primarily* alleged omissions, even though the [p]laintiffs allege a mix of misstatements and omissions.") (emphasis in original).

[16] *See, e.g., Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 625-26 (C.D. Cal. 2008); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004).

Dated: August 2, 2012

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP


　　　/s/ Blair A. Nicholas　　　

BLAIR A. NICHOLAS
(blairn@blbglaw.com)
BENJAMIN GALDSTON
(beng@blbglaw.com)
DAVID KAPLAN
(davidk@blbglaw.com)
JOSEPH W. GOODMAN
(joseph.goodman@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:    (858) 793-0323
　　-and-
GERALD H. SILK
(jerry@blbglaw.com)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:     (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System and Lead Counsel for the Class*


FAIRBANK & VINCENT
ROBERT H. FAIRBANK
(rfairbank@fairbankvincent.com)
DIRK L. VINCENT
(dvincent@fairbankvincent.com)
444 S. Flower Street, Suite 3860
Los Angeles, CA 90071
Tel:     (213) 891-9010
Fax:    (213) 891-9011

*Liaison Counsel for the Class*

MARYLAND OFFICE OF ATTORNEY
 GENERAL
DOUGLAS F. GANSLER
Attorney General of Maryland
JOHN J. KUCHNO
Assistant Attorney General
(jkuchno@oag.state.md.us)
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
Tel:    (410) 576-7291
Fax:    (410) 576-6955

*Counsel for Lead Plaintiff Maryland State Retirement and Pension System*