# EXHIBIT B

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| : | |
| : | **Hon. Dennis M. Cavanaugh** |
| IN RE SCHERING-PLOUGH : | |
| CORPORATION/ ENHANCE : | **OPINION** |
| SECURITIES LITIGATION : | |
| : | Civil Action No. 8-397 (DMC)(JAD) |
| : | |

**DENNIS M. CAVANAUGH, U.S.D.J.**

This matter comes before the Court on Lead Plaintiffs' Amended Motion for Class

Certification, for the Appointment of Plaintiffs as Class Representatives, and for the Appointment

of Co-Lead Counsel, Labaton Sucharow LLP ("Labaton") and Bernstein Litowitz Berger &

Grossman LLP ("BLBG") as Class Counsel. ECF No. 241. Pursuant to FED. R. CIV. P. 78, nor oral

argument was heard. Based on the submissions of the parties, and for the reasons expressed herein,

it is the decision of this Court that Lead Plaintiffs' Motion is **granted**, and the Court certifies a class

as defined below.

## I.    BACKGROUND

This putative class action concerns alleged misrepresentations and omissions relating to a

clinical trial of prescription drug products. Lead Plaintiffs are the Massachusetts Pension Reserves

Investment Management Board ("Mass PRIM"), the Arkansas Teacher Retirement System

("ATRS"), the Mississippi Public Employees' Retirement System ("MPERS"), and the Louisiana

Municipal Police Retirement System ("LMPERS") (collectively "Plaintiffs" or "Lead Plaintiffs").

Defendants are the Schering-Plough Corporation ("Schering") and a large group of defendants

known as the "Underwriter Defendants" (Schering and the Underwriter Defendants are collectively referred to as "Defendants").[1]

Plaintiffs' allegations concern the ENHANCE clinical trial of prescription drug products that Merck & Co., Inc. ("Merck") co-marketed with Schering through the joint venture Merck/Schering-Plough Pharmaceuticals, MSP Distribution Services (C) LLC, MSP Singapore Company LLC (collectively, "M/S-P"). The ENHANCE study compared patients who were prescribed Vytorin, a fixed-dose combination pill containing the anti-cholesterol agent Zetia and the drug Zocor (the active ingredient of which is simvastatin), with patients who were prescribed a pill only containing Zocor. The study intended to compare the relative effectiveness of Vytorin and Zocor on reducing arterial plaque, as measured by changes in carotid artery intima-media thickness ("CA IMT"). Defendants expected the study to demonstrate that Vytorin's combination of Zetia and Zocor would stop or reduce the growth of fatty arterial plaque more than Zocor alone.

Plaintiffs allege that Schering knew or recklessly disregarded, but did not disclose, the results of the ENHANCE study, which showed that Vytorin was in fact no more effective at reducing CA IMT than simvastatin alone. Plaintiffs allege that Schering knew the results of the ENHANCE test well before the results were "un-blinded," but withheld that information in order to forestall any negative implications the results would have on Defendants' common stock price. According to

---

[1] The Underwriter Defendants include ABN AMRO Rothschild LLC; Banc of America Securities LLC; Banca IMI SpA; BBVA Securities Inc.; Bear, Stearns & Co. Inc. (now J.P. Morgan Securities LLC); BNP Paribas Securities Corp.; BNY Capital Markets, Inc.; Citigroup Global Markets, Inc.; Credit Suisse Securities (USA) LLC; Daiwa Securities America Inc. (now Daiwa Capital Markets America Inc.); Goldman, Sachs & Co.; ING Financial Markets LLC; J.P. Morgan Securities Inc. (now J.P. Morgan Securities LLC); Mizuho Securities USA Inc.; Morgan Stanley & Co. Incorporated (now Morgan Stanley & Co. LLC); Santander Investment Securities Inc.; and The Williams Capital Group, L.P.

Plaintiffs, Schering used the pretext of data issues to delay the release of the results, and simultaneously made public statements actually touting the ENHANCE study and the purportedly greater medical benefits of Vytorin over simvastatin alone.

