In re Toyota Motor Corporation Securities Litigation
No. 10-CV-922 DSF (AJWx)

## ESCROW AGREEMENT
### (Re Settlement with Defendants)

THIS ESCROW Agreement is made this 17th day of December, 2012, between BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP ("Class Counsel" herein) and Valley National Bank (from time to time referred to herein as "Valley" or "Escrow Agent").

Class Counsel appoints said Escrow Agent with the duties and responsibilities and upon the terms and conditions provided in Schedule A and Schedule B annexed hereto and made a part hereof.

**ARTICLE FIRST**: The above-named parties agree that the following provisions shall control with respect to the rights, duties, liabilities, privileges and immunities of the Escrow Agent:

a)  The Escrow Agent shall neither be responsible for or under, nor chargeable with knowledge of, the terms and conditions of any agreement, instrument or document executed between the parties to the litigation, except as may be specifically provided in Schedule A annexed hereto. This Agreement sets forth all of the obligations of the Escrow Agent, and no additional obligations shall be implied from the terms of this Agreement or any other agreement, instrument or document.

b)  The Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. The Escrow Agent may act in reliance upon any signature believed by it to be genuine, and may assume that such person has been properly authorized to do so.

c)  Class Counsel, on behalf of its client, agrees to reimburse the Escrow Agent on demand for, and to indemnify and hold the Escrow Agent its affiliates and their officers, employees, successors, assigns, attorneys and agents harmless against and with respect to, any and all loss, liability, damage or expense (including, but without limitation, attorneys' fees, costs and disbursements) that the Escrow Agent may suffer or incur in connection with this Agreement and its performance hereunder or in connection herewith, except to the extent such loss, liability, damage or expense arises from its misconduct or negligence as adjudicated by a court of competent jurisdiction. The Escrow Agent shall have the further right at any time and from time to time to charge, and reimburse itself from the property held in escrow hereunder only upon approval by Class Counsel, or pursuant to order of the United States District Court for Central District of California (the "Court").

d)  The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of counsel. The Escrow Agent shall have the right to reimburse itself for legal fees,

disbursements and expenses from the property held in escrow hereunder only upon approval by Class Counsel, or pursuant to order of the Court.

e)      The Escrow Agent shall be under no duty to give the property held in escrow by it hereunder any greater degree of care than it gives its own similar property.

f)      The Escrow Agent shall invest the property held in escrow in such a manner as directed in Schedule A annexed hereto. The Escrow Agent, or any of its affiliates, is authorized (i) to act as counterparty, principal, agent or broker while buying or selling investments held in escrow, and (ii) to receive, directly or indirectly, fees or other profits or benefits for each such service, task or function performed, and (iii) to manage, advise, or service any money market mutual funds in which any portion of the escrow funds may be invested.

g)      In the event of any disagreement between the parties to this Agreement, and any other person, relating to this Escrow Agreement which results in adverse claims or demands being made in connection with the subject matter of the Escrow, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue so to refrain from acting until (i) the rights of all parties shall have been fully and finally adjudicated by a court of competent jurisdiction, or (ii) all differences shall have been adjusted and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all such persons. The Escrow Agent shall have the option, after written notice to the other parties of its intention to do so, to file an action in interpleader requiring the parties to answer and litigate any claims and rights among themselves. The rights of the Escrow Agent under this paragraph are cumulative of all other rights which it may have by law or otherwise.

h)      The Escrow Agent is authorized, for any securities at any time held hereunder, to register such securities in the name of its nominee(s) or the nominees of any securities depository, and such nominee(s) may sign required documentation in order to transfer securities or certify ownership thereof to tax or other governmental authorities, in accordance with this Agreement.

i)      Notice to the parties shall be given as provided in Schedule A annexed hereto.

j)      Upon distribution of all of the Escrowed Funds pursuant to the terms of this Agreement or earlier termination of this Agreement, the Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Agreement, except as otherwise specifically set forth herein.

**ARTICLE SECOND:** The Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 30 days written notice to Class Counsel. Any such resignation shall terminate all obligations and duties of the Escrow Agent hereunder. On the

effective date of such resignation, the Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents to any successor Escrow Agent agreeable to the parties, subject to this Escrow Agreement herein. If a successor Escrow Agent has not been appointed prior to the expiration of 30 days following the date of the notice of such resignation, the then acting Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Agreement.

**ARTICLE THIRD:** The Escrow Agent shall only receive the fees provided in Schedule B annexed hereto. In the event that such fees are not paid to the Escrow Agent within 60 days of presentment to the party responsible for such fees as set forth in said Schedule B, then, notwithstanding anything herein to the contrary, the Escrow Agent may pay itself such fees from the property held in escrow hereunder.

**ARTICLE FOURTH:** This Agreement constitutes the entire agreement and understanding of the parties hereto. Any modification of this Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.

**ARTICLE FIFTH:** In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by telecopier or otherwise, the Escrow Agent is authorized, but not obligated, to seek confirmation of such instructions by telephone call back to the person or persons designated in Schedule A annexed hereto, and the Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. To assure accuracy of the instructions it receives, the Escrow Agent may record such call backs. If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be changed only in writing actually received and acknowledged by the Escrow Agent. The parties agree to notify the Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of the Escrow Agent's error, the Escrow Agent's sole obligation is to pay or refund such amounts as may be required by applicable law. In no event shall the Escrow Agent be responsible for any indirect, punitive, special, incidental or consequential damages or expenses in connection with the instruction or its duties hereunder. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

**ARTICLE SIXTH**: This Agreement shall be governed by the law of the State of California in all respects. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court in connection with any proceedings commenced regarding this Agreement, including but not limited to, any interpleader proceeding or proceeding for the appointment of a successor escrow agent the Escrow Agent may commence pursuant to this Agreement, and all parties irrevocably submit to the jurisdiction of such court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