On January 14, 2008, apparently in response to growing criticism over the delay in releasing the ENHANCE results, Merck and Schering released what Plaintiffs call "selected top-line results" of the ENHANCE study, which showed that Vytorin failed to reduce the buildup of arterial plaque more than simvastatin alone. Around that same time, reports were published about Congressional and regulatory investigations into improper marketing and advertising of Vytorin in connection with the ENHANCE study. In response to this news, Schering's stock price fell approximately 8%, removing approximately $3.5 billion in market capitalization.

Plaintiffs contend that Defendants' improper actions continued beyond these dates. According to Plaintiffs, the response of investors, analysts, and the medical community was tempered by Defendants' appeal to wait for the release of the full ENHANCE results. This release occurred on March 30, 2008, which again showed that Vytorin provided no benefit over generic simvastatin alone in reducing plaque buildup in the arteries. This release also showed that the Vytorin portion of the study actually experienced an increase in arterial plaque. A panel of experts then released a statement calling for cardiologists to rein in the use of Zetia and Vytorin. Following the release of this news, Schering's stock price again dropped, this time by approximately 26%, erasing approximately $8.2 billion in market capitalization.

A group of plaintiffs filed the original Complaint in this action on January 18, 2008. ECF No. 1. In an Order dated April 18, 2008, the Court appointed Mass PRIM, ATRS, MPERS, and LMPERS as Lead Plaintiffs, and appointed Labaton and BLBG as Co-Lead Counsel. ECF No. 30.

Plaintiff's filed the currently operative Amended Complaint ("AC") on September 15, 2008. ECF No. 52. The AC asserts claims under Section 10(b), 20(a), and 20A of the Exchange Act and Sections 11, 15, and 12(a)(2) of the Securities Act.

Plaintiffs filed the present Amended Motion to Certify Class on September 22, 2011, seeking to certify a Class defined as:

> All persons and entities that purchased or acquired Schering common stock, or call options, and/or sold Schering put options, during the period between January 3, 2007 through and including March 28, 2008, and who were damaged thereby.

> Excluded from the Class are: (a) Defendants; (b) members of the immediate families of the Individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person or entity who was a partner, executive officer, director, or controlling person of Schering, M/S-P or Merck (including any of their subsidiaries or affiliates), or any other Defendants; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors and assigns of any such excluded party.

Schering filed Opposition to Plaintiffs' Motion on December 6, 2011, contending that the proposed Class Period is too long, that the proposed Class cannot include "in and out" traders or options traders, and that none of the Lead Plaintiffs are "typical" or "adequate." ECF No. 255. The Underwriter Defendants also filed Opposition on December 6, 2011, contending that Plaintiffs have not met their burden of establishing standing to pursue their claims under Sections 11 and 12 of the Securities Act. ECF No. 251. Plaintiffs filed a Reply on January 31, 2012. ECF No. 262.[2] The matter is now before this Court.

---

[2] The parties have also requested and submitted supplemental briefing in this matter. ECF Nos. 264, 266, 267. The Court has reviewed the parties' submissions to that effect, and is aware of their contentions.

## II.   LEGAL STANDARDS

Class certification under FED. R. CIV. P. 23 has two primary requirements.  First, pursuant to Rule 23(a), the party seeking class certification must demonstrate the existence of numerosity of the class, commonality of the questions of law or fact, typicality of the named parties' claims or defenses, and adequacy of representation.  Second, the party must demonstrate that the class fits within one of the three categories of class actions set forth in FED. R. CIV. P. 23(b).  Rule 23(b)(1) allows certification of a class if prosecuting separate actions would result in prejudice either to Plaintiff or Defendants.  In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D.Pa. 200).  Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole.  Certification under Rule 23(b)(3) is permitted when the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008) (quoting FED. R. CIV. P. 23(b)(3)).  "The twin requirements of Rule 23(b)(3) are known as predominance and superiority."  Id.