**ARTICLE SEVENTH**: Miscellaneous provisions.

a) This Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement.

b) The parties hereto agree to do such further acts and things and to execute and deliver such other documents as the Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Agreement in order (a) to give the Escrow Agent confirmation and assurance of the Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable the Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Agreement, each in such form and substance as may be acceptable to the Escrow Agent.

c) The failure of any of the signatories hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**VALLEY NATIONAL BANK,**
as Escrow Agent

By: _____(Signature)_____

Title: Vice President

Date: 12-17-2012

**For Plaintiffs**
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: _____
Blair A. Nicholas

Title: Partner

Date: 12/17/12

4

## SCHEDULE A

1.  This Escrow Agreement is for the deposit of Settlement Funds paid pursuant to the Stipulation of Settlement with Defendants dated as of November 9, 2012 (the "Stipulation"), entered into by Class Counsel and Counsel for Defendants on behalf of their respective clients, to settle claims as set forth in the Stipulation, in the action *In re Toyota Motor Corporation Securities Litigation*, No. 10-CV-922 DSF (AJWx), pending in the Court.

2.  For purposes of this Escrow Agreement, Class Counsel is the law firm identified as follows:

> BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
> 12481 High Bluff Drive, Suite 300
> San Diego, CA 92130
> Telephone: (858) 793-0070
> Facsimile: (858) 793-0323

3.  Valley is the Escrow Agent, further identified as follows: Valley National Bank, Trust Services, 1195 Hamburg Turnpike, Wayne, NJ 07470, Attention Stephen Gudelski, VP, (973) 305-3500. The Escrow Agent shall establish an escrow account (the "Escrow Account") entitled "Toyota Securities Litigation Settlement Fund" and is further designated as account number 62-00-1002-3-07. The total amount deposited in the Escrow Account, plus the interest accrued thereon, shall be the "Escrowed Funds" which, pursuant to the Stipulation, on the direction of Class Counsel, shall be invested exclusively in short-term United States Agency or Treasury Securities or other instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates, until such time as the Escrow Agent receives instructions to disburse funds from the Escrow Account as directed by Class Counsel, or as ordered by the Court. Notwithstanding the foregoing, in the event that the yield

on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the Escrowed Funds may be deposited in a non-interest bearing account that is fully insured by the Federal Deposit Insurance Corporation ("Insured Non-Interest Bearing Account") pursuant to instructions from Class Counsel. The parties hereto agree that only Class Counsel shall have investment authority for the Escrowed Funds. One week prior to the maturity date of any United States Treasury Bill in which the Escrow Funds are invested ("Maturity Date") during the term of this Agreement, Escrow Agent shall give Class Counsel written notice of the Maturity Date. No later than two business days prior to such Maturity Date, Class Counsel shall give written direction to Escrow Agent on the reinvestment of such Escrowed Funds ("Direction"); provided, however, that in the event Class Counsel shall not give such Direction within the 2-day time period, Escrow Agent is authorized to reinvest such Escrowed Funds in United States Treasury Bills for an additional period not to exceed 180 days from the Maturity Date, or, if the yield on United States Treasury Bills is then negative, such funds shall be deposited in the Insured Non-Interest Bearing Account. Notwithstanding anything to the contrary contained herein, Class Counsel specifically authorizes Escrow Agent to invest any residual cash balances in an amount less than $250,000 in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States Government, until such time as the Escrow Agent receives instructions to disburse funds from the Escrow Account as directed by Class Counsel, or as ordered by the Court. The Escrow Agent shall not bear any risks related to the investment of the Settlement Fund, except for liability, damage or losses arising out of its negligence or misconduct as adjudicated by a court of

competent jurisdiction. All funds shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed, pursuant to the Stipulation and on further order(s) of the Court.

4. The Toyota Securities Litigation Settlement Fund is responsible for paying taxes on interest generated by the Escrow Account. The Escrow Agent shall make all tax payments due on the Escrowed Funds pursuant to disbursement instructions from the authorized person(s) as set forth in paragraph 6 below. It shall be the responsibility of Class Counsel to timely and properly prepare and deliver any necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. If the Settlement Funds and all interest thereon are, pursuant to the terms of the Stipulation, returned to the persons or entities that originally contributed the Settlement Funds, Counsel for such persons or entities shall provide the Escrow Agent with properly completed Forms W-9.

5. This Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of this Escrow Agreement.

6. The only individuals authorized to issue disbursement instructions are any two persons from among Max W. Berger, Edward A. Grossmann, and Blair A. Nicholas. All disbursement instructions are subject to supervision, directions and approval of the Court, as set forth in the Stipulation.

7. In the event that the Settlement contemplated by the Stipulation is terminated by the parties thereto pursuant to its terms, then, within five (5) calendar days after receipt of written notice from Class Counsel of termination of the Settlement, the balance of the Escrowed Funds, including any interest earned thereon (less any taxes paid or owing thereon), less any expenses incurred but not

yet paid, shall be returned to the persons or entities that originally contributed the Settlement Funds in proportion to their contribution to the Settlement Fund.

## SCHEDULE B

Administrative fees for escrow agent services rendered by Valley will not apply to the Toyota Securities Litigation Settlement Fund. The only fees to be charged to the Toyota Securities Litigation Settlement Fund are:

Transaction Fees

$75.00 for the T Bill purchase or sale transaction, where the purchase or sale of multiple T Bills at one time shall constitute one transaction; and

$15.00 for each wire transfer

A separate fee schedule will apply for the preparation and administration of payments issued to claimants of this settlement fund at its termination, in the event that the Escrow Agent is asked to provide such additional services.

B-1