## III.   DISCUSSION

### A.   FED. R. CIV. P. 23(a)

1. Numerosity

The numerosity element is met where the class is so numerous that joinder of all class members is impracticable.  The Third Circuit has advised that the numerosity requirement is satisfied

-5-

where the proposed class consists of "more than 90 geographically dispersed plaintiffs." Eisenberg v. Gagnon, 766 F.2d 770, 785-86, cert. denied, 424 U.S. 946 (1985). Further, this Court has previously recognized that numerosity is "obviously" present where the securities issuer is "a large and prominent publicly held company, and its SEC filings confirm that its shareholders number in the thousands." In re Honeywell Int'l, 211 F.R.D. 255, 260 (D.N.J. 2002). In this instance, Plaintiffs clearly have satisfied this element. Schering was a large, publicly-held company traded on the New York Stock Exchange ("NYSE"), and there were between approximately 1.48 and 1.62 billion shares of Schering common stock outstanding during the Class Period. Accordingly, the numerosity element is met.


  2. Commonality

  Rule 23(a)(2) states that commonality exists if "there are questions of law or fact common to the class." All claims or facts do not have to be common to all class members, and "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). Further, "factual differences among the putative claims of the class members will not defeat certification." Id. at 56. Lastly, with respect to the this criteria, the United States Court of Appeals for the Third Circuit "has recognized that courts have set a low threshold for satisfying this requirement." Georgine v. Amchem Prods. Inc., 83 F.3d 610, 627 (3d Cir. 1996).

  Here, Plaintiffs have easily surpassed this low bar. "Where [a]ll plaintiffs, both individual representatives and member of the class, seek to establish the defendants' fraudulent conduct under the federal securities laws, commonality is found to exist." In re Loewen Gorup Sec. Litig., 233

F.R.D. 154, 162 (D.Pa. 2005). Further, in a securities fraud class action, "questions of misrepresentation, materiality and scienter are the paradigmatic common question[s] of law or fact . . . ," and therefore, "the commonality requirement has been permissively applied in the context of securities fraud class actions." In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 296 (D. Del. 2003). This securities fraud class action involves questions such as whether Defendants' alleged statements and omissions were misleading, whether these statements and omissions were material, and whether Defendants acted with scienter. Accordingly, the commonality element is met.

### 3. Typicality

To satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Weisfeld v. Sun Chem. Corp., 210 F.R.D. 136, 140 (D.N.J. 2002) (citing Baby Neal, 43 F.3d at 57). The requirement is satisfied as long as the Lead Plaintiffs, the other representatives, and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief." In re Lucent Techs., Inc. Sec. Litig., 307 F. Supp. 2d 633, 640 (D.N.J. 2004). As with the commonality requirement, "factual differences between the claims of the putative class members do not defeat certification." Baby Neal, 43 F.3d at 56. Further, "[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all

-7-

members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." Sun Chem., 210 F.R.D. at 140 (quoting In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)).

Typicality is only destroyed "where the defenses against named plaintiffs are likely to consume a significant portion of the litigant's time and energy and where there is a danger that preoccupation with defenses unique to the representatives will cause absent class members to suffer." In re Sys. Software Assocs., Sec. Litig., No. 97-177, 2000 U.S. Dist. LEXIS 18285, *6 (D. Ill. Dec. 6, 2000). The Third Circuit has held that in order to defeat class certification, a defendant must show the "likelihood a unique defense will play a significant role at trial." Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir. 2006). It is worth noting that "a unique defense is merely a factor that informs the court's decision on class certification and need not destroy typicality." In re Sys., 2000 U.S. Dist LEXIS 18285, at *6.

There is no question that Plaintiffs "point to the same broad course of alleged fraudulent conduct" with respect to each Lead Plaintiff and the class. In this instance, Schering challenges the typicality requirement by arguing that each Lead Plaintiff did not actually rely on the ENHANCE results, and that each Lead Plaintiff is subject to other unique defenses. The Court will address each argument in turn.

Plaintiffs seek to establish the reliance element of their claims with the "fraud-on-the-market" theory. Under this theory, Plaintiffs may be entitled to a rebuttable presumption of reliance "when a fraudulent misrepresentation or omission impairs the value of a security traded in an efficient market." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 175 (3d Cir. 2001). The first question on this issue is therefore whether the Schering stock was traded on an efficient

market.    To make such a determination, the Court looks to several factors, including (1) the existence of a large weekly trading volume; (2) the existence of a significant number of analyst reports; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 registration statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases.  Cammer v. Bloom, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989).  Schering has not challenged that the stock was traded on an efficient market; rather, Schering only argues that the presumption established by each Lead Plaintiff has been rebutted.  Accordingly, the Court will only briefly discuss the above stated Cammer factors, before turning to Defendants' rebuttle arguments.

As an initial matter, the Court notes that securities traded on the NYSE are routinely recognized as trading in an efficient market.  In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 208 (E.D.Pa. 2008) (citing Oran v. Stafford, 226 F.3d 275, 282 (3d Cir.2000)).  The fact that Schering's common stock is traded on the NYSE is of course not a per se indicator of market efficiency, but the Cammer factor analysis in this case once again shows that a stock traded on the NYSE is trading in an efficient market.  Under the first factor, an "average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; one percent would justify a substantial presumption."  Id. at 209 (citing Cammer, 711 F.Supp. at 1286)).  Plaintiffs' demonstrate that Schering stock traded at a volume closer to 4.18 percent for common stock, and 4.63 percent for preferred stock, well over the threshold justifying a "strong presumption," and this factor accordingly weighs in favor of an efficient market.   The analysts coverage also weighs in favor of an efficient market, given that analysts from a number of well known firms published reports on Schering's securities during the Class Period.  Schering was also

clearly eligible to file a Form S-3, as demonstrated by the fact that Schering filed a form S-3 when registering the preferred stock at issue in this case. Finally, Plaintiffs have sufficiently demonstrated the existence of a causal relationship between the announcement of unexpected news and an immediate response in the price of Schering common stock. This is evidenced by the drops in Schering stock in response to the events at issue, as discussed above, and is borne out by the "event study" submitted as evidence by Plaintiffs. Accordingly, the Court has no doubt that Schering stock traded on an efficient market, and that Plaintiffs are entitled to a presumption of reliance.[3]

Defendants argue that this presumption has been rebutted with respect to each individual Lead Plaintiff. In each instance, Defendants' arguments essentially boil down to the contention that the Lead Plaintiffs' mechanical index purchasing and basket trades did not rely on Defendants' alleged misstatements or omissions. The Court disagrees with the fundamental premise of this contention, however, and finds that the law fully supports the notion that index purchases and the like are in fact a perfect example of reliance on the market. As the Central District of California noted, "because index purchases seek only to match the index and exclude other considerations (such as, for example, reliance on nonpublic information or other idiosyncratic motivations), index purchases rely exclusively upon the market to impound any representations (including misrepresentations) into securities' prices." In re Countrywide Fin. Corp. Sec. Litig., 273 F.R.D. 586, 602 (C.D.Cal. 2009). Defendants' argument that none of the Lead Plaintiffs can establish

---

[3] "Because market makers are used only for securities traded on the NASDAQ or in the over-the-counter market, this factor is not relevant for our purposes." In re DVI Inc. Sec. Litig., 249 F.R.D. at 210.

reliance therefore fails to destroy the typicality of Lead Plaintiffs.

Defendants' challenge to the typicality element is not limited to the reliance arguments. Defendants also argue that each Lead Plaintiff is subject to certain unique defenses. Defendants' contentions fail, however, for the simple reason that the Court is not convinced that discussion of these defenses will play a significant role at trial. Defendants' Opposition only brings to light a handful of representatives from the various Lead Plaintiffs whose previous testimony may or may not prove damaging at trial, and the Court finds this insufficient to establish a likelihood that these defenses will prove a "major distraction," as Defendants suggest. Finally, to the extent that such defenses could play any role at trial, the Court again recognizes that this is merely a factor that informs the Court's decision, and need not destroy typicality. The Court therefore finds that the typicality requirement is satisfied.

### 4. Adequacy

Finally, the adequacy requirement is met where the class representatives' interests are not adverse to those of other members of the class, and the class representative is represented by attorneys who are qualified, experienced, and generally able to conduct the litigation. The Court has no doubt that the Class Counsel in this matter is qualified, experienced, and generally able to conduct the litigation, and Defendants do not challenge this issue. The other prong of the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent' and does not mandate that the interests of all class members be identical." La. Mun. Police Employees Ret. Sys. v. Dunphy, No. 3-4372, 2008 WL 700181, at *6 (D.N.J. March 13, 2008) (citing Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 625 (1997)). "A class cannot be

-11-

certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class" Id. (citing Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir.2000)). "Further, when Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met." Id. (citations omitted). In this matter, Lead Plaintiffs' claims are identical to those of the Class: they claim that they purchased Schering securities during the Class Period and have been injured by the allegedly wrongful course of conduct at issue. The Court is therefore satisfied that the adequacy requirement is met.

**B.    FED. R. CIV. P. 23(b)**

Lead Plaintiffs seek certification under Rule 23(b)(3), which is permissible when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3).

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hydrogen Peroxide, 552 F.3d at 311 (quoting Windsor, 521 U.S. at 623). "It requires more than a common claim . . . rather, issues common to the class must predominate over individual issues." Neale v. Volvo Cars of N. Am., LLC, No.10-4407, 2011 U.S. Dist. LEXIS 39154, at *5 (D.N.J. April 11, 2011) (citations omitted). "Because the nature of the evidence that will suffice to resolve the question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a

-12-

given case." Id. (citations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. at *5-6 (citations omitted).

As discussed at length above, the reliance inquiry in this matter is the primary issue, and given Plaintiffs' use of the fraud-on-the-market theory, common questions of Defendants' alleged misrepresentations and how those statements and omissions affected Schering stock during the class period will be the critical and predominant issues at trial.

The superiority inquiry requires a balancing, based on fairness and efficiency, of the merits of a class action against those of alternative methods of adjudication. Georgine, 83 F.3d at 632. "One consideration is the economic burden class members would bear in bringing suits on a case-by-case basis." In re Ins. Brokerage Antitrust Litig., No. 4-5184, 2012 WL 1071240, at *12 (D.N.J. March 30, 2012). Another such consideration is judicial economy; for example, "[i]n a situation where individual cases would each require weeks or months to litigate, would result in needless duplication of effort by all parties and the Court, and would raise the very real possibility of conflicting outcomes, the balance may weigh heavily in favor of the class action." Id. (citations and internal quotation marks omitted).

This is a classic example of a case that warrants class action. Plaintiffs seek to represent large Class of securities purchasers who are geographically dispersed and whose individual damages may well be small enough to render individual litigation prohibitively expensive. Further, given the amount of Class members, individually litigating these matters could certainly raise the possibility of conflicting outcomes. Accordingly, the Court finds that this action satisfies the requirements of Rule 23(b)(3), and the Court will certify this matter as a class action.

## C.   Defendants' Remaining Contentions

1. Length of the Class Period

Having determined that this matter should be certified as a class action, the Court must now define that Class. The primary issue raised by Defendants in this regard is their argument that "Plaintiffs seek a class period that is at least two and one-half months too long." Defs.' Opp'n Br. 12. Stating that the issue is "whether the disclosure is sufficiently robust such that 'facts which underlie the gravamen of the plaintiff's complaint [no longer] continue to represent a reasonable basis on which an individual purchaser or the market would rely,'" Defendants argue that the January 14, 2008 disclosure marks the appropriate end date for the class. Defs.' Opp'n Br. 12-13 (citing In re Data Access Sys. Sec. Litig., 103 F.R.D. 130, 143-44 (D.N.J. 1984)). According to Defendants, the fraud alleged by Plaintiffs is Defendants' purported failure to disclose the results of the ENHANCE trial and that Vytorin was no more effective than Zocor alone in reducing plaque build up in the carotid arteries. Defendants state that this is exactly what was disclosed on January 14, 2008, that this disclosure and ENHANCE's failure was widely known and reported, and that no reasonable investor would purchase Schering stock after that date under the mistaken view that the ENHANCE trial was a success. Accordingly, Defendants argue that the class period must close on January 14, 2008.

Defendants take issue with Plaintiffs' conclusion that the January 14, 2008 disclosure was only "partial," and further argue that Plaintiffs' proposed end date of March 28, 2008 should be rejected for a number of reasons. Defendants' first argument on this point cites to Alaska Elec. Pension Fund v. Pharmacia Corp. for the proposition that "as a matter of law, the class period terminates upon a curative disclosure when 'investors should have known that there was a possibility

-14-

that defendants' claims were false.'" Defs.' Opp'n Br. 17 (citing <u>Pharmacia</u>, 554 F.3d 342, 351 n.11 (3d Cir. 2009)). Defendants note that in <u>Pharmacia</u>, the Third Circuit held that an earlier disclosure of alleged fraud discussed in a major national newspaper closed the class period, finding that following that publication it was no longer "reasonable for plaintiffs to rely upon defendants' statements," and that any subsequent disclosures were "different in only degree, and not in kind." Defs.' Opp'n Br. 22 (citing <u>Pharmacia</u>, 554 F.3d at 346, 351 & n.11). Defendants therefore argue that following the January 14, 2008 disclosure, investors "should have known there was a possibility" of fraud, and that any subsequent disclosures were different only in degree. Defs.' Opp'n Br. 22-23.

Defendants' second disagreement with Plaintiffs' proposed end date is that the more detailed statistical information Plaintiffs point to was in fact not new information, and was not information Defendants allegedly knew, but failed to disclose. Defs.' Opp'n Br. 23. According to Defendants, the only "new" information Plaintiffs cite to, that Vytorin actually increases plaque buildup, was already disclosed on January 14, 2008. Defs.' Opp'n Br. 23. Further, Defendants argue that the "more detailed statistical information" is actually irrelevant anyways, because Plaintiffs mistake a partial disclosure of the ENHANCE clinical results with a partial disclosure of the alleged fraud. Defs.' Opp'n Br. 23.

Finally, with respect to Plaintiffs' proposed end date, Defendants take issue with Plaintiffs' assertion that the January 2008 release was tempered by Schering's appeal to wait for the release of the full ENHANCE results. Defs.' Opp'n Br. 24. Defendants argue that Plaintiffs do not point to a single statement in which Defendants assert that the trial results disclosed on January 14 were wrong, or that any of Defendants' statements concerning those results were untrue. Defs.' Opp'n

Br. 24-25.

Each of Defendants' contentions on this point argues, as a central premise, that the January 14, 2008 disclosure "cured" any prior misrepresentations. The problem with these contentions, however, is that they are simply premature. Whether a disclosure actually cured any previous misrepresentations is a fact sensitive inquiry, and is more appropriately resolved after sufficient fact finding. See, e.g., In re LDK Solar Sec. Litig., 255 F.R.D. 519, 529 (N.D.Cal. 2009) ("whether or not a particular release or disclosure 'actually cured a prior misrepresentation' is a sensitive issue to rule on at this early stage of the proceedings because it comes so close to assessing the ultimate merits in the case, and courts therefore decline to find reliance thereafter 'unreasonable, as a matter of law,' unless there is 'no substantial doubt as to the curative effect of the announcement.'") (citing In re Federal Nat. Mortg. Ass'n Sec., Derivative and " ERISA" Litig., 247 F.R.D. 32, 38 (D.D.C.2008)). Accordingly, the Court will not limit the Class Period to Defendants' suggested time period. Rather, the Court agrees with Plaintiff that the Class Period should extend from December 6, 2006 through and including and March 28, 2008.

### 2. "In and Out" Traders

Defendants also seek to exclude so called "in and out" traders from the Class definition. Defendants note that it is "well established that shareholders cannot seek recovery unless they were damaged by the alleged fraud." Defs.' Mot. Br. 27 (quoting In re FleetBoston Fin. Corp. Sec. Litig., No. 02-5461, 2007 WL 4225832, at *11 (D.N.J. Nov. 28, 2007). Accordingly, Defendants assert that shareholders who sold their shares while the company stock was allegedly inflated, and before any disclosure corrected that inflation, cannot be included in the class because they have not been

damaged.  Plaintiffs have already conceded this point, however, and the Court need not delve deeply

into the issue.  See Pl.'s Reply Br. 27 n.29.  Accordingly, the Court's definition of the Class will

exclude "in and out" traders.


3. Options Traders and Preferred Stock Traders

Finally, Defendants ask this Court to exclude options traders and preferred stock traders from

the Class, arguing that none of the Lead Plaintiffs has standing to represent options traders or traders

of preferred securities.  To this end, Defendants assert that no Lead Plaintiff purchased any Schering

options during the class period, and that no Lead Plaintiff has shown a loss on preferred securities

issued by Schering.  Defendants rely on In re Bank of America Corp. Sec., Derivative, and Employee

Retirement Income Security Act (ERISA) Litig., No. 9-2058, 2011 WL 3211472, (S.D.N.Y. July 29,

2011), for its holding that plaintiffs did not have standing to bring claims on behalf of a class that

invested in options and preferred stock that plaintiffs themselves did not trade during the class

period.  In this instance, however, the Court finds that Lead Plaintiffs do have standing to represent

options and preferred stock traders.  The Eastern District of Pennsylvania addressed nearly this exact

same issue, confronting the argument by defendants that "common stock holders have interests that

diverge from proposed members who held options."  In re Tel-Save Sec. Litig., No. 98-3145, 2000

U.S. Dist. LEXIS 10134, at *18 (E.D. Pa July 19, 2000).  The court disagreed with this argument,

finding that "option traders have standing under Rule 10(b) to seek damages for the affirmative

misrepresentations that Defendants allegedly made, just as holders of common stock do.  Both option

and stock holders have an interest in proving that stock prices were artificially inflated by

-17-

defendants' material misrepresentations and omissions." Id. at *18-19.[4] Similarly, this District has previously approached the issue as well, holding that a lead plaintiff "may represent purchasers of securities other than common stock because the claims of those purchasers arise from the same alleged fraud as the claims of the common stock purchasers." In re Cendant Corp. Litig., 60 F. Supp. 2d 354, 376 (D.N.J. 1999). That opinion went on to note that "[w]here the claims of absentee class members arise out of the same basic allegations of fraud as those of the lead plaintiff, the lead plaintiff may adequately represent the interests of those absentee class members." Id. (citing In re Prudential, 148 F.3d 283, 313 (3d Cir. 1998)).

The gravamen of Plaintiffs' allegation is the same whether Lead Plaintiffs purchased common stock, preferred stock, or options; that is, Lead Plaintiffs need to prove, inter alia, that Defendants made material misstatements and/or omissions regarding the ENHANCE trial. Accordingly, the Court finds that Lead Plaintiffs may represent options traders and preferred stock traders, and the Court will not exclude those traders from the class.

## D.      The Underwriter Defendants' Standing Arguments

Finally, the Court turns to the Underwriter Defendants' arguments that Plaintiffs have not met their burden of establishing standing, as is required under FED. R. CIV. P. 23. Underwriter Defendants' Br. 6 (citing Lewis v. Casey, 518 U.S. 343, 357-58 (1996). Specifically, the Underwriter Defendants argue that ATRS, the only Lead Plaintiff asserting claims under Sections

---

[4] That opinion went on to note that lead plaintiffs in that instance did purchase both common stock and options. However, the logic of that opinion, that "[both option and stock holders have an interest in proving that stock prices were artificially inflated" by the defendants' fraud, still properly guides this Court's analysis.

11 and 12(a)(2) of the Securities Act, does not have standing to assert such claims. The Underwriter Defendants also argue that Plaintiffs' proposed Class is over-broad generally. The Court will address each argument in turn.

The Underwriter Defendants note that Section 11 of the Securities Act provides a remedy for investors who purchase a security pursuant to a registration statement only if there is a material misrepresentation or omission in the statement, and the security purchased is sold for a loss or is worth less than the purchase price at the time of the suit. Underwriter Defendants' Br. 6-7 (citing 15 U.S.C. § 77k. The Underwriter Defendants thus note that a plaintiff "cannot establish a cognizable loss if it sold its shares for more than the offering price." Underwriter Defendants' Br. 7 (citing In re Initial Pub. Offering Sec. Litig., 241 F.Supp.2d 281, 351 (S.D.N.Y. 2003)). The Underwriter Defendants present two arguments in favor of their contention that ATRS cannot establish standing for its Section 11 claims. First, the Underwriter Defendants argue that ATRS purchased Schering common stock before and after the Class period, and those holdings were commingled with stock purportedly purchased in the 2007 offering. The Underwriter Defendants thus argue that ATRS cannot distinguish between these stocks, and cannot trace its holdings to show that securities purchased in the 2007 offering were later sold at a loss. Second, the Underwriter Defendants argue that ATRS suffered no cognizable losses with regard to the 2007 Preferred Securities because it effectively paid an uninflated price for them. According to the Underwriter Defendants, ATRS "effectively invested in securities that were not alleged to be inflated (the 2004 Preferred Securities), sold them at an inflated price . . . profited from the alleged fraud, and then reinvested those profits in the 2007 Preferred Securities." Underwriter Defendants' Br. 14-15.

With respect to the argument that ATRS cannot trace its damages to the 2007 offering, the

Court finds this argument premature. The Underwriter Defendants do not direct the Court's attention to any law indicating that a plaintiff is required to trace Section 11 damages in order to establish standing. Further, to the extent that this would be a requirement, the Court finds this to be a highly fact sensitive inquiry, and better resolved at a later stage in these proceedings.

While the Court finds the tracing argument to be merely premature, the Court finds the Underwriter Defendants' argument that ATRS effectively paid an uninflated price for the 2007 Preferred Securities to be devoid of merit. Whether ATRS realized a gain on its sale of earlier purchased securities is simply irrelevant to whether ATRS suffered a loss with regard to the securities at issue. The concern is not where Plaintiffs' funding to purchase the securities came from; rather, the concern is what happened as a result of the alleged fraud. Accordingly, the Court finds that ATRS does have standing to pursue its Section 11 claims.

The Underwriter Defendants also challenge Plaintiffs' standing to pursue claims under Section 12(a)(2) of the Securities Act, reasserting the same arguments used with respect to the Section 11 claims, and also challenging the ability of ATRS to pursue a claim for shares purchased in the secondary market. The Court rejects the first set of arguments for the same reasons as it does for the Section 11 claims: these arguments are either premature or without merit. With respect to the later argument, the Underwriter Defendants cite to In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 274 (3d Cir. 2006) for the proposition that defendants may be entitled to judgment on Section 12(a)(2) claims should they eventually prove that the shares came from the secondary market. Underwriter Defendants' Br. 17. The later argument fails because it too is premature. The parties' arguments demonstrate that there is a significant factual dispute over whether or not ATRS purchased the 2007 Preferred Stock on the secondary market, and the Court will therefore decline

to consider the Underwriter Defendants' argument at this time.

Finally, the Underwriter Defendants assert that Plaintiffs class definition is overly broad. To this end, the Underwriter Defendants argue that not every member of the proposed Class can "trace" its shares to a materially untrue registration statement issued in connection with the offering, and these class members should therefore not be included. As with many of the arguments presented in both Schering's and the Underwriter Defendants' submissions, the Court finds this discussion to be premature. This is a fact issue more appropriately addressed at a later stage in the litigation. See, e.g., Freeland v. Iridium World Communications, Ltd., 233 F.R.D. 40, 46 (D.D.C. 2006) (". . . any difficulty by individual class members in tracing their particular aftermarket-purchased shares . . . is a secondary issue to be resolved after the predominant issue of [defendant's] liability has been decided. It would be inappropriate to foreclose . . . class action format simply because some of their cases may be difficult to prove.").

## E.     The Class

For the reasons stated herein, the Court certifies this matter as a class action, and approves the definition of a Class as follows:

All persons and entities that purchased or acquired Schering common stock, or call options, and/or sold Schering put options, during the period between January 3, 2007 through and including March 28, 2008, and who did not sell their stock and/or options on or before January 14, 2008, and who were damaged thereby.

Excluded from the Class are: (a) Defendants; (b) members of the immediate families of the Individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person or entity who

was a partner, executive officer, director, or controlling person of Schering, M/S-P or Merck (including any of their subsidiaries or affiliates), or any other Defendants; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors and assigns of any such excluded party.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **granted**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:    April 25, 2012
Orig.:   Clerk
cc:      All Counsel of Record
         Hon. Joseph A. Dickson, U.S.M.J.
         File

-22-